**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | **Chapter 11** |
| | § | |
| **LOADCRAFT INDUSTRIES, LTD.** | § | **Case No. 21-11018-tmd-11** |
| | § | |
| Debtor. | § | |

**MOTION OF BRADY PLANT OPERATORS, LLC**
**AND TERRY MCIVER  TO DISMISS CASE**

BRADY PLANT OPERATORS, LLC, ("BRADY PLANT OPERATORS") by and through its sole member, TERRY MCIVER, the General Partner for DEBTOR LOADCRAFT INDUSTRIES, LTD. ("LOADCRAFT" or "DEBTOR"), and TERRY MCIVER, individually ("MCIVER"), creditor and party in interest ("collectively, the "MCIVER PARTIES") hereby move to dismiss this case on the following grounds:

## I    INTRODUCTION

1.    This Court lacks subject matter jurisdiction of this case as a matter of law because neither the party who signed the Voluntary Petition in this case or the parties who allegedly ratified the filing had the authority to do so. Only BRADY PLANT OPERATORS, the general partner of the Debtor, has the sole authority to file this case and only MCIVER, the sole member of BRADY PLANT OPERATORS has the authority to cause BRADY PLANT OPERATORS to do this. The MCIVER PARTIES are mindful that the Court ruled, in the context of a hearing on an Application for a Temporary Restraining Order, that the Plaintiffs failed to demonstrate that there was a reasonable likelihood that they would succeed on the merits. The MCIVER PARTIES do not argue that the court erred, given the incomplete and convoluted record the Court had before it. Nonetheless, the MCIVER PARTIES submit that a straightforward analysis of the relevant

---

evidence on this issue, as laid out below, conclusively establishes that this Court lacks jurisdiction. Even if this Court were to ultimately find that it does have jurisdiction, challenges to subject matter cannot be waived, even on appeal, creating a level of uncertainty that could ultimately jeopardize this case. *In re Franchise Services of North America, Inc.*, 838 F. 3d 198, 206-207 (5th Cir. 2018).

## II     <u>ARGUMENT AND AUTHORITIES</u>

2.      The Voluntary Petition in this case was signed by Charles Hinkle as a manager of BRADY PLANT OPERATORS, the general partner of the Debtor. Mr. Hinkle was not a manager of BRADY PLANT OPERATORS at the time and had no authority to execute the Voluntary Petition.

3.      After the case was filed, limited partners Alphonso Energy LLC ("ALPHONSO ENERGY") and Nestor Outcomes LLC ("NESTOR OUTCOMES") purported to remove BRADY PLANT OPERATORS as the general partner and replace it with Glorious Splendor Too, LLC ("GLORIOUS SPLENDOR"). GLORIOUS SPLENDOR then purported to ratify the filing of this case. ALPHONSO ENERGY and NESTOR OUTCOMES did not have the necessary votes to remove BRADY PLANT OPERATORS and so the ratification was ineffective.

4.      In its *Order Denying Motion for Temporary Restraining Order and Abating Adversary Proceeding* entered in Adversary Proceeding 22-01001 [ECF#29] the Court ruled, in pertinent part:

> Under the terms of the Debtor's limited partnership agreement, a majority in interest of the limited partners has authority to replace the general partner of the Debtor and Alphonso Energy, LLC and Nestor Outcomes have a 65% interest in the Debtor. Although in the Alphonso Ownership Agreement the parties agreed to change this provision to a majority vote of the limited partners, the effect of that provision is unclear because the Debtor's limited partnership agreement was not amended by the deadline in the Ownership Agreement. Even if the Ownership Agreement governs, it is unclear whether Charles Hinkle was appropriately removed as a manager of Brady Plant Operators, L.L.C., because the regulations of Brady Plant Operators were not amended to conform to the Ownership Agreement.

Mr. McIver's contention that Alphonso Energy would invest substantial sums in the enterprise and leave Mr. McIver in complete control by virtue of his sole membership in Brady Plant Operators is specious. Thus, Plaintiffs cannot meet their burden of proving that they are likely to succeed on the merits in this adversary proceeding.

5.      As a preliminary matter, the MCIVER PARTIES respectfully submit that the Court erred by assuming or implicitly finding that Alphonso Energy, LLC ("ALPHONSO ENERGY") was a party to the limited partnership agreement to which the Court is referring and had voting rights under that agreement. It was not and did not.

