**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| | § | |
| LOADCRAFT INDUSTRIES, LTD. | § | Case No. 21-11018-TMD |
| | § | |
| Debtor | § | |

**MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT
AMONG THE DEBTOR, WINDOW OPERATING, LTD., MIKE RAY, HUNTLAND
PROPERTIES, LTD., LLC, HUNTLAND RESOURCES, LLC, PASSERINA CIRIS, LLC,
GLIDER MANUFACTURING, LLC, GLIDER PRODUCTS LLC, BRADY PLANT
OPERATORS, LLC, TERRY MCIVER, RUTH ANN MCIVER, AND BRIAN
ALPHONSO, ALPHONSO ENERGY, LLC, CHARLES HINKLE, GLORIOUS
SPLENDOR TOO, LLC, AND NESTOR OUTCOMES, LLC
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

> **This pleading requests relief that may be adverse to your
> interests.**
>
> **If no timely response is filed within 21 days from the date of
> service, the relief requested herein may be granted without a
> hearing being held.**
>
> **A timely filed response is necessary for a hearing to be held.**

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUPTCY JUDGE:

Loadcraft Industries, Ltd. ("***Debtor***" or "***Loadcraft***") files this *Motion for Entry of an Order*

*Approving the Settlement Agreement Among the Debtor, Window Operating, Ltd., Mike Ray,*

*Huntland Properties, Ltd., LLC, Huntland Resources, LLC, Passerina Ciris, LLC, Glider*

*Manufacturing, LLC, Glider Products LLC, Brady Plant Operators, LLC, Terry McIver, Ruth Ann*

*McIver, and Brian Alphonso, Alphonso Energy, LLC, Charles Hinkle, Glorious Splendor Too,*

*LLC, and Nestor Outcomes, LLC Pursuant to Federal Rule of Bankruptcy Procedure 9019* (the

"***Motion***"). In further support of this Motion, the Debtor respectfully represents as follows:

## RELIEF REQUESTED

1.     The Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "*Order*") approving the settlement agreement (the "*Settlement Agreement*"), a true and correct copy of which is attached to the Order as **Schedule 1**, among the Debtor, Window Operating, Ltd. ("*Window*"), Mike Ray ("*Ray*"), Huntland Properties, Ltd., LLC ("*Huntland*"), Huntland Resources, LLC ("*Resources*"), Passerina Ciris, LLC ("*Passerina*"), Glider Manufacturing, LLC ("*Glider Mfg*"), Glider Products LLC ("*Glider Prods*" and together with Glider Mfg, "*Glider*"), Brady Plant Operators, LLC ("*Brady PO*"), Terry McIver ("*McIver*"), Ruth Ann McIver ("*RA McIver*"), and Brian Alphonso and Alphonso Energy, LLC (collectively "*Alphonso*"), Charles Hinkle ("*Hinkle*"), Glorious Splendor Too, LLC ("*Glorious Splendor*"), and Nestor Outcomes, LLC ("*Nestor*") (collectively, the "*Parties*").

2.     This Settlement described herein is conditioned upon the Court's approval of the sale of Debtor's personal property located in Brady, Texas. The Debtor will file a motion for the approval of that sale and will seek to consolidate the hearing on this Motion with the approval of the sale contemplated in the Settlement Agreement.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The basis for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "*Bankruptcy Code*"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and Rule 9019 of the Local Court Rules of the United States Bankruptcy Court for the Western District of Texas (the "*Local Rules*").

5.     The Debtor confirms its consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

### A.     General Background

6.     On December 30, 2021, Debtor commenced a case under chapter 11 of the Bankruptcy Code.

7.     The Debtor operates a business that provides design, manufacturing and workover of drilling rigs, as well as repair services and operates facilities in Brady, Texas (the "***Brady Facility***") and in Brownwood, Texas (the "***Brownwood Facility***").

#### i.     *The Brownwood Facility*

8.     The Debtor and Window entered that certain "Sale and Leaseback Agreement" (the "***Agreement***") dated effective May 1, 2021, a copy of which is attached hereto as **Exhibit B**. The Agreement generally provides for the sale of certain real and personal property by the Debtor to Window and lease-back of such property to the Debtor. Pursuant to the terms of the Agreement, Window became the owner of all of the real and personal property at the Brownwood Facility.

9.     In connection with the Agreement, the Debtor and Window also entered a "Lease Agreement" dated as of July 1, 2021.

10.     Following the sale of the real and personal property at the Brownwood Facility to Window, the Debtor has leased the real and personal property back from Window pursuant to the terms of the Agreement and Lease Agreement.

11.     The Lease Agreement contains a "Lessee's Repurchase Option" in paragraph 18 (the "***Repurchase Option***"). The Repurchase Option grants the Debtor an exclusive option to

repurchase the Brownwood Facility real property, and the equipment sold, back from Window if exercised by the Debtor on or before April 1, 2022 (as extended by the *Second Stipulation Between Loadcraft Industries, Ltd., and Window Operating, Ltd.* [Dkt. No. 106]).

### ii. *The Brady Facility*

12. The Brady Facility real property is owned by Glider Mfg and leased by the Debtor.

13. The Brady Facility personal property, pursuant to the Agreement between Window and Debtor discussed above, is owned by Window but is subject to the Option Agreement.

### B. Background of the Disputes

14. There are a number of disputes between the various parties to the Settlement that are resolved by the proposed agreement including the following.

15. Brady PO, Huntland, Resources, Passerina, Alphonso Energy, and Nestor, entered into the *Ownership of Interest and Operations Agreement* (the "*Ownership Agreement*") on or about May 24, 2017. There are disputes between the parties as to the effectiveness of the Ownership Agreement, and the ownership, control and rights of the Parties in Loadcraft.

16. Alphonso Energy, Hinkle and Nestor, as plaintiffs, and Loadcraft, McIver and Glider Prods, as defendants, counter-plaintiffs and third party plaintiffs, and Alphonso, as third party defendant are parties to that case styled *Alphonso Energy, LLC, Charles Hinkle, and Nestor Outcomes, LLC vs Loadcraft Industries, Ltd, Terry McIver, Glider Products, LLC* pending in the 98th District Court of Travis County, Texas, Cause No. D-1-GN-21-002825.

17. Patents for certain technology ("*Patents*") were issued to McIver, Gary Weatherman ("*Weatherman*") and Zach Nash ("*Nash*"). McIver, Weatherman and Nash transferred the Patents to Glider. On or about November 30, 2018, Loadcraft (under the authority and control of McIver) entered in to a Patent Assignment and Transfer Agreement (the "*IP*

*Transfer Agreement*") with Glider. Loadcraft challenges the Patents, the transfers of the Patents, and the IP Transfer Agreement.