6.      The only limited partnership agreement in the record granting a majority in interest of limited partners the authority to remove the general partner was the Agreement of Limited Partnership Interest dated November 15, 2004 (the "Original Loadcraft LP Agreement"). ALPHONSO ENERGY was not a party that agreement. Nestor Outcomes, LLC ("NESTOR"), the entity controlled by HINKLE, was not originally a limited partner either but by May 24, 2017, it held a 22.4979%% limited partnership interest. The parties stipulated that that the partnership interests in LOADCRAFT as of May 24, 2017 were as follows[1]:

| Brady Plant Operators, LLC | .8075% |
|---|---|
| Huntland Properties, Ltd. | 34.2924% |
| Huntland Resources, LLC. | 24.3265% |
| JBar T, Ltd. | 8.075% |
| Nestor Outcomes, LLC | 22.4979% |
| Passerina Ciris, LLC | 10.00% |

[1] May 24, 2017 Ownership Agreement (defined herein), para. 1.

**THE MAY 24, 2017 OWNERSHIP AND OPERATIONS AGREEMENT**

7.      As for the Court's statement in its Order:

"Mr. McIver's contention that Alphonso Energy would invest substantial sums in the enterprise and leave Mr. McIver in complete control by virtue of his sole membership in Brady Plant Operators is specious."

This statement does not accurately reflect the deal between the parties and there were multiple reasons, including a key component not yet in the record, why the deal was structured as it was.

8.      In March 2017, 13 years after the Original Loadcraft LP Agreement was executed, ALPHONSO was introduced to MCIVER at the annual Offshore Technology Conference in Houston, Texas. ALPHONSO told MCIVER that he wanted to invest as a limited partner in LOADCRAFT but that he had to acquire a 50% limited partner interest to obtain a "green card," or a visa, to reside in the United States. And, in fact, under the immigration laws of the United States, acquiring a 50% equity interest in a business in the United States one means to obtain a visa. See 22 CFR §41.51 Treaty trader of treaty investor. So when the Court questions why ALPHONSO would invest in LOADCRAFT and agree to that MCIVER would remain as the sole member of the general partner, ALPHONSO's stated motivation for acquiring a limited partnership interest was to buy a visa.

9.      About two weeks later, after conducting little or no due diligence, ALPHONSO reached an agreement with MCIVER where ALPHONSO would be admitted as a limited partner in LOADCRAFT *pursuant to the terms and conditions of their agreement*.

10.      That agreement is Ownership of Interest and Operations Agreement by and between Brady Plant Operators, LLC, Huntland Properties, Ltd, Huntland Resources, LLC, JBar T, Ltd., Nestor Outcomes, LLC, Passerina Ciris, LLC, Alphonso Energy, LLC, and Loadcraft Industries, Ltd. entered into as of May 24, 2017. (the "Ownership Agreement").

## THE JURISDICTION OF THIS COURT TURNS SOLELY ON THE OWNERSHIP AGREEMENT

11.     The Ownership Agreement is the ONLY agreement to which ALPHONSO ENERGY is a party. It is the ONLY agreement upon which ALPHONSO ENERGY can claim a right to the become a limited partner in LOADCRAFT. It is the ONLY agreement that defines rights of ALPHONSO ENERGY upon admittance as a limited partner. And it is the only agreement pursuant to which Glorious Splendor Too, LLC ("GLORIOUS SPLENDOR") can claim that it had a right to become a manager of BRADY PLANT OPERATORS.

12.     Accordingly, the determination of this Court's jurisdiction turns on the validity and interpretation of the Ownership Agreement. Either the 2017 Ownership Agreement is valid and enforceable or it is not. If it is enforceable, then no party other than MCIVER has the authority to initiate this case and, if it is not, ALPHONSO ENERGY never became a limited partner. The parties are not free to pick and choose the parts of the Ownership Agreement they like and ignore the rest, as ALPHONSO ENERGY would have it.  There is no basis in fact or law for ALPHONSO ENERGY to claim that it acquired a limited partnership interest independent of the terms of the ownership agreement because it is the ONLY agreement under which it is entitled to claim a limited partnership interest. Under the Ownership Agreement, ALPHONSO ENERGY was only entitled to a limited membership interest under an amended partnership agreement, not under the terms of the Original Loadcraft LP Agreement.

13.     The Court has questioned whether the Ownership Agreement is enforceable because the Original Loadcraft LP Agreement was not amended by December. 31, 2017, as contemplated by the Ownership Agreement. Before addressing the issue of enforceability, MCIVER would note that if the Ownership Agreement is not valid, then ALPHONSO ENERGY is not a limited partner and has no voting rights under the Original Loadcraft LP Agreement. There

is no evidence of any agreement which admitted ALPHONSO ENERGY as a limited partner, unconstrained by the terms of the Ownership Agreement. Therefore, ALPHONSO ENERGY could not have voted to remove BRADY PLANT OPERATORS as the general partner if the Ownership Agreement is not valid.