18.     In 2021, McIver caused Loadcraft to pay the indebtedness of Loadcraft to Passerina which was secured by a lien on assets of Loadcraft. The Alphonso Parties dispute that McIver had the authority to do so.

19.     McIver and Glider assert that the bankruptcy case was filed without authority and that Brady PO was improperly removed as the general partner of the Debtor. Glider has filed a motion to dismiss the bankruptcy case. Debtor and Alphonso deny the allegations and assert that the bankruptcy case was properly filed.

20.     Glider Mfg asserts that Debtor owes it at least $150,000 in pre-petition rent and post-petition rent in the amount of $25,000, plus additional obligations under the triple net lease. Window asserts post-petition rent obligations are the Debtor's.

21.     McIver alleges that he has a pre-petition unsecured claim against the Debtor in excess of $2 million arising out of loans to the Debtor and his payment of the obligations of the Debtor third party vendors. Debtor disputes this claim.

### THE SETTLEMENT AGREEMENT

22.     The material terms and conditions of the Settlement Agreement are as follows[1]:

(a)     The Settlement contemplates simultaneous closings of several transactions. Window will sell the real and personal property conveyed to Window pursuant to the Agreement to Debtor (the "*Window Transaction*") in consideration for the payment of $1,766,033. Window will convey the real and personal property to Debtor free of any liens or encumbrances except ad valorem taxes and any other encumbrances of record existing at the time of the consummation of the Window Transaction. Debtor will pay all closing costs. Upon consummation of the Window Transaction the Brownwood Facility lease will terminate and Window will release

---

[1] Capitalized terms used in this section but not otherwise defined in this Motion shall have the meaning ascribed to them in the Settlement Agreement. The summary set forth herein is qualified in its entirety by the Settlement Agreement. To the extent of any inconsistency between this summary and the Settlement Agreement, the Settlement Agreement shall control.

all claims for past or future rent related to the Agreement and Lease Agreement. The result of the Window Transaction, in combination with the Glider Transaction and Debtor Transaction (each as defined below) discussed in (b) and (d) *infra*, respectively, is that Debtor will own the Brownwood real and personal property and Western (as defined below) will own the Brady real and personal property.

(b) Glider Mfg will sell the Brady Facility real property to Odyssey Design and Manufacturing, Inc. ("***Western***") on terms to be agreed between Glider Mfg and Western (the "***Glider Transaction***"). Upon closing of the Glider Transaction and from the proceeds of the sale of personal property to Western, Debtor will pay Glider all post-petition lease obligations that have accrued or will accrue through the closing of the Glider Transaction pursuant to the Brady Facility lease, including prorated 2022 property taxes and insurance. Upon consummation of the Glider Transaction, the Brady Facility lease will terminate and Glider and Debtor will mutually release all claims against each other (including pre-petition rent) save and except the Reserved Claims.[2]

(c) All claims any Party holds against any other Party, save and except the Reserved Claims, shall be released or dismissed with prejudice, including Cause No. D-1-GN-21-002825 in the 98th Judicial District Court of Travis County, Texas and styled *Alphonso Energy et al. v. Loadcraft Industries, Ltd, et al.*

(d) Contemporaneously with the Window Transaction, Debtor will sell the Brady Facility personal property to Western (the "***Debtor Transaction***" and together with the Window Transaction and Glider Transaction, the "***Transactions***")) (or such other purchaser approved by the Bankruptcy Court so long as the closing of the sale is not delayed beyond the terms of the agreements with Western) on terms to be agreed between Debtor and Western and as approved by the Bankruptcy Court so long as those terms do not affect the terms of the Glider Transaction.

(e) The Brady Facility personal property taxes will be paid at the closing of the Debtor Transaction from the proceeds of sale on such terms agreed upon by Debtor and Western.

(f) Debtor will be responsible for paying the Brownwood Facility real and personal property taxes that have accrued through the date of closing of the Window Transaction.

(g) Contemporaneously with the Window Transaction, McIver will transfer his membership interest in Brady PO to Alphonso or his designee, and McIver, his wife and all affiliates will assign their limited partnership interests in Brady PO to

---

[2] "***Reserved Claims***" shall mean (i) all claims by Debtor related to any transfer or assertion of ownership interest or co-inventor rights in intellectual property allegedly developed by Debtor, including but not limited to, claims related to patents taken in the name of Terry McIver, Gary Weatherman or Zach Nash, as well as the transfer by Debtor of intellectual property to Glider and (ii) any claims against other parties for a declaratory judgment that all or part of such parties' claims or assertion of ownership interest or co-inventor rights in intellectual property allegedly developed by Debtor are not valid. Reserved Claims shall not include exemplary damages.

Alphonso or his designee. McIver will waive and relinquish any all rights to any equity in Debtor, directly or indirectly.

(h)     The Parties each agree to mutual releases by and among all of the partners and their affiliates of all claims except the Reserved Claims which are specifically reserved and not released.

(i)     **Debtor will grant a lien on the Brownwood Facility real and personal property in favor of federal and state taxing authorities to secure any potential Trust Fund Tax Claims[3] against individuals. In the event that a taxing authority proposes to assess a penalty against an individual due to the non-payment of Trust Fund Tax Claims, including the issuance by the IRS of a section 1153 letter proposing to assess a penalty against the individual, under IRC section 6672, Debtor shall timely pay the reasonable and necessary fees and costs incurred by the individual for counsel mutually agreed to by such individual and Debtor in connection with any objection or protest by the individual. In the event a taxing authority obtains an adjudication of liability against an individual or files a lien against such individual's assets, Debtor shall pay the Trust Fund Tax Claims assessed to the taxing authority, subject to Debtor's ability to contest the amount of any such assessment. In the event Debtor fails to meet its obligations to the individual, the individual shall be subrogated to the rights of the taxing authority under the lien and may declare a default under the lien documents and exercise all remedies under the lien documents after thirty days' notice to Debtor. The Parties will agree on the form of the lien documents, consistent with these terms, prior to, and as a condition to, obtaining Bankruptcy Court approval.**

(j)     The Settlement Agreement is contingent only upon Western's closing of the Glider Transaction and Debtor Transaction, The Transactions shall close and fund simultaneously.

(k)     If, at any time, Western exercises any rights it may have to terminate its purchase of the Brady Facility real or personal property, McIver may proceed with the motion to dismiss and the Window Transaction Repurchase Option will terminate. Any extension of the Repurchase Option herein shall be without prejudice to Window's right to claim that the Repurchase Option expired on December 31, 2021 as if no extensions have been granted and to Debtor's right to contest the validity or seek the avoidance of the Agreement between Window and Debtor.