**THE OWNERSHIP AGREEMENT IS A VALID AND BINDING AGREEMENT**

14.     The MCIVER PARTIES contend that the 2017 Ownership Agreement is enforceable. Although that agreement contemplated that the parties would amend the Original Loadcraft LP Agreement, the Ownership Agreement contains all of the material terms of the agreement among the parties (save the specific terms of the management and employment agreements to be separately negotiated[2]). And so, the only purpose in amending the limited partnership agreement was to incorporate the terms of the Ownership Agreement into the partnership agreement, itself.

15.     The Ownership Agreement sets the purchase price for ALPHONSO ENERGY's purchase of a limited partnership interest; it defines the nature and extent of each parties' interest; it established the "continuity of ownership" which the parties desired; it provides for the appointment of managers for the general partner (and limits the removal of one manager); and it includes other material terms to which the parties agreed. In other words, the Ownership Agreement contains all the material terms to amend the partnership agreement.

16.     The Ownership Agreement is not ambiguous. There are no terms in the Ownership Agreement suggesting or even hinting that the parties could change the material terms of the

---

[2] Paragraph 4 of the Ownership Agreement states that: "The parties desire to provide the continuity of management of Loadcraft". They agreed that Terry McIver will be paid a management fee and agrees that the parties would negotiate the terms of the formal management agreement for Terry McIver and the employment agreement of Charles Hinkle in good faith. The parties never negotiated those agreements but ratified the continuation of management over the next four years.

Ownership Agreement in the amended partnership agreement. To argue otherwise is ludicrous. Why would MCIVER reach an agreement with ALPHONSO on all material terms –- including control of the limited partnership – only to agree that ALPHONSO can renegotiate the terms and obtain greater rights in the amended partnership agreement? Either they had a deal or they didn't. Nothing in the Ownership Agreement suggests that any party was free to change the deal.

17.     This demonstrated by the fact that no party had the right to alter the terms of the Ownership Agreement in the amended partnership agreement without the unanimous consent of all the limited partners:

> "9.     The parties hereto agree that the Partnership Agreement will be amended in its entirety on or before December 31, 2017. All limited partners must agree to the changes in the Partnership Agreement."

18.     Because the Ownership Agreement contained all of the material terms and did not contain any provision allowing a party to add or change the material terms of the agreement, the amendment of the limited partnership agreement was a ministerial task, the completion of which is not necessary to bind the parties to their agreement.

19.     A contract is enforceable if it is sufficiently definite in its terms so that a court can understand what the promissor undertook. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). The parties, however, may agree on some terms sufficient to create a contract, leaving other provisions for later negotiation so long as those terms are not material or essential. *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 134 (Tex. App.-Waco 2005, pet. denied). However, those terms left for future negotiation are not part of the enforceable portion of the contract. See *Killion v. Lanehart*, 154 S.W.3d 183, 189 (Tex. App.-Amarillo 2004, pet. denied). Essential or material terms have been defined as those terms that the parties would reasonably

regard as vitally important elements of their bargain. *Neeley v. Bankers Trust Co.*, 757 F.2d 621, 628 (5th Cir. 1985) (construing Texas law).

20.     When an agreement leaves material terms open for future adjustment and agreement that never occur, such terms are not binding on the parties and the agreement is merely an "agreement to agree." *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 238 (Tex. 2016) (internal citations omitted). However, "'[a]greements to enter into future contracts are enforceable if they contain all material terms. When an 'agreement to enter into a future contract already contains all the material terms of the future contract,' courts can determine and enforce the parties' obligations, and concerns about indefiniteness and reasonable certainty do not arise. So, an agreement that contains all of its essential terms is not unenforceable merely because the parties anticipate some future agreement. See McCalla, 416 S.W.3d at 418 (holding that even if settlement agreement in which party promised that he "will agree" and "agree[s] to enter an agreement" constituted 'agreement to agree,' it was nevertheless enforceable because it contained all material terms)". *Id.* (citing and quoting *McCalla v. Baker's Campground, Inc.,* 416 S.W.3d 416, 418 (Tex.2013).