(l)     It is contemplated that the Transactions will be closed contemporaneously. If the Transactions do not close, the Settlement Agreement will be null and void and of no effect and there will be no release between the Parties, all existing claims and defenses will be preserved. In such event, this Agreement shall not constitute an

---

[3] "*Trust Fund Tax Claims*" shall mean the amount of taxes that Debtor is required to remit to a governmental authority for which the non-payment would create personal liability for an individual.

admission of any matter asserted by any Party, and the Settlement Agreement shall not be used as evidence with respect to any claims.

23. The Debtor believes that the Settlement Agreement is in the best interests of the Debtor, its creditors, and other parties in interests.

## BASIS FOR RELIEF

24. Bankruptcy Rule 9019 authorizes bankruptcy courts to approve compromises and settlements that are "fair, equitable, and in the best interest of the estate." *In re Derosa-Grund*, 567 B.R. 773, 784 (Bankr. S.D. Tex. 2017); *see In re Wright*, 545 B.R. 541, 561 (Bankr. S.D. Tex. 2016).

25. The Fifth Circuit in *Matter of Cajun Elec. Power Co-op., Inc.,* stated that bankruptcy judges must consider the following factors when evaluating a settlement: (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise. 119 F.3d 349, 356 (5th Cir. 1997); *see also In re Jackson Brewing Co.,* 624 F.2d 599, 602 (5th Cir. 1980). Furthermore, the Fifth Circuit has expanded upon the third factor by adding that courts must consider "[w]hether the compromise serves the paramount interest of creditors with proper deference to their reasonable views" and "[t]he extent to which the settlement is truly the product of arms-length bargaining and not of fraud or collusion." *In re Roqumore,* 393 B.R. 474, 480 (Bankr. S.D. Tex. 2008) (citing to *Cajun Elec. Power Co-op.,* 119 F.3d at 356, and *In re Foster Mortgage Corp.,* 68 F.3d 914, 917 (5th Cir. 1995)).

26. Although the trustee or debtor bears the burden of establishing that the balance of the factors supports a finding that the compromise is fair, equitable, and in the best interest of the estate, the trustee's or debtor's burden is not high. *See In re Derosa-Grund*, 567 B.R. at 785; *In re*

*Roqumore,* 393 B.R. at 480. The debtor need only show that the decision to compromise or settle falls within the range of reasonable litigation alternatives. *See In re Derosa-Grund*, 567 B.R. at 785; *In re Roqumore,* 393 B.R. at 480.

27.     Ultimately, the decision to approve a compromise lies within the discretion of the trial judge who need not "conduct a mini-trial to determine the probable outcome of any claims waived in the settlement." *In re Wright*, 545 B.R. at 561 (citing *Cajun Elec. Power Co-op.,* 119 F.3d at 355).

28.     **Probability of success**. Debtor is party to several ongoing disputes with the Parties as described above. The outcome of any one of these pending actions or potential actions being in favor of Debtor is uncertain and probably of success on *all* of these pending or potential actions is highly uncertain. Because the Reserved Claims are not being compromised and may be asserted after the approval of the proposed Settlement, Debtor is not providing an analysis of this potential litigation.

29.     **Complexity**. The nature of the Parties' disputes are complex and a resolution of the issues could take significant time and great expense if fully litigated. The Settlement Agreement allows the Parties to quickly and economically resolve a number of contested issues while specifically allowing the Debtor to put itself in position to quickly administer the bankruptcy proceeding and seek confirmation of a plan.

30.     **Interest of the Creditors**. As stated above, the Settlement Agreement is in the best interest of the Debtor's creditors as it will allow the Debtor to resolve a number of contested claims without unnecessarily expending its time and resources on lengthy and expensive litigation and it will avoid the risk of the Case being dismissed for lack of jurisdiction if McIver's motion to dismiss were granted or McIver prevailed on appeal.

31.     **Other factors weighing in favor of settlement**. The Settlement Agreement is a result of negotiations between the numerous parties and their counsel. The Settlement Agreement provides a cost-saving and beneficial resolution to many contested issues that could otherwise take years and hundreds of thousands of dollars to resolve. This settlement will allow the Debtor to sell focus on monetizing estate assets such that creditors can be paid. As such, the Settlement Agreement is in the best interest of the Debtor, its estate, and the creditors and other parties in interest.

32.     This settlement is a multi-party agreement among multiple parties as reflected in the proposed Settle Agreement, attached hereto as **Exhibit A**. The Debtor evaluated the Settlement Agreement and concluded that the Settlement Agreement was fair and reasonable for the reasons provided herein. All of the terms of the Settlement Agreement were negotiated at arms' length.

## **REQUEST FOR WAIVER OF STAY**

33.     The Debtor requests that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief sought in this Motion is necessary for the efficient administration of the Debtor's estate. Accordingly, the Debtor respectfully submits that ample cause exists to justify the (a) finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and (b) waiving of the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## **NO PRIOR REQUEST**

34.     No prior request for the relief sought in this Motion has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: March 31, 2022
Austin, Texas

Respectfully submitted,

WALLER LANSDEN DORTCH & DAVIS, LLP

*/s/ Mark C. Taylor*
Eric Taube (Bar No. 19679350)
Mark Taylor (Bar No. 19713225)
William R. "Trip" Nix, III (Bar No. 24092902)
100 Congress Avenue, Suite 1800
Austin, Texas 78701
(512) 685-6400
Email: Eric.Taube@wallerlaw.com
      Mark.Taylor@wallerlaw.com
      Trip.Nix@wallerlaw.com

*Attorneys for the Debtor and*
*Debtor in Possession*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served upon all parties on the attached service list electronically via the Court's ECF system or by first class mail on March 31, 2022.

*/s/ Mark C. Taylor*
Mark C. Taylor

## LIMITED SERVICE LIST

**Debtor**
Loadcraft Industries, LP
3811 N. Bridge St.
Brady, TX 76825

**Government Entities**
**(not otherwise listed)**
United States Trustee (*via ECF*)
Attn: Shane Tobin/John C. Roy
903 San Jacinto, Room 230
Austin, TX 78701

Brown County Appraisal District
403 Fisk Avenue
Brownwood, TX 76801

**Secured Creditors**
Alphonso Energy LLC
1211 Challenger
Lakeway, TX 78734

**20 Largest Unsecured Creditors**
American Block Mfg Co Inc
P.O. Box 301442
Dallas, TX 75303

American Express
P.O. Box 650448
Dallas, TX 75265-0448

Dell Financial Services
Dell Financial Services
Payment Processing Center
Carol Stream, IL 60197-6547