21.     There were not any material terms missing from the Ownership Agreement. That the parties considered amending the limited partnership to be a ministerial task is further evidenced by their course of conduct. ALPHONSO ENERGY paid the consideration for its limited partnership interest without requiring that the limited partnership be amended first. No party has suggested that any of them moved forward with drafting an amended partnership agreement. They acted in accordance with the terms of the Ownership Agreement for years, essentially treating the Ownership Agreement, itself, as an amendment to the partnership agreement – as it should be. In other words, they acted as if they had a deal because they had a deal. Were this not the case, it is

---

only logical that they would move forward to draft an amended partnership sometime within the five years or so since the Ownership Agreement was signed.

### ALPHONSO ENERGY AND NESTOR OUTCOMES DO NOT HAVE THE VOTES TO REMOVE THE GENERAL PARTNER

22.     If the Ownership Agreement is valid, the ALPHONSO ENERGY is a limited partner but it, together with NESTOR OUTCOMES, do not have the sufficient votes to remove BRADY PLANT OPERATING as general partner.

23.     Paragraph 5 of the Ownership Agreement governs the removal of the General Partner and provides that the general partner can only be removed by a majority of the of the limited partners. Rather than the partners voting based on their percentage interest, the agreement provides one vote per limited partner with the vote of Huntland Resources, LLC and Huntland Properties, Ltd. counting as one vote.[3]  So the votes were to be tabulated as follows:

| Huntland Resources, LLC | ½ vote |
|---|---|
| Huntland Properties, Ltd. | ½ vote |
| Passerina Ciris, LLC | 1 vote |
| Alphonso Energy, LLC | 1 vote |
| Nestor Outcomes, LLC | 1 vote |

---

[3]     Paragraph 5 reads: "5. Section 6.11 of the Partnership Agreement provides that the General may be removed as General Partner upon a Majority in Interest vote of Limited Partners.  In order to preserve the existing operational management decision making of Loadcraft the parties agree that said Section 6.11 will be amended to require the affirmative vote of a majority of the Limited Partners in order to remove and/or change the General Partner.  Huntland and Resources will collectively be entitled to one vote and each other limited partner will be entitled to one (a) vote on this matter."

24.     Therefore, the ALPHONSO ENERGY and NESTOR OUTCOMES only had two of the four votes of the limited partners, falling short of the necessary majority to remove the general partner.

25.     Counsel for ALPHONSO ENERGY argued in their pleadings that since the Original Loadcraft LP Agreement does not specifically authorize the general partner to seek protection under the Bankruptcy Code, that right is retained by the limited partners. This is wrong. The enumerated powers in the limited partnership agreement are sufficiently broad to authorize the general partner to seek protection under the Bankruptcy Code. But even if they were not, this argument conflates the distinction between a limited liability company, where the powers not granted to the managers are reserved by the members, with a limited partnership, where the limited partners are protected from personal liability by having no role in the management of the limited partnership. The Original Loadcraft LP Agreement is illustrative:

> Section 6.6 <u>Limitations on Limited Partners</u>.  Except as otherwise expressly provided herein, no Limited Partner, in its capacity as a limited partner of the Partnership, shall:  (a) be permitted to take part in the business or control of the business or affairs of the Partnership; (b) have any voice in the management or operation of any Partnership property; or (c) have the authority or power to act as agent for or on behalf of the Partnership or any other Partner, to do any act which would be binding on the Partnership or any other Partner, or to incur any expenditures on behalf of or with respect to the Partnership; provided, that the foregoing shall not preclude the Affiliates or designees of a Limited Partner from serving on the Board of Directors of the General Partner and exercising any and all rights accorded to a Director of the General Partner by law, this Agreement and the articles of incorporation and bylaws of the General Partner.

## CHARLES HINKLE DID NOT HAVE THE AUTHORITY TO SIGN THE VOLUNTARY PETITION

26.     Charles Hinkle ("HINKLE") was appointed as one of the managers of the general partner, BRADY PLANT OPERATORS, on March 24th, 2017. There was no document appointing him as a manager. He was appointed under the terms of the Ownership Agreement, itself:[4]

> 3.  As noted above, BPO [BRADY PLANT OPERATORS] is the general partner of Loadcraft. Terry McIver will obtain the resignation of Donald L. Barley and Raymond Jones, Jr. as Managers of BPO. In their place, Terry McIver, as sole member of BPO, will elect Charles Hinkle and Glorious Splendor Too, LLC as Managers of BPO. The parties agree that Glorious Splendor, Too, LLC shall remain manager of BPO so long as Alphonso is a limited partner.

27.     Note that the parties acknowledged in paragraph 3 that MCIVER is the **as the sole member of the general partner**. There is no provision adding or changing members of the general partner. The agreement also acknowledges that MCIVER had the power to remove and add members **as the sole member of the general partner** and that there was no limitation against MCIVER removing HINKLE, only GLORIOUS SPLENDOR.