Donald E. Harman Co. Inc.
421 Industrial Dr.
Richardson, TX 75081

Fox NDE, LLC.
P.O. Box 5088
Abilene, TX 79608

Health Care Service Corp.
P.O. Box 731428
Dallas, TX 75373-1428

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Intsel Steel/Triple-S Steel
P.O. Box 301212
Dallas, TX 75303-1212

McCulloch County Appraisal
District
306 W. Lockhart
Brady, TX 76825

Metals USA
101 E Illinois Ave
Enid, OK 73701

Polyglass Coating
1616 N. Main Street
Pearland, TX 77581

Single Source Inc
8141 Gateway Dr
Suite 210
Argyle, TX 76226-5736

Stewart & Stevenson Power
P.O. Box 301063
Dallas, TX 75303-1063

T&W Tire
P.O. Box 258859
Oklahoma City, OK 73125-8859

Texas Comptroller of Public
Accounts
Revenue Accounting Div.-
Bankruptcy Sec.
P.O. Box 13528 Capitol Station
Austin, TX 78711

Texas Workforce Commission
TWC Building-Regulatory
Integrity Div
101 E. 15th St.
Austin, TX 78778

Toyota Financial Services
P.O. Box 2431
Carol Stream, IL 60132

U.S. Department of Labor - Wage
and Hour
Southwest Regional Office
Federal Building
525 S. Griffin St., Ste. 800
Dallas, TX 75202

United Engines
P.O. Box 731594
Dallas, TX 75373-1594

Willbanks Metals Inc.
1155 N.E. 28th Street
Fort Worth, TX 76106

**Parties Requesting Service**
Robert B. Wagstaff (*via ECF*)
McMahon Surovik Suttle P.C.
P.O. Box 3679
Abilene, Texas 79604

Katherine J. Walters
Sheldon E. Richie (*via ECF*)
Richie & Gueringer, P.C.
100 Congress Ave., Suite 1750
Austin, TX 78701

Texas Workforce Commission
c/o Callan C. Searcy (*via ECF*)
Assistant Attorney General
Bankruptcy & Collections Division
MC 008
P.O. Box 12548
Austin, TX 78711-2548

Tara LeDay (*via ECF*)
McCreary, Veselka, Bragg & Allen
P.O. Box 1269
Round Rock, TX 78680

Stephen W. Sather (*via ECF*)
Gregory M. Friedman (*via ECF*)
BARRON & NEWBURGER, P.C.
7320 N. MoPac, Suite 400
Austin, TX 78731

Stephen A. Roberts (*via ECF*)
Stephen Roberts, P.C.
1400 Marshall Ln
Austin, TX 78703

# SCHEDULE 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| LOADCRAFT INDUSTRIES, LTD. | § | Case No. 21-11018-TMD |
| | § | |
| Debtor | § | |

**ORDER APPROVING**

**THE SETTLEMENT AGREEMENT AMONG THE DEBTOR, WINDOW OPERATING, LTD., MIKE RAY, HUNTLAND PROPERTIES, LTD., LLC, HUNTLAND RESOURCES, LLC, PASSERINA CIRIS, LLC, GLIDER MANUFACTURING, LLC, GLIDER PRODUCTS LLC, BRADY PLANT OPERATORS, LLC, TERRY MCIVER, RUTH ANN MCIVER, AND BRIAN ALPHONSO, ALPHONSO ENERGY, LLC, CHARLES HINKLE, GLORIOUS SPLENDOR TOO, LLC AND NESTOR OUTCOMES, LLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

CAME ON FOR CONSIDERATION, the *Motion for Entry of an Order Approving the Settlement Agreement Among the Debtor, Window Operating, Ltd., Mike Ray, Huntland Properties, Ltd., LLC, Huntland Resources, LLC, Passerina Ciris, LLC, Glider Manufacturing, LLC, Glider Products LLC, Brady Plant Operators, LLC, Terry McIver, Ruth Ann McIver, and Brian Alphonso, Alphonso Energy, LLC, Charles Hinkle, Glorious Splendor Too, LLC, and Nestor*

*Outcomes, LLC Pursuant to Federal Rule of Bankruptcy Procedure 9019* (the "**Motion**")[1] filed by the Debtor in the Chapter 11 Case, seeking an order approving the Settlement Agreement and granting such other and further relief as the Court deems just and proper; having considered the Motion, this Court finding that the Settlement Agreement is fair, equitable, and in the best interests of the Debtor and the estate; and this court having jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court being able to issue a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this District is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required; it is hereby[2]

ORDERED that the Motion is GRANTED; and it is further

ORDERED that pursuant to sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rule 9019, and Local Rule 9019, the Settlement Agreement is hereby approved; and it is further

ORDERED that the Parties are authorized to take any and all actions in order to effectuate the Settlement Agreement, including the execution and delivery and/or filing (as the case may be) of the exhibits to the Settlement Agreement; and it is further

ORDERED that notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry; and it is further

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.
[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at a hearing conducted on this matter.

ORDERED that the Court hereby retains jurisdiction to hear and determine all matters

arising from or related to the implementation, interpretation and/or enforcement of this Order.

###

*Prepared and submitted by*:

WALLER LANSDEN DORTCH & DAVIS, LLP

Eric Taube (Bar No. 19679350)
100 Congress Avenue, Suite 1800
Austin, Texas 78701
(512) 685-6400
(512) 685-6417 (FAX)
Email: Eric.Taube@wallerlaw.com

*Attorneys for the Debtor and*
*Debtor in Possession*

# EXHIBIT A

## MUTUAL RELEASE AND SETTLEMENT AGREEMENT

This Mutual Release and Settlement Agreement (the "Agreement") is by and among Terry Melver ("Melver"), Ruth Ann Melver ("RA Melver"), Brady Plant Operators, LLC ("Brady PO"), Huntland Properties, Ltd LLC ("Huntland"), Huntland Resources LLC ("Resources"), Passerina Ciris, LLC ("Passerina"), Glider Manufacturing LLC ("Glider Mfg"), Glider Products LLC ("Glider Prods") (collectively, Melver, RA Melver, Brady PO, Heartland, Huntland, Resources, Passerina, Brady Mfg, and Glider Prods are referred to as the "Melver Parties"), Window Operating LLC, ("Window") Mike Ray ("Ray") (Window and Ray are referred to as the "Window Parties"), Brian Alphonso ("Alphonso"), Alphonso Energy, LLC ("Alphonso Energy"), Glorious Splendor Too, LLC ("Glorious Splendor") Nestor Outcomes, LLC ("Nestor"), Loadcraft Industries Ltd. ("Loadcraft"), and Charles Hinkle ("Hinkle"). (Alphonso, Alphonso Energy, Nestor, Glorious Splendor, Loadcraft and Hinkle are referred to as the "Alphonso Parties") and shall be effective as set forth below. The Melver Parties, the Window Parties and the Alphonso Parties shall be collectively referred to herein as the "Parties", or singularly as a "Party".