28.     After HINKLE abandoned his post and left the company in November of 2020, no longer willing to perform his management duties, MCIVER exercised his rights **as the sole member of the general partner** to remove HINKLE as a Manager of Brady. Counsel for ALPHONSO ENERGY argues that MCIVER did not properly remove Hinkle as a manager because there were no meetings of managers called of votes of managers to remove him. This argument confuses the roles of managers and the sole member. The managers do not vote on the removal of managers. As the parties acknowledged in the Ownership Agreement, MCIVER, as the sole member, has the authority to remove managers. This is consistent with the terms of the Regulations of Brady Plant Operators, LLC. Section 2.5 specifically provides that a majority of interest of the *Members* can remove a Manager at any time, with or without cause:

---

[4] So if the Ownership Agreement is invalid, his appointment as a manager is invalid.

**2.5      Removal.**  At a meeting called expressly for such purpose, all or any lesser number of Managers may be removed at any time, with or without cause, by the affirmative voice of a Majority in Interest of the Members, and provided proper notice is given and the requirements of Article 2.2 above are complied with.

29.      It was not necessary for MCIVER to give any other members notice or conduct a meeting because he was the sole member.[5]

### NO AUTHORIZED PARTY HAS INITIATED THIS CASE OR RATIFIED THE INITIATION OF THIS CASE.

30.      Hinkle had no right or authority to sign the Voluntary Petition and the alleged "ratification" of the filing by Glorious Splendor Too, LLC was ineffective because BRADY PLANT OPERATORS was, and is, the general partner of the Debtor.

31.      The Court has no choice but to dismiss this case where there is a lack of authority to file it. State law determines who has the authority to file a voluntary petition on behalf of the entity, and if the parties who authorize the filing lack the authority, the bankruptcy court has no authority but to dismiss the petition. *In re Franchise Services of North America, Inc*., 838 F. 3d 198, 206-207 (5th Cir. 2018):

> The Bankruptcy Code provides that an "entity that may be a debtor" may commence a voluntary case by filing a petition. *See* 11 U.S.C. § 301(a). Still, when the entity is a corporation that can act only through its agents, the Bankruptcy Code does not specify who may file a petition on its behalf. "In absence of federal incorporation, that authority finds its source in local law." *Price v. Gurney,* 324 U.S. 100, 106, 65 S.Ct. 513, 89 L.Ed. 776 (1945). State law thus determines who has the authority to file a voluntary petition on behalf of the corporation. *See id.* at 106-07, 65 S.Ct. 513; *In re Nica Holdings, Inc.,* 810 F.3d 781, 789 (11th Cir. 2015). If the petitioners

---

[5] Paragraph 2 contains certain requirements re the number and terms of managers: "**2.2 Number and Qualifications.** The number of Managers of the Company shall be one or more, as may be determined by the Members from time to time, but no decrease in the number of Managers shall have the effect of shortening the term of any incumbent Managers. Managers need not be residents of the State of Texas or Members of the Company.  The Managers, in their discretion, may elect a chairman of the Managers who shall preside at meetings of the Managers."

lack authorization under state 207*207 law, the bankruptcy court "has no alternative but to dismiss the petition." *Price,* 324 U.S. at 106, 65 S.Ct. 513.

32.     Accordingly, this Court lacks subject matter jurisdiction over this case.

For the foregoing reasons, the MCIVER PARTIES request that this case be dismissed.


                              Respectfully submitted,

                              **STEPHEN A. ROBERTS, P.C.**
                              1400 Marshall Ln
                              Austin, TX 78703
                              (512) 431-7337 Telephone

                         BY:  */s/Stephen A. Roberts*
                              **STEPHEN A. ROBERTS**
                              State Bar No. 17019200
                              sroberts@srobertslawfirm.com


                              **MCMAHON SUROVIK SUTTLE, P.C.**
                              P.O. Box 3679
                              Abilene, Texas 79604
                              (325) 676-9183 Telephone
                              (325) 676-8836 Facsimile

                         BY:  */s/ Robert B. Wagstaff*
                              **ROBERT B. WAGSTAFF**
                              State Bar No. 20665000
                              rwagstaff@mcmahonlawtx.com

                              ATTORNEYS FOR BRADY PLANT
                              OPERATORS, LLC and TERRY MCIVER



                    **<u>CERTIFICATE OF SERVICE</u>**


        The foregoing was served on all persons on the attached list electronically via the Court's ECF system or via first class mail on February 3, 2022.


                               */s/Stephen A. Roberts*
                              **STEPHEN A. ROBERTS**