### RECITALS

Loadcraft is a Texas limited partnership and is the debtor and debtor-in-possession in a case under Chapter 11 of the Bankruptcy Code styled *In re Loadcraft Industries, Ltd.,* case no. 21-11018-tmd-11 pending in the United States Bankruptcy Court for the Western District of Texas - Austin Division ("Bankruptcy Case").

Brady PO, Huntland, Resources, Passerina, Alphonso Energy, and Nestor, entered into the *Ownership of Interest and Operations Agreement* (the "Ownership Agreement") on or about May 24, 2017. There are disputes between the parties as to the effectiveness of the Ownership Agreement, and the ownership, control and rights of the Parties in Loadcraft.

Alphonso Energy, Hinkle and Nestor, as plaintiffs, and Loadcraft, Melver and Glider Prods, as defendants, counter-plaintiffs and third party plaintiffs, and Alphonso, as third party defendant are parties to that case styled *Alphonso Energy, LLC, Charles Hinkle, and Nestor Outcomes, LLC vs Loadcraft Industries, Ltd, Terry Melver, Glider Products, LLC* pending in the 98th District Court of Travis County, Texas (the "Glider Litigation").

Loadcraft, as Seller, and Windows, as buyer, entered into the *Sale and Leaseback Agreement* effective May 1, 2021 pursuant to which Windows acquired the assets of Loadcraft and leased them back to Loadcraft (the "Sale/Leaseback Transaction"). There are disputes among the Parties regarding the Sale/Leaseback Transaction.

Patents for certain technology ("Patents") were issued to Melver, Gary Weatherman ("Weatherman") and Zach Nash ("Nash"). Melver, Weatherman and Nash transferred the Patents to Glider. On or about November 30, 2018, Loadcraft (under the authority and control of Melver) entered in to a Patent Assignment and Transfer Agreement (the "IP Transfer Agreement") with Glider. Loadcraft challenges the Patents, the transfers of the Patents, and the IP Transfer Agreement.

In 2021, McIver caused Loadcraft to pay the indebtedness of Loadcraft to Passerina which was secured by a lien on assets of Loadcraft. The Alphonso Parties dispute that McIver had the authority to do so.

The Parties desire to enter into this settlement to settle all claims between them, except as specifically provided and reserved herein, regardless of whether such claims are referenced in these recitals.

Now, therefore, the Parties agree as follows:

1. Window agrees to Debtor's repurchase of the assets conveyed to Windows in the Sale/Leaseback Transaction, including the Brownwood real estate and improvements (the "Window Sale Assets") at Closing,[1] in consideration for the payment of the option price of $1,766,033 to Windows as set forth in the Sale/Leaseback Transaction (the "Option Price"). At Closing, Window will release all claims for past or future rent related to the Sale/Leaseback Transaction, and the lease from Window to Loadcraft will be terminated. Window will convey the Window Sale Assets free of any liens or encumbrances except ad valorem taxes through the date of Closing and any other encumbrances of record on the date of the Sale/Leaseback Transaction. Loadcraft will pay all closing costs related to the purchase of the Window Sale Assets.

2. Loadcraft will sell all or part of its personal property located at or adjacent to the Brady Building (the "Brady Personal Property") to Western Trailer and Manufacturing, Inc. its designee[2] or such other purchaser approved by the Bankruptcy Court ("Western")[3] at Closing, on terms to be agreed between Loadcraft and Western and approved by the Bankruptcy Court so long as those terms do not affect the terms of the sale of the Brady Building by Glider Mfg to Western. Loadcraft will remove any Brady Personal Property which it does not sell from the Brady Building and adjacent premises on or before Closing.

3. Glider Mfg will sell the real property at 3811 N. Bridge St., Brady, Texas 76825-7840 ("Brady Building") to Western at Closing, on terms to be agreed between Glider Mfg and Western. From the proceeds of the sale to Western, and at Closing of the simultaneous closing of the transactions contemplated hereunder, Loadcraft will pay Glider Mfg all post-petition lease obligations will to pay all rent obligations under the lease through the date of Closing including prorated 2022 property taxes and insurance. Loadcraft's lease of the Brady Building will be terminated.

4. It is the intention of the Parties that the purchase of the Window Sale Assets by Loadcraft, the sale of the Brady Personal Property and the sale of Brady Building by Glider Mfg (the "Transactions"), shall occur simultaneously. To the extent that any one of the Transactions does

---

[1] "Closing shall mean the simultaneous closing of the Transactions as defined in this Agreement.

[2] Such designees shall include Odyssey Design and Manufacturing Inc. and HB Realty Co.

[3] In the event the court does not approve the sale of the Brady Personal Property to Western, the Parties may, but shall not be required to, agree to substitute another buyer under this Agreement; provided that such buyer acquires both the Brady Personal Property and the Brady Building on terms acceptable to the sellers. If McIver Mfg does not agree to the sale of the Brady Building to another buyer, this Agreement shall be null and void.

not close, this Agreement shall be null and void and of no effect, and this Agreement shall not be used by or against any Party as an admission of any fact or a waiver of any claims.

5.  The ad valorem taxes on the Brady Personal Property will be paid at from the proceeds of sale at Closing on such terms agreed upon by Loadcraft and Western, and Loadcraft will be responsible for paying the property taxes on the Loadcraft's personal and real property located in Brownwood, Texas accrued through and prorated through the date of Closing of the sale.

6.  At Closing, McIver will transfer his membership interest in Brady PO to Alphonso or his designee and will resign as a manager, and McIver Parties will assign their limited partnership interests in Loadcraft to Alphonso or his designee. The McIver Parties will waive and relinquish and all rights to any direct or indirect equity interests in Loadcraft and all options or other rights to acquire equity in the future will be terminated at Closing.

7.  Effective as of, and conditioned upon, Closing, the McIver Parties and the Windows Parties do hereby release the Alphonso Parties and the Alphonso Parties do hereby release the McIver Parties and the Windows Parties from all claims of every kind and character, whether direct or derivative, in tort or in contact, at law or in equity, known or unknown, to the broadest extent allowed by law, through the date of the Closing, except the "Reserved Claims", which shall be specifically reserved and not released. These releases include the release of all equity owners, officers, directors, managers, members, agents, representatives, consultants, attorneys, employees, and affiliates of the Parties.

8.  In the order approving this Agreement, Loadcraft will obtain court approval to, and grant, a lien on the Brownwood property in favor of federal and state taxing authorities to secure any potential Trust Fund tax claims against individuals. In the event that a taxing authority proposes to assess a penalty against an individual due to the non-payment of Trust Fund taxes, including the issuance by the IRS of a section 1153 letter proposing to assess a penalty against the individual, under IRC section 6672, Loadcraft shall timely pay the reasonable and necessary fees and costs incurred by the individual for counsel in connection with any objection or protest by the individual. In the event a taxing authority obtains an adjudication of liability against an individual or files a lien against such individual's assets, Loadcraft shall pay the taxes assessed to the taxing authority, subject to Loadcraft's ability to contest the amount of any such assessment. In the event Loadcraft fails to meet its obligations to the individual, the individual shall be subrogated to the rights of the taxing authority under the lien and may declare a default under the lien documents and exercise all remedies under the lien documents after thirty days' notice to Loadcraft. The Parties will agree on the form of the lien documents, consistent with these terms, prior to, and as a condition to, obtaining Bankruptcy Court approval. For the purposes of this agreement, Trust Fund taxes shall be the amount of taxes which Loadcraft was required to remit to a governmental authority for which the non-payment would create personal liability for an individual.

9.  On or before April 1, 2022, Glider will enter into a contract with Western to sell the Brady Building and Loadcraft will enter into a contract to with Western to sell the Brady Personal Property, subject to Bankruptcy Court approval (the "Western Contracts"). The obligations of the Parties under this Agreement are conditioned upon the entry of an order by the Bankruptcy Court

approving this Agreement and the Western Agreements, and the simultaneous closing of the Western Contracts. If those conditions are not satisfied, this agreement will be null and void.

10. Upon the execution of this Agreement by all Parties and the execution of the Western Contracts, the Debtor will file a motion by no later than April 1, 2022 under Bankruptcy to approve this Agreement, contingent only upon closing of the purchase of the Brady Building and personal property. The closing of the transactions contemplated by this Agreement shall close and fund simultaneously with the closing of the Western Contracts.

11. "Reserved Claims" as used herein, shall mean all claims by Loadcraft against Glider, Melver, Weatherman and Nash related to any transfer or assertion of ownership interest or co-inventor rights in intellectual property allegedly developed by Loadcraft, related to patents taken in the name of Melver, Weatherman and Nash, as well as the transfer by Loadcraft of intellectual property to Glider. All related claims and defenses of Glider, Melver Weatherman and Nash are also "Reserved Claims." In addition, "Reserved Claims' shall include any claims of any party for a declaratory judgment to determine the validity of such party's' claims or assertion of ownership interest or co-inventor rights in intellectual property allegedly developed by Loadcraft. Reserved Claims will include the claims of any Party for the recovery of attorneys' fees to which a party may be entitled under Texas law but shall not include exemplary damages. The Glider Litigation shall be dismissed (either by agreed order of non-suit or agreed order of dismissal) within three (3) business days of the closing of the Transactions. All claims, save and except claims that are Reserved Claims, shall be dismissed with prejudice. The Reserved Claims shall be preserved. To the extent the automatic stay under 11 USC 362 applies to the rights of any parties in the litigation of the Reserved Claims, the stay will not apply to any counterclaim asserted by parties to Reserved Claims that are asserted in any litigation by Loadcraft. Any action brought by Loadcraft on the Reserved Claims shall be brought in the pending Bankruptcy Case and the parties hereby consent to the removal of any such action to the United Stated District Court. Loadcraft shall commence such action within ninety (90) days of Closing or all Reserved Claims will be waived.

12. The Parties agree to execute such other documents that are reasonably necessary to effectuate the intent of the transactions. If the Parties are unable to reach an agreement on any documents, any party shall have the right to seek relief from the Bankruptcy Court regarding the form of the documents to be signed.

13. This Agreement must be executed by all parties on or before March 29, 2022. Provided that this Agreement is timely executed by all Parties, Melver will agree to the continuance of the hearing on his motion to dismiss and the hearing on the debtor's motion to appoint a CRO until after April 1, 2022 and will agree to further continue the hearing on the motions until closing or termination of any of the Transactions if the motion to approve this Agreement is filed on or before April 1, 2022. Melver will withdraw his motion to dismiss at Closing. Windows will extend its purchase option until Closing, subject to the following earlier termination. If, at any time, Western exercises any rights it may have to terminate its purchase of the Brady Building or the Brady Personal Property, Melver may proceed with the motion and the purchase option will terminate. Any extension of the purchase option herein shall be without prejudice to Window's Operating's right to claim that the purchase option expired on December 31, 2021, as if no extensions have



DocuSign Envelope ID: 205ED53B-C2F5-4BC2-A32F-9137510BE717

been granted and to Loadcraft's right to contest the validity or seek the avoidance of the Sale/Leaseback transaction between Windows and Loadcraft.

14. This Agreement, and the obligations of the Parties under it, is specifically conditioned upon the approval of the United States Bankruptcy Court having jurisdiction of the Bankruptcy case of Loadcraft.

15. This Agreement contains the complete agreement and understanding between the Parties with respect to the subject matter hereof. All prior discussion, documents, negotiations or agreements with respect to the subject matter of this Agreement are superseded by this Agreement.

16. Each Party has had the opportunity to review this Agreement with counsel of their choice and fully understands the terms hereof. Each Party confirms and represents that in entering this Agreement, no Party has relied upon the representations of any other Party that are not specifically stated in this Agreement. Each Party has done their own independent investigation of the facts and circumstances related to the issues involved and the releases and undertakings described herein. The Parties understand and agree that such stipulation will preclude them from asserting that this Agreement was fraudulently induced.

17. This Agreement may be amended or modified only by an agreement in writing executed by all Parties.

18. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. Counterpart signature pages may be detached from separately delivered counterparts of this Agreement and attached to other, identical counterparts of this Agreement, or to a version of this Agreement that is identical to that from which the signature page was detached, n order to create a fully executed original version of this Agreement. Faxed and emailed signature pages shall be deemed originals for all purposes.

19. Each Party, and each of the individuals signing this Agreement on behalf of such Party, hereby represents and warrants to each other Party that: (i) each person signing this Agreement on behalf of such Party has full power and authority to execute and deliver this Agreement and is authorized to sign on behalf of such Party; and (ii) this Agreement has been duly and validly authorized, executed and delivered by such Party and not authorization or third party consent is required except from the United States Bankruptcy Court.

Agreed to and Accepted:

_____
Terry Melver

_____
Ruth Ann Melver

_____
Brady Plant Operators, LLC

DocuSign Envelope ID: 205ED53B-C2F5-4BC2-A32F-9137510BE717

By: Terry McIver

Its: Authorized Representative

Huntland Properties, Ltd, LLC
By: Terry McIver

Its: Authorized Representative

Huntland Resources, LLC
By: Terry McIver

Its: Authorized Representative

Ruth Ann McIver
Passerina Ciris, LLC
By:
Its: Authorized Representative

Glider Manufacturing, LLC
By: Terry McIver

Its: Authorized Representative

Mike Ray
Window Operating, LLC
By: Mike Ray
Its: president

Mike Ray
Mike Ray

_____
Brian Alphonso
03/29/2022

_____
Alphonso Energy, LLC
By:
Its: Chief Executive Officer

_____
Glorious Splendor Too, LLC
By:
Its: Chief Executive Officer

_____
Loadcraft Industries, Ltd.
By:
Its:

_____
Brian Alphonso


_____
Alphonso Energy, LLC
By:
Its:


_____
Glorious Splendor Too, LLC
By:
Its:

_____
Loadcraft Industries, Ltd.
By: CHARLES E. HINKLE
Its: CHIEF OPERATING OFFICER

Charles Hinkle

Nestor Outcomes, LLC
By: CHARLES E. HINKLE
Its: MEMBER / MANAGER

# EXHIBIT B

## SALE AND LEASEBACK AGREEMENT

This Sale and Leaseback Agreement ("**Agreement**") is made and entered into effective May 1, 2021 (the "**Effective Date**"), between **LOADCRAFT INDUSTRIES, LTD.**, a limited partnership organized and existing under the laws of the State of Texas, with its principal office located at 3811 North Bridge Street, McCullough County, Brady, TX 76825 ("**Seller**"), and **WINDOW OPERATING, LTD.**, a limited partnership organized and existing under the laws of the State of Texas with its principal office located at Coleman County, Texas ("**Buyer**"). Seller and Buyer may each be referred to herein as a "Party" and collectively as the "Parties".

### RECITALS

**WHEREAS**, Seller has entered into a contract with Buyer for the acquisition of the certain personal property and real property owned and operated by Buyer.

**WHEREAS**, Seller and Buyer desire that Seller, as owner of real property located in Brown County, Texas, as more particularly described below, and the improvements thereon, shall convey the real property, improvements and certain personal property assets to Buyer and that, thereupon, Buyer shall lease the premises and personal property assets back to Seller, all in accordance with the terms and conditions set forth below.

**WHEREAS**, Seller shall also convey certain personal property assets to Buyer, as set out by list and being more particularly described below, and that, thereupon, Buyer shall lease such assets, equipment, tools, fixtures, computers and any other manufacturing assets as necessary for the continued operation of Seller back to Seller, all in accordance with the terms and conditions set forth below.

**NOW THEREFORE**, for and in consideration of the mutual promises, covenants, and agreements herein contained, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.      **Purchase and Sale.** Seller agrees to sell and convey to Buyer and Buyer agrees to purchase from Seller, upon the terms and conditions hereinafter set forth, all right, title, and interest of Seller in and to the following (collectively referred to herein as the "**Property**") so that Buyer will own the entire Property outright and in fee simple:

(a)     All that certain lot, piece, or parcel of land commonly known as 1001 Gifford, Brownwood, Texas 76801, an office/warehouse facility owned and operated by Seller, and being a 40.11 acre tract of land out of and part of the William H. Irion Survey No. 52, Abstract No. 537 situation in the City of Brownwood, Brown County, Texas; and being the same tract described in a deed recorded in Volume 1641, Page 474 of the Official Public Records of Brown County, Texas (collectively, the "**Land**");

(b)     All buildings and improvements located on the Land and all of Seller's right, title, and interest in and to any and all fixtures attached thereto (collectively, the "**Improvements**");

Sale and Leaseback Agreement

*m R*

**Exhibit 8**

(c)     All equipment, machinery, apparatus, appliances, intellectual property, and other articles of personal property used in connection with the operation of the seller's business including all equipment, tools, materials, fixtures, contractual rights, titles, computer information, to the extent any of same are owned by Seller (collectively, the "**Assets**"). All such Assets are free and clear of liens and encumbrances or will be upon the funding of this agreement. The list, in part, of the equipment, tools, materials and fixtures is attached hereto as **Exhibit "A"** and incorporated herein by reference. Notwithstanding Exhibit "A" it is agreed that the conveyance includes all equipment presently owned by Seller in Brown County, Texas, McCullough County, Texas or elsewhere.

(d)     All rights appurtenant to the Land, if any, including without limitation, any strips and gores abutting the Land, and any land lying in the bed of any street, road, or avenue in front of, or adjoining the Land, to the center line thereof; and

(e)     All other rights, privileges, easements, licenses, appurtenances, and hereditaments relating to the Property.

**2.     Purchase Price.**     The total purchase price shall be One Million five hundred sixty six thousand eight dollars and 99/100 cents ($1,566,008.99), payable by Buyer to Seller on the date of closing via wire transfer as directed by Seller (the "**Purchase Price**").

**Allocation of Sale Price as follows:**

| | |
|---|---|
| **1001 Gifford St, Brownwood TX 76801:** | **$1,200,000.00** |
| **All Other Personal Property:** | **$  366,008.99** |
| **Total:** | **$1,566,008.99** |

**3.     Liens and Encumbrances.**     The Property is to be sold and conveyed subject to the following:

(a)     Zoning and building regulations, ordinances and requirements adopted by any government or municipal authority having jurisdiction, and amendments and additions to such regulations, ordinances and requirements, now in force and effect, that relate to the Land and Improvements;

(b)     All visible and apparent easements or uses and all underground easements or uses, the existence of which arise by unrecorded grant or by us;

(c)     Any portion of the subject property lying within the boundaries of a public or private roadway;

(d)     A Modification and Renewal of Third Lien Deed of Trust to Secure Perfomance in favor of AJS World Wide, S.A. de C.B. executed near in time or contemporaneously with the closing contemplated by this transaction.

Sale and Leaseback Agreement

Apart from the foregoing, the Property is to be sold and conveyed free and clear of all other liens and encumbrances.

**4.** **Title Insurance Policy.** Seller shall deliver to Buyer at the closing a title insurance policy on 1001 Gifford Street for $1,000,000, insuring the interest of Buyer as fee owner of the Land, subject, however, to the matters set forth in this Agreement and the usual standard exceptions of the Title Company issuing the policy. Seller shall use its best efforts to have the policy provide that there are no restrictions of record which contain reversions or forfeitures.

**5.** **Outstanding Assessments, Taxes, etc.** All outstanding property tax assessments shall be settled at closing. Property taxes for 2020 and prior years shall be paid by Seller. Property taxes for 2021 will not be prorated at closing as the Seller is agreeing to pay 2021 taxes as part of the Leaseback agreement described herein.

**6.** **Agreement Regarding Lien Encumbrance.** It is understood that Seller represents that it is the owner of the Land however there is an existing lien described above in paragraph 3(d), that will need to be settled by Seller after closing and that Buyer purchases this land with full knowledge of this existing lien described in Paragraph 3(d). Notwithstanding the foregoing, Seller warrants and represents that it will fully discharge such lien and if seller fails to discharge the lien, the Seller shall be liable for all damages caused by such breach, including the amount necessary to discharge the lien or the fair market value of any property lost to foreclosure of such lien.

**7.** **Seller's Warranties.** Seller represents and warrants that it has authority to sell the property herein described, that the person executing this instrument and any instrument of conveyance is authorized to execute such instruments, and that the personal property herein conveyed, including those items described in the attached Exhibit A, are now and shall hereinafter remain personal property and that they are not and will not become fixtures or attachments to real property as those terms are defined by Texas law.

**8.** **Buyer's Warranties.** Buyer represents and warrants to Seller that Buyer has full power and authority to execute and deliver this Agreement and to perform and carry out all of the covenants and obligations to be performed and carried out by Buyer hereunder. The execution and delivery of this Agreement and the performance by Buyer of all its obligations hereunder have been duly authorized by all necessary action on the part of Buyer, constitute a legal, valid, and binding obligation of Buyer, enforceable against Buyer, and do not conflict with or violate any agreement, judgment, order, lease, or other contract to which Buyer is a party or by which it is bound.

**9.** **Deed and Bill of Sale.** The real property conveyed shall by a Special Warranty Deed subject only to current taxes for the year 2021 and those permitted exceptions set forth in Paragraph 3 above. The personal property conveyed shall be by Special Warranty Bill of Sale, shall be free and clear of any encumbrance, but will provide that such property is sold "As Is."

**10.** **Closing.** Closing shall be held at the office of Brown County Abstract 201 S. Broadway Brownwood TX 76801 at such time as Buyer may designate on notice to Seller. Closing costs charged by the Title Company shall be paid by Seller, unless the Parties agree otherwise in

Sale and Leaseback Agreement

M R

a writing signed and executed by the Parties. Except as provided in this Agreement, each Party shall pay its own attorneys' fees. At closing, the parties agree that the closing/escrow agent shall withhold from the sales proceeds the sum of $110,290.58, which shall be given to the Buyer as six month prepayment for the financial obligation due under the leaseback contemplated below.

11.    **Leaseback.**    At the closing, and immediately after Buyer shall receive a deed to the premises from Seller, Buyer, as lessor, shall enter into a lease of the Land, Improvements and Assets with Seller as lessee, which lease shall be in the form and substance of that attached as **Exhibit "B"** and incorporated by reference (the "**Lease**"). The form of the Lease shall be completed at the closing as follows: the date of the Lease shall be the date of the closing of title; and the commencement date of the initial term of the Lease shall be July 1, 2021. The Lease shall include an exclusive right of first refusal and repurchase option in favor of Lessee, on the terms and conditions set forth in the Lease.

12.    **Notices.**    Any notice to be given by any Party under this Agreement shall be sent by registered or certified mail to the others at the addresses set forth in the lease attached hereto as Exhibit B, or at such other address as may subsequently be designated in writing by such Party.

13.    **Entire Agreement.**    This Agreement constitutes the entire agreement of the Parties and may not be changed or modified except by an agreement in writing signed by the Parties.

14.    **Counterparts.**    This Agreement may be executed by the Parties in separate counterparts, each of which when so executed and delivered shall be an original for all purposes, but all such counterparts shall together constitute but one and the same instrument.

15.    **Legal Construction.**    Words of any gender used in this Agreement shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, and vice versa, unless the context otherwise requires. The agreements contained herein shall not be construed in favor of or against either Party, but shall be construed as if all Parties prepared this Agreement. The paragraph headings herein are used only for the purposes of convenience and shall not be deemed to limit the subject of the paragraphs hereof. Whenever any action must be taken (including the giving of notices) under this Agreement during a certain time period (or by a particular date) that ends or occurs on a non-business day, then such period (or date) shall be extended until the next succeeding business day. As used herein, the term "business day" shall be deemed to mean any day other than a Saturday, a Sunday, or a legal holiday on which national banks are not open for business in the State of Texas.

16.    **Disclosure Statement and Acknowledgment.**    Legal instruments involved herein have been prepared for Seller by the law firm of McMahon Surovik Suttle, PC. The Buyer acknowledges that McMahon Surovik Suttle, PC has acted as counsel to Seller and has not, in any manner, undertaken to assist or render legal or tax advice to the Buyer with respect to this Agreement, or any documents or instruments being executed in connection therewith to Buyer or any other party. Buyer further acknowledge that Buyer is aware that Buyer is free to obtain their own legal counsel and/or tax advisor to advise them regarding this Agreement and the documents prepared in connection therewith.

Sale and Leaseback Agreement

MR

17.  **Waiver.**  Seller agrees that this Sales and Leaseback Agreement shall not be viewed or treated as a loan transaction. Seller further agrees and stipulates that this transaction is a commercial real estate transaction and that truth-in-lending laws and usury laws do not apply. Also, Seller stipulates and agrees that this Sale and Leaseback transaction shall not be viewed as a contract for deed or executory contract for the conveyance of real property and the laws applying to such transactions, including Texas Property Code § 5.061 *et seq.,* do not apply to this transaction. To the extent that any portion of this transaction could be covered by usury, truth-in-lending laws or laws relating executory contracts for the conveyance of real property, such laws, including all rights, remedies and benefits thereunder benefiting the Seller, are hereby knowingly and intentionally waived. In the event that anyone should bring claims against the Buyer arising out of these laws, Seller does hereby agree to fully defend and indemnify Buyer against such claims. Buyer is relying upon Seller's assurances and promise that these laws do not apply and will not be used against the Buyer in the future, and the Seller agrees and acknowledges that the Buyer would not have entered into this transaction absent such assurances.

In witness whereof, each Party to this Agreement has caused it to be executed on the date indicated below.

**SELLER:**

**LOADCRAFT INDUSTRIES, LTD.,**
a Texas limited partnership.

BY: BRADY PLANT OPERATORS
General Partner of Loadcraft Industries, Ltd

By: _Terry Hughes_

Name: _Terry McIver_

Title: _PRESIDENT_

Date: _7/8/21_

**BUYER:**

**WINDOW OPERATING, LTD.,**
a Texas limited partnership.

BY: OAK TREE ENTERPRISES, LLC,
General partner of Window Operating, Ltd.

By: _Mike Ray_

Name: _Mike Ray_

Title: _President_

Date: _7-8-2021_

Sale and Leaseback Agreement