**THE PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION FOR USE IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OF REORGANIZATION DESCRIBED HEREIN. ACCORDINGLY, THE FILING AND DISSEMINATION OF THIS PROPOSED DISCLOSURE STATEMENT ARE NOT INTENDED AND SHOULD NOT IN ANY WAY BE CONSIDERED AS A SOLICITATION OF VOTES ON THE PLAN, NOR SHOULD THE INFORMATION CONTAINED HEREIN BE RELIEF UPON FOR ANY PURPOSE BEFORE A CONDITION DETERMINATION BY THE BANKRUPTCY COURT THAT THE PROPOSED DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| LOADCRAFT INDUSTRIES, LTD. | § | Case No. 21-11018-tmd |
| | § | |
| | § | |
| | § | |

### DEBTOR'S PROPOSED DISCLOSURE STATEMENT
### FOR DEBTOR'S PLAN OF REORGANIZATION

Dated: July 11, 2022

Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19713225
WALLER, LANSDEN DORTCH & DAVIS, LLP
100 Congress Avenue, 18th Floor
Austin, Texas 78701
(512) 472-5997
(512) 472-5248 (FAX)

**ATTORNEYS FOR**
**LOADCRAFT INDUSTRIES, LTD.**

## TABLE OF CONTENTS

**ARTICLE 1. INTRODUCTION** ...........................................................................................2

    1.01    Filing of the Debtor's Chapter 11 Case ...............................................2
    1.02    Holder of Claims and Interests Entitled to Vote.................................4
    1.03    Voting Procedures.................................................................................4
    1.04    Voting Requirements for Class Acceptance of the Plan......................4
    1.05    Confirmation Hearing ..........................................................................5

**ARTICLE 2. DEBTOR'S BACKGROUND AND FINANCIAL PICTURE** ..........................7

    2.01    General................................................................................................. 7

**ARTICLE 3. SELECTED FINANCIAL INFORMATION, PROJECTIONS AND VALUATION ANALYSIS**........................................................................................11

    3.01    General............................................................................................... 11
    3.02    Operating Performance ...................................................................... 11
    3.03    Financial Projections of the Reorganized Debtor .............................. 11
    3.04    Valuation and Description of Debtor's Assets.................................... 11

**ARTICLE 4. SUMMARY OF THE DEBTOR'S PLAN**...............................................12

    4.01    Explanation of Chapter 11 ................................................................ 12
    4.02    Terms of the Plan Control.................................................................. 12
    4.03    Classification and Treatment ............................................................. 12
    4.04    Payments to U.S. Trustee................................................................... 14
    4.05    Discharge of Claims........................................................................... 14
    4.06    Plan Releases and Exculpation ......................................................... 14

**ARTICLE 5. IMPLEMENTATION OF PLAN**..........................................................15

    5.01    Summary of Implementation of the Plan............................................ 15
    5.02    The Reorganized Debtor's Obligations Under the Plan ..................... 15
    5.03    Management of Debtor: ...................................................................... 16
    5.04    Exemption from Transfer Taxes ........................................................ 16
    5.05    Claims Objections ............................................................................. 16
    5.06    Contingent Claims ............................................................................. 16
    5.07    Distributions on Allowance or Disallowance of Disputed Claims ..... 16
    5.08    Undeliverable/Returned Distributions ............................................... 17
    5.09    De Minimis Distributions .................................................................. 17
    5.10    Additional Charges ........................................................................... 17
    5.11    Treatment of Executory Contracts and Unexpired Leases ................. 17
    5.12    Pending Claims and Causes of Action............................................... 18

**ARTICLE 6. CONFIRMATION OF THE PLAN**........................................................**20**

    6.01    Feasibility....................................................................... 20
    6.02    Best Interests Test ......................................................... 20

**ARTICLE 7. ALTERNATIVES TO THE PLAN** .....................................................**21**

    7.01    General ......................................................................... 21
    7.02    Alternative Plans ......................................................... 21
    7.03    Liquidation Under Chapter 7 or Dismissal ....................... 21

**ARTICLE 8. RISK FACTORS** .............................................................................**21**

    8.01    Uncertainty in the Financial Projections and Plan Default................... 21

**ARTICLE 9. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN 22**

    9.01    Income Tax Consequences ................................................. 22

**ARTICLE 10. Jurisdiction of the Court** .............................................................**22**

    10.01  General Retention of Jurisdiction ....................................... 22
    10.02  Specific Purposes ........................................................... 23

**ARTICLE 11. MISCELLANEOUS** .....................................................................**24**

    11.01  Amendment or Modification of the Plan ............................. 24
    11.02  Modification of Loan and Collateral Documents ................. 25
    11.03  Effective Date and Final Decree ....................................... 25

**ARTICLE 12. REQUEST FOR APPROVAL AND ACCEPTANCE OF PLAN**.................**25**

## **IMPORTANT NOTICE**

This Disclosure Statement has not been approved or disapproved by the Securities and Exchange Commission, nor has the Securities and Exchange Commission passed upon the accuracy or adequacy of the statements contained herein.

This Disclosure Statement includes forward-looking statements based largely on the current expectations of the Debtor and projections about future events and financial trends affecting the financial condition of the Debtor or the reorganized Debtor's business. The words "believe," "may," "will," "estimate," "continue," "anticipate," "intend," "expect," and similar expressions identify these forward-looking statements. These forward-looking statements are subject to a number of risks, uncertainties and assumptions, including those described below under the caption "Risk Factors." In light of these risks and uncertainties, the forward looking events and circumstances discussed in this Disclosure Statement may not occur and actual results could differ materially from those anticipated in the forward-looking statements. Neither the Debtor nor the reorganized Debtor undertake any obligations to update or revise any forward-looking statements, whether as a result of new information, result or otherwise.

No representations or other statements concerning the Debtor (particularly as to their future business operations or the value of their assets) are authorized by the Debtor, other than those expressly set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance, which are other than as set forth in this statement, should not be relied upon by you in arriving at your decisions. Any such additional representations and inducements should be reported to counsel for the Debtor who shall deliver such information to the Bankruptcy Court, which may take such action as it deems appropriate.

The information contained herein has not been independently audited, except as specifically referenced herein. The information contained in this Disclosure Statement has been submitted by the Debtor and their internal accounting staff and financial advisors, unless specifically stated to be from other sources. The Debtor's Joint Plan is an integral part of this Disclosure Statement, and each Creditor is urged to review the plan in its entirety prior to voting on it.

The Debtor make no representations with respect to the effects of taxation (state or federal) on the interest holders or creditors with respect to the treatment of their claims or interests under the plan, and no such representations are authorized by the Debtor. Creditors and interest holders are encouraged to seek the advice of their own professional advisors if they have any such questions.

# ARTICLE 1. INTRODUCTION

This Proposed Disclosure Statement is submitted by Loadcraft Industries, Ltd. (the "Debtor"), the chapter 11 Debtor-in-possession, in connection with the Debtor's effort to solicit votes necessary to confirm the Debtor's Plan of Reorganization (the "Plan"). A copy of the Plan is included with the materials supplied in the packet you have received.

## PLAN OVERVIEW

This Plan contemplates a for a reorganization of the Debtor business as an engineering and sales firm focusing on oilfield parts, sales, Category IV rig inspections, rig rebuilds and specialized oilfield equipment, as the Debtor has sold most of its manufacturing equipment and operations during the course of this Bankruptcy case. Creditors will receive periodic payments as described below.

### 1.01 Filing of the Debtor's Chapter 11 Case

On December 30, 2021, the Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code (the "Petition Date" or the "Filing Date"), by filing a voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division ("Court" or "Bankruptcy Court"). The Debtor continues to manage its affairs as a debtor-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108. This Disclosure Statement and the accompanying Plan are filed on behalf of the Debtor. Purpose of Disclosure Statement

The purpose of this Disclosure Statement is to provide you, as the holder of a Claim against the Debtor, with information to enable you to make a reasonably informed decision on the Plan before exercising your right to vote to accept or reject the Plan.[1]

On _____, 2022, after notice and a hearing, the Bankruptcy Court approved this Disclosure Statement as containing information, of a kind and in sufficient detail, adequate to enable the holders of Claims against the Debtor to make an informed judgment to accept or reject the Plan (A copy of the *Order Pursuant to 11 U.S.C. §1125, and FED. R. BANKR. P. 3017 Approving Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Plan* is included in the packet you have received. **THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A GUARANTY OF THE ACCURACY OR COMPLETENESS OF THIS INFORMATION OR THE BANKRUPTCY COURT'S ENDORSEMENT OF THE PLAN.**

You should read all of this Disclosure Statement before voting on the Plan.

---

[1] Capitalized terms that are not defined in the Disclosure Statement are defined in the Plan.

**HOWEVER, THE DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN ITSELF BY EACH HOLDER OF A CLAIM OR INTEREST. THE DISCLOSURE STATEMENT IS INTENDED TO AID AND SUPPLEMENT THAT REVIEW. THE DESCRIPTION OF THE PLAN IS A SUMMARY ONLY. HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST ARE CAUTIONED TO REVIEW THE PLAN AND ANY RELATED ATTACHMENTS IN THEIR ENTIRETY FOR A FULL UNDERSTANDING OF THE PLAN'S PROVISIONS. THE DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN.  IN THE EVENT OF ANY CONFLICT BETWEEN THE TERMS OF THE PLAN AND THE TERMS OF THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN WILL CONTROL.**

You are urged to consult with your own financial and other advisors in deciding whether to vote to approve or reject the Plan. No solicitation of votes may be made except pursuant to this Disclosure Statement, and no person has been authorized to use any information concerning the Debtor or their businesses other than the information contained in this Disclosure Statement.

About this Disclosure Statement:

• The statements contained in this Disclosure Statement are made as of the date that the Bankruptcy Court enters an order approving this Disclosure Statement, unless another time is specified in this Disclosure Statement.  Neither the delivery of this Disclosure Statement nor any action taken in connection with the Plan implies that the information contained in this Disclosure Statement is correct as of any time after that date.

• Unless the context requires otherwise: (a) the gender (or lack of gender) of all words used in this Disclosure Statement includes the masculine, feminine and neuter; (b) references to articles and sections (other than in connection with the Bankruptcy Code, the Bankruptcy Rules, another specified law or regulation or another specified document) refer to the articles and sections of this Disclosure Statement; and (c) "including" means "including, without limitation."

• Many capitalized words used in this Disclosure Statement have been defined in the context of the provisions in which they first appear within this Disclosure Statement.  Any other capitalized terms used in this Disclosure Statement are intended to have the meanings ascribed to them in the Plan.  Any capitalized term not defined in the context of a provision or in the Plan shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules, whichever is applicable.

• You may not rely on this Disclosure Statement for any purpose other than to determine how to vote on the Plan. Nothing contained in this Disclosure Statement constitutes or will be deemed to be advice on the tax or other legal effects of the Plan on holders of Claims or interests.

• Certain of the information contained in this Disclosure Statement is forward-looking. This Disclosure Statement contains estimates and assumptions that may prove not to have

been accurate and financial projections that may be materially different from actual future experiences.

    •    Acceptance or rejection of the Plan is subject to a number of risks. See "Risk Factors" at Section 9 of this Disclosure Statement.

### 1.02    Holder of Claims and Interests Entitled to Vote

Classes III, IV and V are impaired and are entitled to vote to accept or reject the Plan. Claims in Classes I and II are unimpaired, and the holders of claims in those Classes thereof are conclusively presumed to have accepted the Plan. Class VI will receive nothing under the Plan and is deemed to reject the Plan.

### 1.03    Voting Procedures

If you are entitled to vote to accept or reject the Plan, a Ballot (the "<u>Ballot</u>") for acceptance or rejection of the Plan are enclosed. BALLOTS FOR ACCEPTANCE OR REJECTION OF THE PLAN ARE BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASS III, IV and V, BECAUSE THEY ARE THE ONLY HOLDERS OF CLAIMS THAT MAY VOTE TO ACCEPT OR REJECT THE PLAN. If you are the holder of a Claim in one of these Classes and did not receive a Ballot, received a damaged or illegible Ballot, or lost your Ballot, or if you are a party in interest and have any questions concerning the Disclosure Statement and Exhibits hereto, the Plan or the voting procedures in respect thereof, please contact:

Eric J. Taube/Mark C. Taylor
WALLER, LANSDEN DORTCH & DAVIS, LLP
100 Congress Avenue, 18th Floor
Austin, Texas 78701
(512) 685-6400
(512) 685-6417 (FAX)
Email: Eric.taube@wallerlaw.com, mark.taylor@wallerlaw.com

After carefully reviewing this Disclosure Statement, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan, then return the Ballot to the Debtor's counsel, at the address set forth on the Ballot, by **5:00 p.m.,** (Prevailing Central Time) on _____, 2022. Any Ballot not indicating an acceptance or rejection will be deemed an acceptance of the Plan. You may also return your Ballot by courier or fax by following the instructions on the Ballot. **ANY BALLOTS RECEIVED BY THE DEBTOR'S COUNSEL AFTER 5:00 P.M., PREVAILING CENTRAL TIME, ON _____, WILL NOT BE COUNTED, UNLESS THIS DATE IS EXTENDED BY THE BANKRUPTCY COURT.**

### 1.04    Voting Requirements for Class Acceptance of the Plan

YOUR ACCEPTANCE OF THE PLAN IS IMPORTANT. In order for the Plan to be "accepted" by Creditors and interest holders, at least sixty-six and two-thirds percent (66.66%) in amount of Allowed Claims and more than fifty percent (50%) in number of Allowed Claims voting

in each Class must accept the Plan. By not voting, a Creditor favoring acceptance of the Plan jeopardizes confirmation.

### 1.05 Confirmation Hearing

The Bankruptcy Court has entered an order fixing _____ **2022, at** _____ ___**.m.** (Prevailing Central Time), Bankruptcy Courtroom for the Hon. Tony M. Davis 903 San Jacinto, Austin, Texas as the date, time and place for the initial commencement of a hearing on confirmation of the Plan, and fixing _____**, 2022 at** _____ ____ **.m.**, (Prevailing Central Time), as the time by which all objections to confirmation of the Plan, which must be accompanied by a memorandum of authorities, must be filed with the Bankruptcy Court and served on counsel for the Debtor. The confirmation hearing may be adjourned from time to time without further notice except for the announcement of the adjourned time and date at the confirmation hearing or any adjournment thereof.

Section 1128(a) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan must be in writing, conform to Federal Rules of Bankruptcy Procedure and Local Rules of the Bankruptcy Court, set forth the name of the objecting party, the nature and amount of the Claim or Interest held or asserted by the objecting party against the Debtor's Estate, the basis for the objection and the specific grounds thereof. The objection, together with proof of service thereof, must then be filed with the Bankruptcy Court, with copies served upon the following and upon the Limited Service list in this case:

Eric J. Taube/Mark C. Taylor
WALLER LANSDEN DORTCH & DAVIS, LLP
100 Congress Avenue, 18th Floor
Austin, Texas 78701
Email: Eric.taube@wallerlaw.com, mark.taylor@wallerlaw.com

**UNLESS AN OBJECTION IS TIMELY AND PROPERLY SERVED AND FILED BY _____, 2022 AT _____ A.M. (PREVAILING CENTRAL TIME), IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

## SUMMARY OF PROPOSED TREATMENT

| CLASS | TREATMENT |
|---|---|

**Class I – Administrative Claims**

Paid on the Effective Date or as agreed by the parties The postpetition advances made by Glorious Splendor, LLC and Alphonso Energy, LLC shall be treated as Administrative Claims and paid in the same manner as provided for treatment of Class II Tax Claims provided, however, that no lien shall be provided for Glorious Splendor, LLC and Alphonso Energy, LLC.

**Class II – Tax Claims**

Liens retained; payment from on-going operations and cash infusion, in equal monthly installments beginning 60 days after the Effective date plus statutory interest, with final payment no later than 60 months from the Petition Date. Upon the sale of the Brownwood Facility (and equipment therein), these claims will be paid in full from the proceeds or, if the proceeds are insufficient, the balance will be amortized in monthly payments over the remaining term. The Reorganized Debtor shall have the right to sell the Brownwood Facility free and clear of lien claims so long as the proceeds, net of usual and typical closing costs and expenses are paid to the Allowed Trust Fund Taxes.

**Class III – Priority Non-Tax Claims**

Debtor believes there are no Claims in this Class. To the extent such Claims exist, Debtor will pay the Allowed Class III Claims in six (6) monthly installments beginning sixty (60) days from the Effective Date.

**Class IV – General Unsecured Creditors**

Holders of Allowed General Unsecured Claims will receive pro-rata distributions representing ten percent (10%) of their Allowed Claim, paid in equal quarterly installments over a forty-eight (48) month period beginning September 30, 2022. The Reorganized Debtor shall have the right to prosecute, compromise, sell or abandon the Reserved Claims in the exercise of its business judgment. In addition to the distributions provided above, Holders of Allowed General Unsecured Claims shall receive 10% of the proceeds obtained by the Reorganized Debtor from the Reserved Claims net of attorneys' fees and costs

| | |
|---|---|
| | incurred by the Reorganized Debtor in prosecution of such claims.  This Class is impaired. |
| Class V – Unsecured Convenience Class | Holders of claims at or under $500.00 to receive 100% of their Allowed Claim, without interest, in two equal monthly payments on the 30th and 60th day following the Effective Date of the Plan |
| Class VI - Equity Interests | Equity holders will have their equity interest terminated on the Effective Date and will receive nothing under the Plan as a consequence of their pre-petition equity interest. and new equity (i.e. limited partnership interests) shall be issued to Brian Alphonso [67%] and Charles Hinkle [32%], or entities designated by them prior to the Confirmation Hearing, in return for cancellation of all indebtedness owed to each of them, Alphonso Energy, LLC and/or Nestor Outcomes, LLC. other than the Post-Petition amounts provided by Glorious Splendor, LLC and Alphonso Energy, LLC, an entity owned by Mr. Alphonso) 1% of limited partnership interests shall be held by the general partner of the Debtor. |

## ARTICLE 2. DEBTOR'S BACKGROUND AND FINANCIAL PICTURE

### 2.01  General

### A.  History

*Ownership and Operations*

Prior to the Petition Date, Loadcraft specialized in total design and manufacturing of 250-2000HP Drilling and Workover Rigs, Drawworks as well as trailerization and mobilization of all drilling and oilfield related products. Loadcraft specialized in oilfield equipment, mobilization, transportation, and other oilfield services.  From 2004 until December 2021, Debtor was managed by Terry McIver.

Brady Plant Operators, LLC, Huntland Properties, Ltd.. LLC, Huntland Resources, LLC, Passerina Ciris, LLC, Alphonso Energy, LLLC and Nestor Outcomes, LLC,[2] entered into tthat certain *Ownership of Interest and Operations Agreement* (the "Ownership Agreement") on or about May 24, 2017. As of the Petition Date, there were  disputes between the parties as to the effectiveness of the Ownership Agreement, and the ownership, control and rights of the Parties in

---

[2] The Huntland entities and Passarina are affiliated with Terry McIver, and Passarina is owned by Mr. McIver's wife; Alphonso Energy is affiliated with Brian Alphonso; Nestor is affiliated with Charles Hinkle.

Loadcraft. Alphonso Energy, Hinkle and Nestor, as plaintiffs, and Loadcraft, McIver and Glider Prods, as defendants, counter-plaintiffs and third party plaintiffs, and Alphonso, as third party defendant were parties to that case styled *Alphonso Energy, LLC, Charles Hinkle, and Nestor Outcomes, LLC vs Loadcraft Industries, Ltd, Terry McIver, Glider Products, LLC* pending in the 98th District Court of Travis County, Texas, Cause No. D-1-GN-21-002825, concerning, among other things, ownership of the Debtor.

Loadcraft operated out of two facilities:  (1) a manufacturing facility located in Brady, Texas (the "Brady Facility"), and (2) a computer- controlled (CNC) manufacturing facility located in Brownwood, Texas (the "Brownwood Facility").[3]  The Brady Facility real property was owned by Glider Manufacturing, LLC  ("Glider"), an entity owned by Terry McIver,  and leased by the Debtor.

*Sale and Leaseback Agreement*

The Brady Facility personal property was owned by Window Operating, LLC ("Window"), pursuant to a Sale and Leaseback Agreement between Window Operating and Debtor as described below.  The Brownwood Facility, and personal property thereon, was also the subject of the Sale and Leaseback Agreement.

The Debtor and Window entered that certain "Sale and Leaseback Agreement" (the "Agreement") dated effective May 1, 2021.  The Agreement generally provides for the sale of certain real and personal property by the Debtor to Window and lease-back of such property to the Debtor. Pursuant to the terms of the Agreement, Window became the owner of all of the real and personal property at the Brownwood Facility.  The stated purchase price was  $1,566,008.09 under the Agreement, of which $658,901.00  was used to repay a debt owed to Passerina, (an entity owned and controlled by Terry McIver's wife)     which Alphonso and Hinkle contended was unauthorized pursuant to the terms of a written agreement.

In connection with the Agreement, the Debtor and Window also entered a "Lease Agreement" dated as of July 1, 2021.  The Lease Agreement contains a "Lessee's Repurchase Option" in paragraph 18 (the "Repurchase Option"). The Repurchase Option granted the Debtor an exclusive option to repurchase the Brownwood Facility real property, and the equipment sold for both the Brownwood Facility and Brady Facility, back from Window if exercised by the Debtor on or before December 31, 2021.

*Prepetition Debt to Alphonso Energy, LLC  and Nestor Outcomes, LLC*

On or about September 25, 2017, Alphonso Energy loaned Loadcraft $1,100,000.00 as referenced by the Promissory Note and Security Agreement ("Promissory Note").  The loan matured on September 24, 2018; however, the payment was not made, and Alphonso Energy did

---

[3] The operations at the Brownwood facility had been substantially curtailed as of 2020, with only 1-2 workes producing parts at this facility.

not agree to forgive any of the debt. Ultimately, the Promissory Note was replaced by four (4) separate Sales and Bailment Agreements. The total amount of the four sales' agreements and bailment agreements is $1,261,000.00 plus interest at eleven percent (11%) per annum. Additionally, Nestor Outcomes had loaned or extended credit to the Debtor of approximately $840,000.00 , which was outstanding as of the Petition Date.

*Intellectual Property Dispute*

In 2018, McIver, along with Zachary Nash and Gary Weatherman, all while employed by (and in McIver's case an officer, manager and indirect equity owner of) the Debtor and paid by the Debtor for development of the technology, developed a technology for a pipe handling system. This technology was valuable, as McIver and the others knew. A patent application was filed in October 2018. Debtor contends that this constituted "work for hire," and the technology (and, subsequently, the patent described below) were property of the Debtor. McIver caused the technology to be transferred to Glider in October or November 2018, with no known payment being made to the Debtor or other consideration given. On July 28, 2020, a patent, No. US 10,724, 310 B@ (the "Patent") was issued in the name of Glider Products, LLC, as assignee from McIver, Nash and Weatherman. Thereafter, McIver directed Hinkle (as an employee) to prepare a "Patent Assignment and Technology Transfer Agreement" backdated to November 2018, assigning the Patent (and related technology) from the Debtor to Glider. The "consideration" was the payment of $100,000.00. Alphonso refused to execute the consents necessary to authorize the assignment and transfer; however, McIver, without authorization, purported to make the assignment and transfer effective. Additionally, McIver proposed that Loadcraft enter a Manufacturing Agreement to manufacture pipe handling equipment for Glider. No equipment was ever manufactured under the Manufacturing Agreement. Debtor purportedly received the $100,000 however, even assuming this payment was made and allocated for the Patent, the Patent and technology had been assigned to Glider in 2018 for no consideration and without authorization. The transfer was made at a time when the Debtor was insolvent, rendered insolvent, not paying its bills as they became due, and/or lacked adequate working capital. Additionally, McIver has expressed that he desired the Patent and technology to be in Glider's name to attempt "to place them beyond the reach of the Debtor's creditors".

McIver and Glider dispute the material allegations set forth above, and deny that Debtor has any cause of action.

B.        **Events Leading to the Bankruptcy filing**

As of the Petition Date, the Debtor was substantially behind on payments to its vendors, certain employee compensation and was also past due on payments to local tax authorities and to the Internal Revenue Service.  Additionally, the Debtor was being sued by several former vendors, and multiple vendors had obtained judgments and were attempting to execute.  The Debtor lacked adequate capital to sustain operations and make past due payments, and constantly faced cash flow issues jeopardizing the ability to make payroll.  Additionally, as noted above, there were existing disputes regarding ownership and management, and the Debtor faced a December 31, 2021 deadline to exercise the Repurchase Option.

C.        **Operations During Bankruptcy**

Debtor filed for relief on December 30, 2021 and continued its operations during the course of this Chapter 11 case.

On January 10, 2022, Brady Plant Operators, McIver and Glider filed an adversary proceeding, Adv. No. 22-1001, (the "Adversary Proceeding") contesting the filing as being unauthorized and seeking injunctive relief.  Those parties also filed a Motion to Dismiss the Bankruptcy Case.

*Settlement Agreement*

The disputes in the Adversary Proceeding, along with other certain other disputes between the parties described above, were resolved by a "Mutual Release and Settlement Agreement" (the "Settlement Agreement").   The Debtor sought Bankruptcy Court approval for the Settlement Agreement, which the Bankruptcy Court approved by Order dated April 27, 2022 [Dkt. 120]. No creditors or other parties in interest objected to the Settlement Agreement. The Settlement Agreement provided for, among other things, settlement of the ownership dispute and conveyance of all equity interests held by McIver or his affiliates in the Debtor to Alphonso Energy, release of alleged debts owed to McIver, Huntland and Glider, the exercise of  the Repurchase Option by the Debtor for $1,766,033.00, agreement for the sale of the Brady equipment and personal property to Odyssey Design & Manufacturing, Inc. ("Odyssey")and the sale by Glider of the Brady Facility by Glider to Odyssey.  The Settlement Agreement did not release certain "Reserved Claims," relating to the Intellectual Property Dispute described above.

*Sale of Brady Facility Assets*

In connection with the Settlement Agreement, the Debtor sought authority to sell personal property and equipment located at the Brady Facility to Western for $2,600,000.00.   The Bankruptcy Court approved the sale by Order dated April 28, 2022 [Dkt. 123], and the sale closed on June 9, 2022.  The proceeds were used to pay the Repurchase Option, tax liens and closing costs;  the Debtor received net proceeds of $366,514.99 at closing, and there is an additional $310,000.00 being held in escrow that will revert to the Debtor upon satisfaction of certain sale conditions.

*Funding by Alphonso Energy, LLC and Glorious Splendor, LLC*

During the course of the case, Glorious Splendor, LLC provided $75,000.00 unsecured, administrative superpriority financing in order to allow the Debtor to make payroll and pay vendors, which was approved by the Bankruptcy Court by Order dated March 14, 2022 [Dkt. 103]. Additionally, on March 30, 2022, April 7, 2022 and May 12, 2022, Alphonso Energy, LLC advanced capital to the Debtor in the amounts of $25,000, $10,000 and $25,000  for the same purposes.  Alphonso Energy, LLC (owned by Brian Alphonso) likewise advanced the sum of $191,822.64 to pay the First Interim Fee Application of Debtor's counsel, The Plan provides for allowance and payment of these amounts as administrative claims, and paid over a fifty (50) month period.

## ARTICLE 3. SELECTED FINANCIAL INFORMATION, PROJECTIONS AND VALUATION ANALYSIS

### 3.01    General

This section provides summary financial information concerning the Debtor, their assets and potential sources of recovery for creditors. The information is based on information available as of the date of this Disclosure Statement.  Any forward-looking projections, including analysis and valuation of Litigation Claims, is based upon the Debtor's best estimates and belief but, as with any projections, may vary in the future.

### 3.02    Operating Performance

The Debtor's most recent operating report is attached as **Exhibit A**.

### 3.03    Financial Projections of the Reorganized Debtor

Attached as **Exhibit B** are projections for sales, income and expenses for the next 5 years. They are based on the Debtor's historical operations in its engineering and sales business, normalized equipment repairs and anticipated re-focused operations.

### 3.04    Valuation and Description of Debtor's Assets

*Real Property* - Real Estate owns the real property and improvements described as the "Brownwood Facility."  The current Brown County appraisal of the real property is $468,000.00.

*Personal Property* **-** Personal property at the Brownwood facility consists generally of manufacturing equipment, inventory and tools..  In 2015, Hilco valued the personal property at $666,750 (for forced liquidation) and $819,500.00 (for Orderly Liquidation).  The 2020 Brown County personal property rendition valued the personal property at $665,000.00.

Debtor has expended approximately $13,000.00 since the Petition Date to start the process to make the Brownwood Facility operational.  Because of the lack of activity and operations at the Brownwood Facility since 2020, Debtor believes that at least an additional $50,000 will need to be expended to bring the Brownwood Facility to operation status.

Additionally, Debtor may have litigation claims against third parties in connection with activities that occurred prior to the filing date and claims that exist under Chapter 5 of the Bankruptcy Code. These also include the "Reserved Claims" described in the Settlement Agreement. All such claims (the "Estate Claims") are specifically reserved and will be property of the Reorganized Debtor. At the time of the filing of this Disclosure Statement, neither Debtor nor its professionals have done a complete analysis of such claims and are not in a position to value them. However, Debtor intends to timely assert the Reserved Claims.

## ARTICLE 4. SUMMARY OF THE DEBTOR'S PLAN

### 4.01 Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, the plan proponent attempts to restructure a debtor's financial affairs or effectively liquidate the debtor's assets for the benefit of the creditors, equity interest holders and other parties in interest. The Chapter 11 plan is the debtor's agreement with its creditors containing the terms and conditions for the operation and/or liquidation of the properties and assets of the debtor and the treatment of the Claims and interests of creditors and parties-in-interest.

According to Section 1125 of the Code, acceptances of a Chapter 11 plan may be solicited by the debtor only after a written disclosure statement approved by the Bankruptcy Court as containing adequate information has been provided to each creditor or equity interest holder.

### 4.02 Terms of the Plan Control

The following represents the Debtor's best efforts to describe the treatment afforded the Claims of the Creditors in various Classes. Creditors should be aware that the terms of the Plan control the treatment of all Claims. The Plan is attached to this Disclosure Statement as **Exhibit C**. In the event of any inconsistencies between the Plan and this Disclosure Statement, the terms of the Plan shall be, in all events, determinative. The Debtor urges all Creditors to read the Plan for a complete understanding of the treatment of their Claims.

### 4.03 Classification and Treatment

4.03.1 **Class I – Administrative Claims**. Each holder of an Allowed Administrative Claim shall receive from the Debtor with respect to such Allowed Claim, either (i) the amount of such Allowed Claim from the Debtor, in one (1) cash payment on the later of (a) the Effective Date, (b) the date that is sixty (60) days after a request for payment of the Claim is filed, (c) the date that is twenty (20) days after the Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed upon in writing by such holder; provided, however, that an Allowed Administrative Claim representing a liability incurred in the ordinary course of business shall be paid by the Debtor upon presentment or otherwise in accordance with the terms of the particular transaction and any agreements relating thereto. This Class is unimpaired.

Postpetition Advances from Alphonso Energy, LLC and Glorious Splendor, LLC. The postpetition advances made by Alphonso Energy, LLC and Glorious Splendor, LLC shall be treated as Administrative Claims and paid in the same manner as provided for treatment of Class

II Tax Claims provided, however, that no lien shall be provided for Alphonso Energy, LLC and Glorious Splendor, LLC.

     4.03.2  **Class II – Priority Tax/Secured Claims**. Each holder of a Class II Secured Tax Claim, if any exist, shall receive payment of its Allowed Claim, in full, within sixty (60) months from the Petition Date, with statutory interest accruing from the Petition Date, in equal monthly payments beginning sixty (60) days from the Effective Date. If the Reorganized Debtor sells the Brownwood Facility, the remaining amounts of all Priority Tax/Secured Claims shall be paid from the proceeds, with any deficiency paid over the remaining months of the 60-month term.

     Lien for Trust Fund Taxes.  Any state or federal tax authority that holds an Allowed Claim for Trust Fund Taxes shall hold, as of the Effective Date, a lien against the Brownwood Facility for unpaid Trust Fund Taxes until such time as the Allowed Claim for such Trust Fund Taxes is paid.  Any beneficiary of such a lien shall not be entitled to enforce, or foreclose such lien unless the Debtor defaults under this Plan, and the default remains uncured, pursuant to the provisions of this Plan.  The Reorganized Debtor shall have the right to sell the Brownwood Facility free and clear of liens so long as all proceeds from such sale, save and except amounts necessary to pay normal and customary closing costs and expenses are paid against the Allowed Claims for Trust Fund Taxes.

     4.03.3  **Class III - Allowed Priority Non-Tax Claims**.  Allowed Priority Non-Tax Claims will be paid in full over (six) 6 months in equal monthly amounts beginning sixty (60) days following the Effective Date.

     4.03.4  **Class IV - Allowed General Unsecured Claims**.  Holders of Allowed General Unsecured Claims will receive pro-rata distributions representing ten percent (10%) of their Allowed Claim, paid in equal quarterly installments over a forty-eight (48) month period beginning September 30, 2022.  In addition, Holders of Allowed General Unsecured Claims will receive pro-rata distributions of 10% of proceeds received from the prosecution, sale or settlement of the Reserved Claims, net of attorneys' fees and costs paid by the Reorganized Debtor or related parties in connection with the prosecution of such claims. The Reorganized Debtor shall have the right to dispose of, sell, abandon or compromise the Reserved Claims in the exercise of its business judgment. This Class is impaired.

     4.03.5  **Class V – Allowed Convenience Class Claims**.  Holders of Allowed General Unsecured Claims  whose claims are at or below $500.00, or any other Allowed General Unsecured Claim who elects to be treated as an Allowed Convenience Class Claim, will receive 100% of their Allowed Claim in two (2) equal monthly payments on the 60th and 90th day following the Effective Date, without interest. This Class is impaired.

     4.03.6  **Class VI - Equity Interests**. Existing Equity Interests shall be canceled, and new equity (i.e. limited partnership interests) shall be issued to Brian Alphonso [67%] and Charles Hinkle [32%], or entities designated by them prior to the Confirmation Hearing, in return for cancellation of all indebtedness owed to each of them Alphonso Energy, LLC and/or Nestor Outcomes, LLC. (other than the Post-Petition amounts provided by Alphonso Energy, LLC, and

Glorious Splendor, LLC. 1% of limited partnership interests shall be held by the general partner of the Debtor

### 4.04 __Payments to U.S. Trustee.__

Debtor shall make the payments and file all reports required by 28 U.S.C. § 1930(a)(6) until the Bankruptcy Case is closed, converted or dismissed.

### 4.05 __Discharge of Claims__

The rights afforded in the Plan and the payments and distributions to be made thereunder are in complete exchange for, and in full satisfaction and release of, all existing Claims, and, debts and obligations of any kind, nature or description whatsoever of or against the Debtor or any of its assets or property to the fullest extent permitted under Section 1141 of the Bankruptcy Code. Upon confirmation of the Plan, except as provided in the Plan, all existing Claims against the Debtor and the Reorganized Debtor shall be and shall be deemed to be discharged. All holders of Claims or Equity Interest shall be precluded from asserting against the Debtor, or any of its assets or property, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of Claim or proof of interest, except as provided in the Plan. Upon the Effective Date, the Debtor shall be deemed discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim or Interest based upon such obligation is filed or deemed filed under Section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt is Allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of a Claim or Interest based upon such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor and the Reorganized Debtor. In accordance with Section 524 of the Bankruptcy Code, the discharge provided for hereunder shall void any judgment against the Debtor to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtor or its Property to the extent it relates to a discharged Claim, except as provided in the Plan.

### 4.06 __Plan Releases and Exculpation__

None of the Debtor, Reorganized Debtor, their counsel, or any other party in interest, or any of their respective members or former partners, general partners, members, agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, shall be liable to the Reorganized Debtor or any creditor for any act or omission in connection with, relating to or arising out of the Chapter 11 Case, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan (the "Chapter 11 Activities"), except for their acts or omissions constituting willful misconduct or gross negligence, as finally determined by a court of competent jurisdiction.

## ARTICLE 5.  IMPLEMENTATION OF PLAN

### 5.01    Summary of Implementation of the Plan

All Cash necessary for the Reorganized Debtor to make payments pursuant to the Plan shall be obtained from operations of the Debtor and, potentially, a sale of the Brownwood Facility. Reorganized Debtor may issue additional equity and/or limited partnership interests as deemed reasonable and necessary in the exercise of its business judgment.

### 5.02    The Reorganized Debtor's Obligations Under the Plan

The Reorganized Debtor shall jointly perform all of the obligations under the Plan, including obligations to pay or otherwise satisfy the Allowed Claims. From and after the Effective Date, the Reorganized Debtor shall, among other things:

(1)    administer the Plan and take all steps and execute all instruments and documents necessary to effectuate the Plan;

(2)    reconcile Claims and resolve Disputed Claims, including compliance with any order of the Court arising from the Section 506 valuation, and administer the Claims allowance and disallowance processes as set forth in the Plan, including, without limitation, objecting, prosecuting, litigating, reconciling, settling and resolving Claims and Disputed Claims in accordance with the Plan;

(3)    make decisions regarding the retention, engagement, payment and replacement of professionals, employees and consultants;

(4)    administer the Distributions under the Plan including (i) making Distributions in accordance with the terms of the Plan and (ii) establishing and maintaining the various Reserves;

(5)    exercise such other powers as necessary or prudent to carry out the provisions of the Plan;

(6)    invest any Cash pending Distribution;

(7)    file appropriate tax returns; and

(8)    take such other actions as may be necessary or appropriate to effectuate this Plan.

Following the Effective Date the Debtor may pay their post Effective Date operating expenses in the ordinary course of its business without notice or orders of this Court.

**5.03    Management of Debtor:**

On and after the Effective Date, Charles Hinkle will be Chief Executive Office of each of the reorganized Debtor.

**5.04    Exemption from Transfer Taxes**

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan or the making or delivery of any deed or other instrument or transfer under, in furtherance of, or in connection with the Plan, including without express or implied limitation, any transfers to or by the Reorganized Debtor shall not be subject to any transfer, sales, stamp or other similar tax.

**5.05    Claims Objections**

Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed before the Effective Date including any order of the Bankruptcy Court pursuant to §506 of the Bankruptcy Code, the Reorganized Debtor may object to the Allowance of any Claim against the Debtor or seek estimation of any Claim on any grounds permitted by the Bankruptcy Code.   All objections to Claims must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is 60 days after the Effective Date, but the Bankruptcy Court may approve a later date on the Reorganized Debtor's motion filed (but not necessarily heard) before the first Business Day that is 60 days after the Effective Date.  Debtor may contest the amount of attorney's fees and interest sought by any creditor. ***Debtor reserves the right to object to or seek estimation of any claims. A VOTE FOR THE PLAN WILL NOT EXCULPATE OR EXCLUDE ANY CLAIMANT FROM HAVING ITS CLAIM OBJECTED TO OR BE DEEMED AN ALLOWANCE OF SUCH CLAIM.***

**5.06    Contingent Claims**

Until a Contingent Claim becomes an Allowed Claim or is determined to be a Disallowed Claim, the Claim will be treated as a Disputed Claim for all purposes under this Plan. The holder of a Contingent Claim will be entitled to a distribution under this Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with the Debtor on a Claim of a Creditor is Disallowed as of the Effective Date if: (a) that Creditor's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Creditor under Bankruptcy Code § 509.

**5.07    Distributions on Allowance or Disallowance of Disputed Claims**

No distributions will be made to any holder of a Claim unless and until the Claim becomes an Allowed Claim. If a Claim is not an Allowed Claim as of the Effective Date, distributions on account of that Claim will commence only when the Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in this Plan.  If a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor will make a distribution in accordance with the terms of this Plan applicable to Claims of the Class in which that Claim resides.

### 5.08 Undeliverable/Returned Distributions

Any distribution to be made to a Creditor will be sent to that Creditor at (i) the address set forth on the proof of claim filed for such Creditor, or (ii) if no proof of claim is filed, at the address set forth on the Debtor schedules. In the event that a distribution as herein provided is returned as undeliverable, or a distribution is returned on account of there being no payment due to the affected Creditor, the Reorganized Debtor shall hold such distribution for the affected Creditor for a period of 60 days following the Date of that distribution for the benefit of the Creditor. If the affected Creditor does not make a demand, in writing, for such unclaimed distribution within the 60-day period, the Creditor shall forfeit all entitlement to the distribution, and the distribution shall revert to the Reorganized Debtor.

### 5.09 De Minimis Distributions

Any other provision of the Plan notwithstanding, the Reorganized Debtor shall not be required to make distributions to holders of Allowed Claims in an amount less than $50.00 (unless such Allowed Claim is less than $50.00). Cash allocated to an Allowed Claim but withheld from distribution pursuant to this subsection shall be held for the account of and future distribution to the holder of such Allowed Claim.

### 5.10 Additional Charges

Except as may be expressly provided in the Plan or allowed by Final Order of the Bankruptcy Court, no interest, penalty, attorney's fee or late charge shall be allowed or paid with respect to any Claim.

### 5.11 Treatment of Executory Contracts and Unexpired Leases

(a) **Assumption or Rejection of Executory Contracts and Unexpired Leases**. On the Effective Date, except as otherwise provided in the Plan and/or designated in a List of Contracts to be Assumed ( the "Assumption List") filed ten (ten) days prior to the date of the Confirmation Hearing, any unexpired lease or executory contract that has not been previously assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court (including any distribution agreement) shall be deemed rejected by the Debtor under Sections 365(a) and 1123 of the Bankruptcy Code, other than those executory contracts and unexpired leases that are (a) identified in the Plan or the Assumption List or (b) subject to a motion to assume that is pending on the Effective Date. Entry of the Confirmation Order shall constitute approval of such assumptions, and the rejection of the executory contracts or unexpired leases. Any motions to assume executory contracts and unexpired leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

(b) **Objections to Assumption and Assignments of Executory Contracts and Unexpired Leases**. To the extent that any party to an executory contract or unexpired lease identified for assumption, or any other party in interest, (a) asserts arrearages or damages pursuant to § 365(b)(1) of the Bankruptcy Code in an amount different from the amount, if any, set forth in the notice to be filed (b) has any objection to the proposed adequate assurance of future

performance, if required, or (c) has any other objection to the proposed assumption, cure, or assignment of a particular executory contract or unexpired lease on the terms and conditions provided for herein, all such asserted arrearages and any other objections shall be filed and served within the same deadline and in the same manner established for filing objections to Confirmation.

Failure to assert any arrearages different from the amount set forth in the Assumption List, or to file an objection within the time period set forth above, shall constitute consent to the assumption, cure, and assignment on the terms provided for herein, including acknowledgment that (a) the Debtor (or its assignee) has provided adequate assurance of future performance, if required, (b) the amount identified for "cure," if any, is the amount necessary to compensate for any and all outstanding defaults or actual pecuniary loss under the executory contract or unexpired lease to be assumed, and (c) no other defaults exist under such executory contract or unexpired lease.

If an objection to assumption and assignment is filed based upon lack of adequate assurance of future performance or otherwise, and the Court determines that the Debtor cannot assume the executory contract or unexpired lease either as proposed or as may be proposed pursuant to a modified proposal submitted by the Debtor, then the unexpired lease or executory contract shall automatically thereupon be deemed to have been rejected.

(c)     **Payments Related to Assumption of Executory Contracts and Unexpired Leases**. Any monetary defaults, including claims for actual pecuniary loss, under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount, if any, as otherwise agreed by the parties, or as ordered by the Bankruptcy Court in Cash within 90 days following the Effective Date, or on such other terms as may be agreed to by the parties to such executory contract or unexpired lease.  In the event of a dispute regarding (a) the amount of any cure or pecuniary loss payment, (b) the ability of Reorganized Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, if required, or (c) any other matter pertaining to assumption, the cure or pecuniary loss payments required by § 365(b)(1) of the Bankruptcy Code shall be made within a reasonable time following entry of a Final Order resolving the dispute and approving assumption.

(d)     **Bar Date for Rejection Damages**. If the rejection of an executory contract or unexpired lease gives rise to a Claim by the other party or parties to such contract or lease, such Claim, to the extent that it is timely Filed and is a Allowed Claim, shall be classified in Class VII; provided, however, that the Unsecured Claim arising from rejection shall be forever barred and shall not be enforceable against Debtor, Reorganized Debtor, their successors or properties, unless a proof of Claim is Filed and served on the Reorganized Debtor within 30 days after the date of the notice of the entry of an order of the Bankruptcy Court authorizing rejection of the executory contract or unexpired lease, which order may be the Confirmation Order.

### 5.12     Pending Claims and Causes of Action

The following is a general discussion of the type and nature of claims and causes of action of the Estate:

NOTE: THE FOLLOWING DISCUSSION IS NOT INTENDED TO BE EXHAUSTIVE AND SHALL NOT LIMIT OR MODIFY ANY CLAIMS OR CAUSES OF ACTION OF THE ESTATE.

Some of the payments made by the Debtor to creditors within ninety (90) days of the filing of bankruptcy (or to an insider within one year of the filing of bankruptcy) may be subject to a claim for recovery as preferential transfers under 11 U.S.C. §547. A listing of such payments and creditors is contained in Debtor's schedules filed with the Bankruptcy Court in this case and is attached as **Exhibit D** hereto.

**ALL CLAIMS OF THE BANKRUPTCY ESTATE ARE BEING PRESERVED UNDER THE PLAN.**

**Any and all causes of action which the Debtor may have, including, but not limited to Avoidance Actions and the Reserved Claims, which may be enforceable under applicable law, shall be preserved and may be pursued by the Reorganized Debtor. The Court shall retain jurisdiction to determine all such causes of action.**

**YOU MAY BE SUED IF:**

i)    You were or are a creditor and you received a payment on a prior debt within ninety (90) days before the Petition Date whether or not the Debtor has scheduled a payment within this time frame;

ii)   You were an insider of the Debtor and you received a payment on a prior debt within one (1) year before the Petition Date whether or not the Debtor has scheduled a payment within this time frame;

iii)  You received any payments or property from the Debtor for goods or services you did not deliver or provide before the Petition Date;

iv)   You received any payments of property from the Debtor without providing reasonably equivalent value;

v)    You received pre-payments, advances or deposits from the Debtor which you did not earn;

vii)  You were involved in pending litigation with the Debtor at the time of the Petition Date or have been sued thereafter;

viii) You owe the Debtor any money under a contract or as a result of your breach of contract with the Debtor;

ix)   Potential claims against you or any of your affiliates are described or referred to in this Disclosure Statement; or

x)     The Debtor has any claims against you under state or federal law, whether in contract or in tort, whether known or unknown.

**CLAIMS RELATING TO INTELLECTUAL PROPERTY/RESERVED CLAIMS**: The Debtor has the claims and causes of action relating to the Intellectual Property Dispute described above, and which are "Reserved Claims" under the Settlement Agreement.

## ARTICLE 6. CONFIRMATION OF THE PLAN

### 6.01    Feasibility

As a condition to confirmation of a plan, Section 1129 of the Bankruptcy Code requires, among other things, that the Bankruptcy Court determine that confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor.

The projections set forth in Exhibit B are Debtor's best estimate of the revenues and expenses under the Plan, and demonstrate the Plan's feasibility.

### 6.02    Best Interests Test

In order to confirm the Plan, the Court must find that each holder of an impaired Claim or Equity Interest either (i) accepted the Plan or (ii) received or retained under the plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the debtor was liquidated under Chapter 7 of the Bankruptcy Code. In a typical Chapter 7 case the debtor ceases operations and a trustee is appointed to conduct an orderly liquidation of the debtor's assets.  The proceeds, net of trustee's fees and other costs and expenses incurred in conducting the liquidation, are distributed to creditors in accordance with their rights and statutorily prescribed priorities of payment.

If this Case was converted to a liquidation under Chapter 7, Debtor believe that secured creditors would receive their collateral and there would be no assets available to administrative creditors or unsecured creditors, except possible proceeds from causes of action which are being conveyed to the Trust.  Debtor believe and assert that the proposed Plan is better than liquidation because (1) the Debtor believes that he orderly liquidation value of its remaining assets is less than going-concern value; (2) Brian Alphonso, along with Charlie Hinkle, are converting the prepetition debt owed to their entities to equity,  which would not occur in a Chapter 7 and (3) the Debtor will pursue the litigation on the IP Claims, which may or may not occur in a Chapter 7.

Based upon the foregoing liquidation analysis, unsecured creditors and equity interest holders would receive no distributions on account of their Claims in a Chapter 7 liquidation.  Under the Plan, those creditors will receive distributions at least in the amount that they would get in a Chapter 7 Liquidation.

## ARTICLE 7. ALTERNATIVES TO THE PLAN

### 7.01    General

The Debtor believe that the Plan affords the holders of Claims the potential for the greatest realization on the Debtor's assets and, therefore, is in the best interests of such holders.  If the Plan is not confirmed, however, the theoretical alternatives include: (a) an alternative plan of reorganization; or (b) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code; or (c) dismissal of the Chapter 11 Case.  BASED UPON DEBTOR'S ASSESSMENT, UNSECURED CREDITORS WOULD LIKELY RECEIVE LOWER DISTRIBUTIONS IN A CHAPTER 7 CASE OR IN THE EVENT OF DISMISSAL OF THE CASE.  The Debtor's property, if liquidated, would be utilized to pay priority tax and administrative claims, with no operations to fund periodic payments to unsecured creditors.

### 7.02    Alternative Plans

If the Plan is not confirmed, the Debtor or any other party in interest in the case could attempt to formulate and propose a different plan.  Other parties may propose alternative plans, but the Debtor does not believe that any other plan will provide a greater recovery for the Creditors than proposed by Debtor's Plan, or that any such plans will be feasible.

### 7.03    Liquidation Under Chapter 7 or Dismissal

If no Plan can be confirmed, this Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code. In a Chapter 7 case, a trustee would be elected or appointed to liquidate the assets of the Debtor.  The proceeds of the liquidation would be distributed to the respective holders of Claims against the Debtor in accordance with the priorities established by the Bankruptcy Code.  Debtor does not believe that a liquidation of their assets would produce proceeds that exceed the secured and administrative claims.

As set forth in the preceding section, the Plan is clearly superior to a Chapter 7 liquidation. No separate liquidation analysis has been prepared as an exhibit.

## ARTICLE 8. RISK FACTORS

The risk factors are discussed in Section 7 above.

### 8.01    Uncertainty in the Financial Projections and Plan Default

The Projections are based on numerous assumptions that are an integral part of the projections and are detailed in paragraph 3.03 of this Disclosure Statement.  The assumptions and estimates underlying the projections are inherently uncertain and are subject to business, economic and competitive risks and other uncertainties which could materially affect the accuracy of the Projections.  Consequently, the Projections contained in this Disclosure Statement are not intended, nor should they be received as representations that the projections will be achieved. In the event of a default under the Plan, such default in the performance of the Plan shall not automatically result in the termination of the Plan or constitute a revocation of the Confirmation

order.  In the event of a default by the Debtor under the Plan, the Creditors, after giving a ten (20) day written notice and opportunity to cure to the Debtor, with a copy to counsel for the Debtor, may exercise any rights granted to them under documents executed to evidence the Plan or any rights available to them under applicable non-bankruptcy law. In the absence of a document executed to evidence the Plan, this Plan may be enforced as a contract by filing suit to collect the payments required under the Plan as if the Plan were a promissory note or other written contract.

## ARTICLE 9. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

### 9.01   Income Tax Consequences

The transactions contemplated by the confirmation of the Plan may have an impact on the tax treatment received with respect to distributions under the Plan.  That impact may be adverse to a creditor or interest holder.  The Debtor has attempted to structure the Plan to preserve any valuable tax attributes.

An analysis of federal income tax consequences of the Plan to creditors, interest holders, and the Debtor requires a review of the Internal Revenue Code ("IRS Code"), the Treasury regulations promulgated there under, judicial authority and current administrative rulings and practice.  The Plan and its related tax consequences are complex. Neither the Debtor nor the Debtor's counsel have requested a ruling from the Internal Revenue Service with respect to these matters.  Accordingly, no assurance can be given as to the IRS's interpretation of the Plan.

THE TRANSACTION CONTEMPLATED BY THE CONFIRMATION OF THE PLAN MAY HAVE AN IMPACT ON THE TAX TREATMENT OF ANY CREDITOR OR INTEREST HOLDER.  THAT IMPACT MAY BE ADVERSE TO THE CREDITOR OR INTEREST HOLDER.  NOTHING HEREIN IS INTENDED TO BE ADVICE OR OPINION AS TO THE TAX IMPACT OF THE PLAN ON ANY INDIVIDUAL CREDITOR OR INTEREST HOLDER. EACH CREDITOR OR INTEREST HOLDER IS CAUTIONED TO OBTAIN INDEPENDENT AND COMPETENT TAX ADVICE PRIOR TO VOTING ON THE PLAN.

## ARTICLE 10. JURISDICTION OF THE COURT

### 10.01   General Retention of Jurisdiction

Until the Bankruptcy Case is closed, the Bankruptcy shall retain the fullest and most extensive jurisdiction permissible, including, without limitation, that necessary (a) to ensure that the purposes and intent of the Plan are carried out, (b) to enforce and interpret the terms and conditions of the Plan, and (c) to enter such orders or judgments including, without limitation, injunctions necessary to enforce the rights, title, and powers of the Debtor and/or the Reorganized Debtor.  Except as otherwise provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against and Interests in the Debtor and to adjudicate and enforce all other causes of action that may exist on behalf of the Debtor.

### 10.02  Specific Purposes

Without limiting the effect of Section 11.01 the Bankruptcy Court shall retain jurisdiction after Confirmation to:

(a)　　modify the Plan after entry of the Confirmation Order, pursuant to the provisions of the Plan, the Bankruptcy Code, and the Bankruptcy Rules;

(b)　　correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modifications in or to the Plan, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(c)　　hear and determine any cause of action, and to enter and implement such orders as may be necessary or appropriate, to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

(d)　　hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, and to enforce, including by specific performance, the provisions of the Plan;

(e)　　hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the settlement agreements, asset purchase agreements or other agreements entered into by the Debtor during the Case,

(f)　　enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, transfers of property or property rights, or other obligations contained in the Plan and the Confirmation Order;

(g)　　assure the performance by Reorganized Debtor of their obligations to make distributions under the Plan;

(h)　　enter such orders or judgments, including injunctions, as necessary to enforce the title, rights, and powers of the Debtor, Reorganized Debtor, or the Plan;

(i)　　hear and determine any and all adversary proceedings, applications, and contested matters, including any remands after appeal;

(j)　　ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(k)　　hear and determine any timely objections to or motions or applications concerning Claims or the allowance, classification, priority, compromise, setoff, estimation, or payment of any Claim, to the fullest extent permitted by the provisions of Section 157 of title 28 of the United States Code;

(l)      enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(m)      hear and determine any motions, contested matters or adversary proceedings involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtor and/or Reorganized Debtor arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Case;

(n)      hear and determine all applications for the employment or compensation of Professional Persons and reimbursement of expenses under Sections 330, 331, or 503(b) of the Bankruptcy Code or the Plan;

(o)      recover all assets of the Debtor and Property of the Estates wherever located, including actions under chapter 5 of the Bankruptcy Code;

(p)      hear and determine any and all motions pending as of the Confirmation Date for the rejection, assumption, or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

(q)      hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(r)      consider and act on the compromise and settlement of any Claim against, or Interest in, the Debtor, including, without limitation, any disputes relating to any Administrative Claims, any Bar Date, or Bar Date Order;

(s)      hear and determine all questions and disputes regarding title to the assets of the Debtor, its respective Estate;

(t)      hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Case; and

(u)      enter such orders as are necessary to implement and enforce any injunctions provided for in the Plan and Confirmation Order.

## ARTICLE 11. MISCELLANEOUS

### 11.01   Amendment or Modification of the Plan

This Plan may be amended or modified by the Debtor prior to the hearing on confirmation without notice or hearing and without an additional Disclosure Statement pursuant to § 1127(a) of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 3019. Post-confirmation amendments or modifications of the Plan may be allowed by the Court under § 1127(b) of the Bankruptcy Code if the proposed amendment or modification is offered before the Plan has been substantially consummated. The sole right to amend or modify the Plan at any time shall be reserved to the Debtor.

**11.02**  **Modification of Loan and Collateral Documents**

To the extent that the Plan proposes changes in the treatment of Allowed Secured Claims, restated or amended or modified documents will be executed in order to properly document and reflect the terms of the Plan for the benefit and protection of the affected lender. The form of such documents will be subject to lender approval.

**11.03**  **Effective Date and Final Decree**

The Effective Date will be the first Business Day that is fourteen (14) days after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect; and (b) all conditions to effectiveness set forth in the Plan have been satisfied or waived in accordance with the terms of the Plan.  No payments to creditors will be made prior to the Effective Date.  Debtor intends to file a motion for entry of a final decree within six (6) months form the Effective Date. Debtor will file and serve a notice of the Effective Date of the Plan within five business days of the Effective Date.

## ARTICLE 12. REQUEST FOR APPROVAL AND ACCEPTANCE OF PLAN

WHEREFORE, Debtor submits this Disclosure Statement and the information contained therein, in good faith, in accordance with the provisions of Title 11, U.S.C. § 101 et. seq. for consideration by Creditors and other parties in interest, and as the sole source of information furnished by the Debtor, or to be furnished by the Debtor, in solicitation of acceptance of Debtor's Plan.

Dated: July 11, 2022

Respectfully submitted,

LOADCRAFT INDUSTRIES, LTD.

By: Charles E. Hinkle
Its: CEO

Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19713225
WALLER, LANSDEN, DORTCH & DAVIS, LLP
100 Congress Avenue, 18th Floor
Austin, Texas 78701
(512) 472-5997
(512) 472-5248 (FAX)

ATTORNEYS FOR DEBTOR

# **EXHIBIT A**

**Monthly Operating Report**

# UNITED STATES BANKRUPTCY COURT

Western  DISTRICT OF  Texas

Austin Division

| | | |
|---|---|---|
| In Re. Loadcraft Industries, Ltd. | § | Case No.  21-11018 |
| | § | |
| | § | |
| Debtor(s) | § | ☐ Jointly Administered |

# Monthly Operating Report

Chapter 11

Reporting Period Ended: 05/31/2022                    Petition Date: 12/30/2021

Months Pending: 5                    Industry Classification: | 2 | 1 | 3 | 1 |

Reporting Method:          Accrual Basis ⦿          Cash Basis ◯

Debtor's Full-Time Employees (current):          35

Debtor's Full-Time Employees (as of date of order for relief):          38

## Supporting  Documentation  (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

☒     Statement of cash receipts and disbursements
☒     Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
☒     Statement of operations (profit or loss statement)
☒     Accounts receivable aging
☒     Postpetition liabilities aging
☐     Statement of capital assets
☒     Schedule of payments to professionals
☒     Schedule of payments to insiders
☒     All bank statements and bank reconciliations for the reporting period
☐     Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Eric J. Taube

Signature of Responsible Party

06/24/2022

Date

Eric J. Taube

Printed Name of Responsible Party

100 Congress Ave., 18th Floor
Austin, TX 78701

Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

Debtor's Name  Loadcraft Industries, Ltd.

Case No.  21-11018

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a.  Cash balance beginning of month | $29,506 | |
| b.  Total receipts (net of transfers between accounts) | $253,448 | $1,017,560 |
| c.  Total disbursements (net of transfers between accounts) | $245,745 | $1,319,910 |
| d.  Cash balance end of month (a+b-c) | $37,209 | |
| e.  Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f.  Total disbursements for quarterly fee calculation (c+e) | $245,745 | $1,319,910 |

| Part 2:  Asset and Liability Status<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | |
|---|---|---|
| a.  Accounts receivable (total net of allowance) | $18,826 | |
| b.  Accounts receivable over 90 days outstanding (net of allowance) | $0 | |
| c.  Inventory      (Book ◉   Market ◯   Other ◯    (attach explanation)) | $944,867 | |
| d  Total current assets | $1,124,563 | |
| e.  Total assets | $1,124,563 | |
| f.  Postpetition payables (excluding taxes) | $227,687 | |
| g.  Postpetition payables past due (excluding taxes) | $136,154 | |
| h.  Postpetition taxes payable | $0 | |
| i.  Postpetition taxes past due | $0 | |
| j.  Total postpetition debt (f+h) | $227,687 | |
| k.  Prepetition secured debt | $1,100,000 | |
| l.  Prepetition priority debt | $1,166,030 | |
| m.  Prepetition unsecured debt | $6,062,683 | |
| n.  Total liabilities (debt) (j+k+l+m) | $8,556,401 | |
| o.  Ending equity/net worth (e-n) | $-7,431,838 | |

| Part 3:  Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a.  Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b.  Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c.  Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4:  Income Statement (Statement of Operations)<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a.  Gross income/sales (net of returns and allowances) | $335,650 | |
| b.  Cost of goods sold (inclusive of depreciation, if applicable) | $281,124 | |
| c.  Gross profit (a-b) | $54,526 | |
| d.  Selling expenses | $11,630 | |
| e.  General and administrative expenses | $27,003 | |
| f.  Other expenses | $0 | |
| g.  Depreciation and/or amortization (not included in 4b) | $0 | |
| h.  Interest | $616 | |
| i.  Taxes (local, state, and federal) | $0 | |
| j.  Reorganization items | $0 | |
| k.  Profit (loss) | $15,276 | $121,819 |

UST Form 11-MOR (12/01/2021)

Debtor's Name  Loadcraft Industries, Ltd.                    Case No.  21-11018

| Part 5:  Professional Fees and Expenses | | | | | |
|---|---|---|---|---|---|
| | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
| a. | Debtor's professional fees & expenses (bankruptcy) *Aggregate Total* | $191,823 | $266,823 | $191,823 | $266,823 |
| | *Itemized Breakdown by Firm* | | | | |
| | Firm Name | Role | | | |
| i | Waller Lansden Dortch and Davis | Lead Counsel | $191,823 | $266,823 | $191,823 | $266,823 |
| ii | | | | | |
| iii | | | | | |
| iv | | | | | |
| v | | | | | |
| vi | | | | | |
| vii | | | | | |
| viii | | | | | |
| ix | | | | | |
| x | | | | | |
| xi | | | | | |
| xii | | | | | |
| xiii | | | | | |
| xiv | | | | | |
| xv | | | | | |
| xvi | | | | | |
| xvii | | | | | |
| xviii | | | | | |
| xix | | | | | |
| xx | | | | | |
| xxi | | | | | |
| xxii | | | | | |
| xxiii | | | | | |
| xxiv | | | | | |
| xxv | | | | | |
| xxvi | | | | | |
| xxvii | | | | | |
| xxviii | | | | | |
| xxix | | | | | |
| xxx | | | | | |
| xxxi | | | | | |
| xxxii | | | | | |
| xxxiii | | | | | |
| xxxiv | | | | | |
| xxxv | | | | | |
| xxxvi | | | | | |

Debtor's Name  Loadcraft Industries, Ltd.                                    Case No.  21-11018

| | | | | | |
|---|---|---|---|---|---|
| xxxvii | | | | | |
| xxxvii | | | | | |
| xxxix | | | | | |
| xl | | | | | |
| xli | | | | | |
| xlii | | | | | |
| xliii | | | | | |
| xliv | | | | | |
| xlv | | | | | |
| xlvi | | | | | |
| xlvii | | | | | |
| xlviii | | | | | |
| xlix | | | | | |
| l | | | | | |
| li | | | | | |
| lii | | | | | |
| liii | | | | | |
| liv | | | | | |
| lv | | | | | |
| lvi | | | | | |
| lvii | | | | | |
| lviii | | | | | |
| lix | | | | | |
| lx | | | | | |
| lxi | | | | | |
| lxii | | | | | |
| lxiii | | | | | |
| lxiv | | | | | |
| lxv | | | | | |
| lxvi | | | | | |
| lxvii | | | | | |
| lxviii | | | | | |
| lxix | | | | | |
| lxx | | | | | |
| lxxi | | | | | |
| lxxii | | | | | |
| lxxiii | | | | | |
| lxxiv | | | | | |
| lxxv | | | | | |
| lxxvi | | | | | |
| lxxvii | | | | | |
| lxxvii | | | | | |

Debtor's Name Loadcraft Industries, Ltd.                Case No. 21-11018

| | | | | | |
|---|---|---|---|---|---|
| lxxix | | | | | |
| lxxx | | | | | |
| lxxxi | | | | | |
| lxxxii | | | | | |
| lxxxiii | | | | | |
| lxxxiv | | | | | |
| lxxxv | | | | | |
| lxxxvi | | | | | |
| lxxxvii | | | | | |
| lxxxviii | | | | | |
| lxxxix | | | | | |
| xc | | | | | |
| xci | | | | | |
| xcii | | | | | |
| xciii | | | | | |
| xciv | | | | | |
| xcv | | | | | |
| xcvi | | | | | |
| xcvii | | | | | |
| xcviii | | | | | |
| xcix | | | | | |
| c | | | | | |
| ci | | | | | |

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy) *Aggregate Total* | | | $0 | | |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| i | | | | $0 | | |
| ii | | | | | | |
| iii | | | | | | |
| iv | | | | | | |
| v | | | | | | |
| vi | | | | | | |
| vii | | | | | | |
| viii | | | | | | |
| ix | | | | | | |
| x | | | | | | |
| xi | | | | | | |
| xii | | | | | | |
| xiii | | | | | | |
| xiv | | | | | | |

Debtor's Name  Loadcraft Industries, Ltd.                          Case No.  21-11018

| | | | | | |
|---|---|---|---|---|---|
| xv | | | | | |
| xvi | | | | | |
| xvii | | | | | |
| xviii | | | | | |
| xix | | | | | |
| xx | | | | | |
| xxi | | | | | |
| xxii | | | | | |
| xxiii | | | | | |
| xxiv | | | | | |
| xxv | | | | | |
| xxvi | | | | | |
| xxvii | | | | | |
| xxviii | | | | | |
| xxix | | | | | |
| xxx | | | | | |
| xxxi | | | | | |
| xxxii | | | | | |
| xxxiii | | | | | |
| xxxiv | | | | | |
| xxxv | | | | | |
| xxxvi | | | | | |
| xxxvii | | | | | |
| xxxvii | | | | | |
| xxxix | | | | | |
| xl | | | | | |
| xli | | | | | |
| xlii | | | | | |
| xliii | | | | | |
| xliv | | | | | |
| xlv | | | | | |
| xlvi | | | | | |
| xlvii | | | | | |
| xlviii | | | | | |
| xlix | | | | | |
| l | | | | | |
| li | | | | | |
| lii | | | | | |
| liii | | | | | |
| liv | | | | | |
| lv | | | | | |
| lvi | | | | | |

Debtor's Name  Loadcraft Industries, Ltd.                                                    Case No.  21-11018

| | | | | | |
|---|---|---|---|---|---|
| lvii | | | | | |
| lviii | | | | | |
| lix | | | | | |
| lx | | | | | |
| lxi | | | | | |
| lxii | | | | | |
| lxiii | | | | | |
| lxiv | | | | | |
| lxv | | | | | |
| lxvi | | | | | |
| lxvii | | | | | |
| lxviii | | | | | |
| lxix | | | | | |
| lxx | | | | | |
| lxxi | | | | | |
| lxxii | | | | | |
| lxxiii | | | | | |
| lxxiv | | | | | |
| lxxv | | | | | |
| lxxvi | | | | | |
| lxxvii | | | | | |
| lxxvii | | | | | |
| lxxix | | | | | |
| lxxx | | | | | |
| lxxxi | | | | | |
| lxxxii | | | | | |
| lxxxii | | | | | |
| lxxxiv | | | | | |
| lxxxv | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxvi | | | | | |
| lxxxix | | | | | |
| xc | | | | | |
| xci | | | | | |
| xcii | | | | | |
| xciii | | | | | |
| xciv | | | | | |
| xcv | | | | | |
| xcvi | | | | | |
| xcvii | | | | | |
| xcviii | | | | | |

Debtor's Name  Loadcraft Industries, Ltd.　　　　　　　　　　　　　　　　　Case No.  21-11018

| | | | | | | |
|---|---|---|---|---|---|---|
| | xcix | | | | | |
| | c | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | | |

### Part 6:  Postpetition Taxes

| | | Current Month | Cumulative |
|---|---|---|---|
| a. | Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. | Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. | Postpetition employer payroll taxes accrued | $3,461 | $14,245 |
| d. | Postpetition employer payroll taxes paid | $7,602 | $39,898 |
| e. | Postpetition property taxes paid | $0 | $0 |
| f. | Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. | Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

### Part 7: Questionnaire - During this reporting period:

| | | | |
|---|---|---|---|
| a. | Were any payments made on prepetition debt?  (if yes, see Instructions) | Yes ◯ | No ⦿ |
| b. | Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions) | Yes ◯ | No ⦿ |
| c. | Were any payments made to or on behalf of insiders? | Yes ⦿ | No ◯ |
| d. | Are you current on postpetition tax return filings? | Yes ⦿ | No ◯ |
| e. | Are you current on postpetition estimated tax payments? | Yes ⦿ | No ◯ |
| f. | Were all trust fund taxes remitted on a current basis? | Yes ⦿ | No ◯ |
| g. | Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions) | Yes ◯ | No ⦿ |
| h. | Were all payments made to or on behalf of professionals approved by the court? | Yes ⦿ | No ◯  N/A ◯ |
| i. | Do you have:　　Worker's compensation insurance? | Yes ⦿ | No ◯ |
| | If yes, are your premiums current? | Yes ⦿ | No ◯  N/A ◯  (if no, see Instructions) |
| | Casualty/property insurance? | Yes ◯ | No ⦿ |
| | If yes, are your premiums current? | Yes ◯ | No ◯  N/A ⦿  (if no, see Instructions) |
| | General liability insurance? | Yes ⦿ | No ◯ |
| | If yes, are your premiums current? | Yes ⦿ | No ◯  N/A ◯  (if no, see Instructions) |
| j. | Has a plan of reorganization been filed with the court? | Yes ◯ | No ⦿ |
| k. | Has a disclosure statement been filed with the court? | Yes ◯ | No ⦿ |
| l. | Are you current with quarterly U.S. Trustee fees as set forth under 28 U.S.C. § 1930? | Yes ⦿ | No ◯ |

Debtor's Name  Loadcraft Industries, Ltd.                                    Case No.  21-11018

### Part 8: Individual Chapter 11 Debtors (Only)

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |
| l. | Are you required to pay any Domestic Support Obligations as defined by 11 U.S.C § 101(14A)? | Yes ○  No ● |
| m. | If yes, have you made all Domestic Support Obligation payments? | Yes ○  No ○  N/A ● |

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107. The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6). The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith. This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law. Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006). A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm. Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee. 11 U.S.C. § 1112(b)(4)(F).

**I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.**

/s/ Charles E. Hinkle                                    Charles E. Hinkle
_____          _____
Signature of Responsible Party                           Printed Name of Responsible Party

Authorized Representative of General Partner             06/24/2022
_____          _____
Title                                                    Date

Debtor's Name  Loadcraft Industries, Ltd.                                    Case No.  21-11018



PageOnePartOne



PageOnePartTwo



PageTwoPartOne



PageTwoPartTwo

Debtor's Name Loadcraft Industries, Ltd.                    Case No. 21-11018



Bankruptcy1to50

Bankruptcy51to100

NonBankruptcy1to50

NonBankruptcy51to100

Debtor's Name  Loadcraft Industries, Ltd.                                    Case No.  21-11018



PageThree



PageFour

**Loadcraft Industries, Ltd.**
**Receipts**
**May, 2022**

| | | 253,447.80 | **Total Receipts** | | |
|---|---|---|---|---|---|
| **Date** | **Check #** | **$** | **INV #** | **Reference** | **Category** |
| 5/2/2022 | Wire - CC | 5,335.00 | 18853 | Mark Mullin | AR Collection |
| 5/2/2022 | Wire - CC | 0.05 | MISC | Clearant Fee | Misc |
| 5/3/2022 | 34049 | 9,780.75 | MISC | ScrapSale_TxAlloy | Misc |
| 5/3/2022 | 6.82E+08 | 21,491.00 | 18874 | Innodry | AR Collection |
| 5/3/2022 | 56573 | 19,500.00 | 18897 | Jelec | AR Collection |
| 5/5/2022 | 58769 | 16,000.00 | 18917 | Concho Services | AR Collection |
| 5/5/2022 | Wire - CC | 95.00 | 18885 | Moore Truck | AR Collection |
| 5/9/2022 | 34100 | 4,941.16 | MISC | ScrapSale_TxAlloy | Misc |
| 5/10/2022 | 1132 | 12,005.42 | 18841 | Lighted Way | AR Collection |
| 5/10/2022 | Wire | 1,108.00 | 18907 | Mason Intl Oilfield | AR Collection |
| 5/11/2022 | Wire | 3,536.00 | 18892 | John Energy | AR Collection |
| 5/12/2022 | Wire | 25,000.00 | MISC | Alphonso Energy LLC | Capital Contribution |
| 5/13/2022 | Wire | 42,880.00 | 18918 | SDF | AR Collection |
| 5/18/2022 | Wire - CC | 176.00 | 18883 | Damian Oil | AR Collection |
| 5/23/2022 | 56598 | 24,975.00 | 18919 | Jelec | AR Collection |
| 5/23/2022 | Wire | 13,682.25 | 18830 | Gulf Energy | AR Collection |
| 5/23/2022 | Wire | 13,440.00 | 18856 | Gulf Energy | AR Collection |
| 5/23/2022 | 4762 | 1,196.50 | 18849 | Snyder Well | AR Collection |
| 5/24/2022 | Wire | 35,528.00 | 18889 | LL & Sons | AR Collection |
| 5/31/2022 | 34152 | 2,121.00 | MISC | ScrapSale_TxAlloy | Misc |
| 5/31/2022 | 6392 | 271.72 | 18838 | Blackhawk | AR Collection |
| 5/31/2022 | 4165 | 384.95 | 18840 | Blackhawk | AR Collection |

**Loadcraft Industries, Ltd.**
**Disbursements**
**May, 2022**

**245,745  Total Disbursements**

| NET | Date | Description | | Purchase | Return | Bank | Category |
|---|---|---|---|---|---|---|---|
| 203.00 | 5/9/2022 | ANALYSIS CHARGE | 04 | 203.00 | | Regions | Bank Fee |
| 15.00 | 5/10/2022 | REGIONS BANK FEE | | 15.00 | | Regions | Bank Fee |
| 15.00 | 5/11/2022 | REGIONS BANK FEE | | 15.00 | | Regions | Bank Fee |
| 15.00 | 5/12/2022 | REGIONS BANK FEE | | 15.00 | | Regions | Bank Fee |
| 15.00 | 5/13/2022 | REGIONS BANK FEE | | 15.00 | | Regions | Bank Fee |
| 25.00 | 5/20/2022 | REGIONS BANK FEE | | 25.00 | | Regions | Bank Fee |
| 45.00 | 5/20/2022 | REGIONS BANK FEE | | 45.00 | | Regions | Bank Fee |
| 3.00 | 5/23/2022 | REGIONS BANK FEE | | 3.00 | | Regions | Bank Fee |
| 15.00 | 5/23/2022 | REGIONS BANK FEE | | 15.00 | | Regions | Bank Fee |
| 15.00 | 5/23/2022 | REGIONS BANK FEE | | 15.00 | | Regions | Bank Fee |
| 15.00 | 5/24/2022 | REGIONS BANK FEE | | 15.00 | | Regions | Bank Fee |
| 2,670.79 | 5/20/2022 | Luis Jauregui_Wages | | 2,670.79 | | Regions | Commisson |
| 500.00 | 5/20/2022 | Orient Oil | | 500.00 | | Regions | Commisson |
| 178.20 | 5/18/2022 | ABS | 5085 | 178.20 | | Regions | Consumables |
| 137.18 | 5/26/2022 | ABS | 5085 | 137.18 | | Regions | Consumables |
| 75.18 | 5/4/2022 | AIRGAS USA  LLC | 4900 | 75.18 | | Regions | Consumables |
| 89.09 | 5/12/2022 | AIRGAS USA  LLC | 4900 | 89.09 | | Regions | Consumables |
| 4.28 | 5/4/2022 | APSCO SUPPLY | 5074 | 4.28 | | Regions | Consumables |
| 458.53 | 5/9/2022 | BOB MOORE TIRE | 7538 | 458.53 | | Regions | Consumables |
| 251.50 | 5/16/2022 | BOB MOORE TIRE | 7538 | 251.50 | | Regions | Consumables |
| 1.94 | 5/3/2022 | BRADY BUTANE C | 5983 | 1.94 | | Regions | Consumables |
| 8.65 | 5/10/2022 | BRADY BUTANE C | 5983 | 8.65 | | Regions | Consumables |
| 40.87 | 5/12/2022 | BRADY BUTANE C | 5983 | 40.87 | | Regions | Consumables |
| 459.36 | 5/27/2022 | CROSS TEXAS SUP | 7692 | 459.36 | | Regions | Consumables |
| 80.49 | 5/31/2022 | DAYS INN & SUIT | 3510 | 80.49 | | Regions | Consumables |
| 80.49 | 5/31/2022 | DAYS INN & SUIT | 3510 | 80.49 | | Regions | Consumables |
| 242.78 | 5/19/2022 | DeCoty Coffee C | 5499 | 242.78 | | Regions | Consumables |
| 67.04 | 5/2/2022 | FASTENAL COMPAN | 5085 | 67.04 | | Regions | Consumables |
| 16.83 | 5/2/2022 | FASTENAL COMPAN | 5085 | 16.83 | | Regions | Consumables |
| 96.00 | 5/26/2022 | HEART OF TEXAS | 7538 | 96.00 | | Regions | Consumables |
| 318.43 | 5/27/2022 | HOMEDEPOT.COM | 5200 | 318.43 | | Regions | Consumables |
| 39.15 | 5/19/2022 | KEITH ACE HARD | 5251 | 39.15 | | Regions | Consumables |
| 2.59 | 5/19/2022 | KEITH ACE HARDW | 5251 | 2.59 | | Regions | Consumables |
| 15.78 | 5/27/2022 | KFC J625107 | 5814 | 15.78 | | Regions | Consumables |
| 7.99 | 5/3/2022 | MOORE S AUTO 0 | 5533 | 7.99 | | Regions | Consumables |
| 61.68 | 5/9/2022 | MOORE S AUTO 0 | 5533 | 61.68 | | Regions | Consumables |
| 22.91 | 5/12/2022 | MOORE S AUTO 0 | 5533 | 22.91 | | Regions | Consumables |
| 51.98 | 5/12/2022 | MOORE S AUTO 0 | 5533 | 51.98 | | Regions | Consumables |
| 44.76 | 5/17/2022 | MOORE S AUTO 0 | 5533 | 44.76 | | Regions | Consumables |
| 188.71 | 5/17/2022 | MOORE S AUTO 0 | 5533 | 188.71 | | Regions | Consumables |
| 13.98 | 5/18/2022 | MOORE S AUTO 0 | 5533 | 13.98 | | Regions | Consumables |
| 65.49 | 5/18/2022 | MOORE S AUTO 0 | 5533 | 65.49 | | Regions | Consumables |
| 67.48 | 5/18/2022 | MOORE S AUTO 0 | 5533 | 67.48 | | Regions | Consumables |
| 510.93 | 5/18/2022 | MOORE S AUTO 0 | 5533 | 510.93 | | Regions | Consumables |
| 153.60 | 5/19/2022 | MOORE S AUTO 0 | 5533 | 153.60 | | Regions | Consumables |
| 66.89 | 5/23/2022 | MOORE S AUTO 0 | 5533 | 66.89 | | Regions | Consumables |
| 29.75 | 5/4/2022 | MOTOR | 9399 | 29.75 | | Regions | Consumables |
| 9.75 | 5/5/2022 | MOTOR | 9399 | 9.75 | | Regions | Consumables |
| 19.80 | 5/17/2022 | NAPA AUTO 0026 | 5533 | 19.80 | | Regions | Consumables |
| 105.53 | 5/17/2022 | NAPA AUTO 0026 | 5533 | 105.53 | | Regions | Consumables |
| 13.83 | 5/23/2022 | NAPA AUTO 0026 | 5533 | 13.83 | | Regions | Consumables |

| NET | Date | Description | Purchase | Return | Bank | Category |
|---|---|---|---|---|---|---|
| 62.25 | 5/23/2022 | NAPA AUTO 0026   5533 | 62.25 | | Regions | Consumables |
| 425.98 | 5/2/2022 | O REILLY AUTO   5533 | 425.98 | | Regions | Consumables |
| 61.78 | 5/12/2022 | O REILLY AUTO   5533 | 61.78 | | Regions | Consumables |
| 150.00 | 5/23/2022 | SANTA ANNA NATL  6010 | 150.00 | | Regions | Consumables |
| 41.36 | 5/3/2022 | STARR SALES   5085 | 41.36 | | Regions | Consumables |
| 129.25 | 5/9/2022 | STARR SALES   5085 | 129.25 | | Regions | Consumables |
| 87.24 | 5/10/2022 | STARR SALES   5085 | 87.24 | | Regions | Consumables |
| 169.01 | 5/11/2022 | STARR SALES   5085 | 169.01 | | Regions | Consumables |
| 583.19 | 5/25/2022 | STARR SALES   5085 | 583.19 | | Regions | Consumables |
| 11.86 | 5/6/2022 | THE HOME DEPOT   5200 | 11.86 | | Regions | Consumables |
| 36.22 | 5/10/2022 | THE HOME DEPOT   5200 | 36.22 | | Regions | Consumables |
| 72.34 | 5/19/2022 | THE HOME DEPOT   5200 | 72.34 | | Regions | Consumables |
| 97.41 | 5/16/2022 | TRACTOR S 2309   5599 | 97.41 | | Regions | Consumables |
| 70.35 | 5/18/2022 | TRACTOR S 2309   5599 | 70.35 | | Regions | Consumables |
| 21.99 | 5/20/2022 | UNITED SUPERMA   5411 | 21.99 | | Regions | Consumables |
| 120.86 | 5/17/2022 | WAL-MART #0917  5411 | 120.86 | | Regions | Consumables |
| 24.88 | 5/10/2022 | WEAKLEY-WATSON   5251 | 24.88 | | Regions | Consumables |
| 7.03 | 5/11/2022 | WEAKLEY-WATSON   5251 | 7.03 | | Regions | Consumables |
| 22.91 | 5/31/2022 | WENDY S #355    5814 | 22.91 | | Regions | Consumables |
| 1.75 | 5/31/2022 | WM SUPERC Wal-   5411 | 1.75 | | Regions | Consumables |
| 18.12 | 5/4/2022 | WM SUPERCENTER   5411 | 18.12 | | Regions | Consumables |
| 77.32 | 5/11/2022 | WM SUPERCENTER   5411 | 77.32 | | Regions | Consumables |
| 177.37 | 5/3/2022 | ELLIOTT ELECTR   5251 | 177.37 | | Regions | Consumables |
| 102.00 | 5/9/2022 | ELLIOTT ELECTR   5251 | 102.00 | | Regions | Consumables |
| 338.48 | 5/19/2022 | ELLIOTT ELECTR   5251 | 338.48 | | Regions | Consumables |
| 46.83 | 5/4/2022 | FLEETPRIDE469    5533 | 46.83 | | Regions | Consumables |
| 177.66 | 5/27/2022 | MOTION INDUSTRI  5085 | 177.66 | | Regions | Consumables |
| 93.19 | 5/31/2022 | MOTION INDUSTRI  5085 | 93.19 | | Regions | Consumables |
| 256.46 | 5/31/2022 | MOTION INDUSTRI  5085 | 256.46 | | Regions | Consumables |
| 372.22 | 5/17/2022 | MSC         5085 | 372.22 | | Regions | Consumables |
| 300.00 | 5/5/2022 | Py:44604 RODNEY MCFARLAND | 300.00 | | Regions | Consumables |
| 400.00 | 5/5/2022 | Py:44605 RODNEY MCFARLAND | 400.00 | | Regions | Consumables |
| 2,000.00 | 5/5/2022 | Py:44606 HOME MOTORS, INC. | 2,000.00 | | Regions | Consumables |
| 58.00 | 5/11/2022 | Py:44612 RANDALL COVEY | 58.00 | | Regions | Consumables |
| 40.60 | 5/11/2022 | Py:44614 RAYMOND OLIVAREZ | 40.60 | | Regions | Consumables |
| 112.67 | 5/11/2022 | Py:44615 RODNEY MCFARLAND | 112.67 | | Regions | Consumables |
| 1,099.22 | 5/19/2022 | Py:44621 AIRGAS USA, LLC | 1,099.22 | | Regions | Consumables |
| 100.00 | 5/23/2022 | Py:44625 DENNIS COOK | 100.00 | | Regions | Consumables |
| 459.90 | 5/23/2022 | Py:44626 REEDER DISTRIBUTORS | 459.90 | | Regions | Consumables |
| 200.00 | 5/25/2022 | Py:44627 FORREST VAUGHN | 200.00 | | Regions | Consumables |
| 200.00 | 5/26/2022 | Py:44633 EDDIE JONES | 200.00 | | Regions | Consumables |
| 63.45 | 5/6/2022 | CLEARENT LLC | 63.45 | | Regions | Fee |
| 3.00 | 5/4/2022 | GOV-PAY FEE - M  9399 | 3.00 | | Regions | Fee |
| 3.00 | 5/5/2022 | GOV-PAY FEE - M  9399 | 3.00 | | Regions | Fee |
| 0.56 | 5/20/2022 | QUICKBOOKS | 0.56 | | Regions | Fee |
| (0.56) | 5/27/2022 | QUICKBOOKS | (0.56) | | Regions | Fee |
| 73.10 | 5/31/2022 | UPS*1ZA41A46011  4215 | 73.10 | | Regions | Freight |
| 24.83 | 5/9/2022 | UPS*1ZA41A46012  4215 | 24.83 | | Regions | Freight |
| 10.67 | 5/9/2022 | UPS*1ZA41A46031  4215 | 10.67 | | Regions | Freight |
| 10.67 | 5/9/2022 | UPS*1ZA41A46031  4215 | 10.67 | | Regions | Freight |
| 53.44 | 5/9/2022 | UPS*1ZA41A46032  4215 | 53.44 | | Regions | Freight |
| 12.53 | 5/16/2022 | UPS*1ZA41A46033  4215 | 12.53 | | Regions | Freight |
| 30.98 | 5/2/2022 | UPS*1ZA41A46132  4215 | 30.98 | | Regions | Freight |
| 58.00 | 5/12/2022 | USPS PO 481010   9402 | 58.00 | | Regions | Freight |
| 100.00 | 5/5/2022 | ALLSUPS #10208   5542 | 100.00 | | Regions | Freight |
| 100.00 | 5/19/2022 | ALLSUPS #10208   5542 | 100.00 | | Regions | Freight |
| 100.00 | 5/10/2022 | ALLSUPS #10210   5542 | 100.00 | | Regions | Freight |
| 82.25 | 5/12/2022 | ALLSUPS #10210   5542 | 82.25 | | Regions | Freight |

| NET | Date | Description | Purchase | Return | Bank | Category |
|---|---|---|---|---|---|---|
| 79.22 | 5/31/2022 | ALLSUPS #10220   5542 | 79.22 | | Regions | Freight |
| 100.00 | 5/31/2022 | ALLSUPS #10220   5542 | 100.00 | | Regions | Freight |
| 87.77 | 5/2/2022 | ALLSUPS #10227   5542 | 87.77 | | Regions | Freight |
| 100.00 | 5/17/2022 | ALLSUPS #10227   5542 | 100.00 | | Regions | Freight |
| 100.00 | 5/24/2022 | ALLSUPS #10227   5542 | 100.00 | | Regions | Freight |
| 100.00 | 5/25/2022 | ALLSUPS #10227   5542 | 100.00 | | Regions | Freight |
| 95.85 | 5/27/2022 | ALLSUPS #10227   5542 | 95.85 | | Regions | Freight |
| 125.00 | 5/5/2022 | GORDON EXXON     5542 | 125.00 | | Regions | Freight |
| 65.75 | 5/3/2022 | SHELL SERVICE     5542 | 65.75 | | Regions | Freight |
| 100.00 | 5/27/2022 | SUNOCO 0704902   5542 | 100.00 | | Regions | Freight |
| 401.28 | 5/9/2022 | YESWAY 1055      5541 | 401.28 | | Regions | Freight |
| 146.41 | 5/12/2022 | YESWAY 1055      5541 | 146.41 | | Regions | Freight |
| 16.79 | 5/4/2022 | YESWAY 1055      5542 | 16.79 | | Regions | Freight |
| 50.00 | 5/4/2022 | YESWAY 1055      5542 | 50.00 | | Regions | Freight |
| 12.00 | 5/6/2022 | YESWAY 1055      5542 | 12.00 | | Regions | Freight |
| 19.78 | 5/10/2022 | YESWAY 1055      5542 | 19.78 | | Regions | Freight |
| 50.00 | 5/11/2022 | YESWAY 1055      5542 | 50.00 | | Regions | Freight |
| 50.00 | 5/17/2022 | YESWAY 1055      5542 | 50.00 | | Regions | Freight |
| 46.81 | 5/19/2022 | YESWAY 1055      5542 | 46.81 | | Regions | Freight |
| 19.42 | 5/24/2022 | YESWAY 1055      5542 | 19.42 | | Regions | Freight |
| 76.70 | 5/26/2022 | YESWAY 1055      5542 | 76.70 | | Regions | Freight |
| 1,358.57 | 5/5/2022 | Py:44603 FEDEX FREIGHT EAST | 1,358.57 | | Regions | Freight |
| 2,000.00 | 5/9/2022 | Py:44611 HUNTLAND TRUCKING | 2,000.00 | | Regions | Freight |
| 538.20 | 5/15/2022 | Py:44619 FEDEX FREIGHT EAST | 538.20 | | Regions | Freight |
| 317.55 | 5/20/2022 | Py:44624 FEDEX FREIGHT EAST | 317.55 | | Regions | Freight |
| 751.58 | 5/25/2022 | Py:44629 FEDEX FREIGHT EAST | 751.58 | | Regions | Freight |
| 513.62 | 5/25/2022 | Py:44630 FEDEX FREIGHT EAST | 513.62 | | Regions | Freight |
| 324.49 | 5/12/2022 | PROG COUNTY MUT | 324.49 | | Regions | Insurance |
| 1,882.39 | 5/4/2022 | SELECT PREMIUM | 1,882.39 | | Regions | Insurance |
| 2,920.00 | 5/18/2022 | Texas Mutual     Payment | 2,920.00 | | Regions | Insurance |
| 159.90 | 5/27/2022 | INTUIT *QuickBo  5734 | 159.90 | | Regions | Office |
| 162.33 | 5/2/2022 | QUILL CORPORATI 5111 | 162.33 | | Regions | Office |
| 256.54 | 5/31/2022 | QUILL CORPORATI 5111 | 256.54 | | Regions | Office |
| 1,551.70 | 5/4/2022 | IRS | 1,551.70 | | Regions | Payroll |
| 8,044.20 | 5/4/2022 | IRS | 8,044.20 | | Regions | Payroll |
| 7,935.96 | 5/11/2022 | IRS | 7,935.96 | | Regions | Payroll |
| 8,657.05 | 5/18/2022 | IRS | 8,657.05 | | Regions | Payroll |
| 7,984.07 | 5/25/2022 | IRS | 7,984.07 | | Regions | Payroll |
| 26,561.45 | 5/4/2022 | REGIONS BANK     PREFUNDDBT | 26,561.45 | | Regions | Payroll |
| 27,270.13 | 5/12/2022 | REGIONS BANK     PREFUNDDBT | 27,270.13 | | Regions | Payroll |
| 25,792.28 | 5/18/2022 | REGIONS BANK     PREFUNDDBT | 25,792.28 | | Regions | Payroll |
| 26,309.48 | 5/24/2022 | REGIONS BANK     PREFUNDDBT | 26,309.48 | | Regions | Payroll |
| 19,805.49 | 5/4/2022 | STATE COMPTRLR | 19,805.49 | | Regions | Payroll |
| 297.08 | 5/19/2022 | STATE COMPTRLR | 297.08 | | Regions | Payroll |
| 161.31 | 5/5/2022 | Py:44608 TX CHILD SUPPORT SDU | 161.31 | | Regions | Payroll |
| 34.62 | 5/5/2022 | Py:44608 TX CHILD SUPPORT SDU | 34.62 | | Regions | Payroll |
| 95.77 | 5/5/2022 | Py:44608 TX CHILD SUPPORT SDU | 95.77 | | Regions | Payroll |
| 95.17 | 5/5/2022 | Py:44608 TX CHILD SUPPORT SDU | 95.17 | | Regions | Payroll |
| 154.41 | 5/5/2022 | Py:44608 TX CHILD SUPPORT SDU | 154.41 | | Regions | Payroll |
| 192.37 | 5/5/2022 | Py:44608 TX CHILD SUPPORT SDU | 192.37 | | Regions | Payroll |
| 161.31 | 5/5/2022 | Py:44609 TX CHILD SUPPORT SDU | 161.31 | | Regions | Payroll |
| 34.62 | 5/5/2022 | Py:44609 TX CHILD SUPPORT SDU | 34.62 | | Regions | Payroll |
| 36.50 | 5/5/2022 | Py:44609 TX CHILD SUPPORT SDU | 36.50 | | Regions | Payroll |
| 36.50 | 5/5/2022 | Py:44609 TX CHILD SUPPORT SDU | 36.50 | | Regions | Payroll |
| 192.37 | 5/5/2022 | Py:44609 TX CHILD SUPPORT SDU | 192.37 | | Regions | Payroll |
| 1,080.00 | 5/12/2022 | Py:44617 COLT WILKINSON | 1,080.00 | | Regions | Payroll |
| 547.13 | 5/12/2022 | Py:44618 PETTY CASH | 547.13 | | Regions | Payroll |
| 161.31 | 5/19/2022 | Py:44622 TX CHILD SUPPORT SDU | 161.31 | | Regions | Payroll |

| NET | Date | Description | Purchase | Return | Bank | Category |
|---|---|---|---|---|---|---|
| 34.62 | 5/19/2022 | Py:44622 TX CHILD SUPPORT SDU | 34.62 | | Regions | Payroll |
| 210.91 | 5/19/2022 | Py:44622 TX CHILD SUPPORT SDU | 210.91 | | Regions | Payroll |
| 192.37 | 5/19/2022 | Py:44622 TX CHILD SUPPORT SDU | 192.37 | | Regions | Payroll |
| 161.31 | 5/19/2022 | Py:44622 TX CHILD SUPPORT SDU | 161.31 | | Regions | Payroll |
| 34.62 | 5/19/2022 | Py:44622 TX CHILD SUPPORT SDU | 34.62 | | Regions | Payroll |
| 210.91 | 5/19/2022 | Py:44622 TX CHILD SUPPORT SDU | 210.91 | | Regions | Payroll |
| 192.37 | 5/19/2022 | Py:44622 TX CHILD SUPPORT SDU | 192.37 | | Regions | Payroll |
| 819.19 | 5/19/2022 | Py:44623 PETTY CASH | 819.19 | | Regions | Payroll |
| 450.00 | 5/26/2022 | Py:44632 COLT WILKINSON | 450.00 | | Regions | Payroll |
| 161.31 | 5/26/2022 | Py:44634 TX CHILD SUPPORT SDU | 161.31 | | Regions | Payroll |
| 34.62 | 5/26/2022 | Py:44634 TX CHILD SUPPORT SDU | 34.62 | | Regions | Payroll |
| 78.50 | 5/26/2022 | Py:44634 TX CHILD SUPPORT SDU | 78.50 | | Regions | Payroll |
| 192.37 | 5/26/2022 | Py:44634 TX CHILD SUPPORT SDU | 192.37 | | Regions | Payroll |
| 106.88 | 5/23/2022 | WEBFILE TAX PYMT | 106.88 | | Regions | Sales Tax |
| 329.72 | 5/2/2022 | UTEX INDUSTRIES  5969 | 329.72 | | Regions | Supplier Purchase |
| 538.35 | 5/26/2022 | ENGINEERED SEAL  5085 | 538.35 | | Regions | Supplier Purchase |
| 71.78 | 5/12/2022 | ENGINEERED SEAL  5085 | 71.78 | | Regions | Supplier Purchase |
| 1,477.03 | 5/4/2022 | RIGPRO INC       5046 | 1,477.03 | | Regions | Supplier Purchase |
| 160.66 | 5/5/2022 | SCHEERER BEARIN  5072 | 160.66 | | Regions | Supplier Purchase |
| 40.33 | 5/6/2022 | MOTION INDUSTRI  5085 | 40.33 | | Regions | Supplier Purchase |
| 200.46 | 5/6/2022 | MOTION INDUSTRI  5085 | 200.46 | | Regions | Supplier Purchase |
| 850.65 | 5/6/2022 | MOTION INDUSTRI  5085 | 850.65 | | Regions | Supplier Purchase |
| 367.82 | 5/5/2022 | RIGPRO INC       5046 | 367.82 | | Regions | Supplier Purchase |
| 999.30 | 5/6/2022 | MSC          5085 | 999.30 | | Regions | Supplier Purchase |
| 232.23 | 5/9/2022 | MSC          5085 | 232.23 | | Regions | Supplier Purchase |
| 446.20 | 5/6/2022 | MSC          5085 | 446.20 | | Regions | Supplier Purchase |
| 272.00 | 5/9/2022 | IN *RATLIFF STE  5039 | 272.00 | | Regions | Supplier Purchase |
| 105.97 | 5/19/2022 | RIGPRO INC       5046 | 105.97 | | Regions | Supplier Purchase |
| 10,656.00 | 5/31/2022 | RIGPRO INC       5046 | 10,656.00 | | Regions | Supplier Purchase |
| 10,365.00 | 5/6/2022 | Py:44607 H.C. HOWELL CO | 10,365.00 | | Regions | Supplier Purchase |
| 1,000.00 | 5/9/2022 | Py:44610 ROTEC ENGINEERING | 1,000.00 | | Regions | Supplier Purchase |
| 2,422.05 | 5/11/2022 | Py:44613 RATLIFF STEEL COMPANY | 2,422.05 | | Regions | Supplier Purchase |
| 1,524.96 | 5/19/2022 | Py:44620 FLEETPRIDE HVY DUTY E | 1,524.96 | | Regions | Supplier Purchase |
| 3,384.00 | 5/10/2022 | QUARTERLY FEE | 3,384.00 | | Regions | US Trustee |
| 549.30 | 5/26/2022 | AT&T PAYMENT     4814 | 549.30 | | Regions | Utilities |
| 582.50 | 5/26/2022 | AT&T PAYMENT     4814 | 582.50 | | Regions | Utilities |
| 390.00 | 5/12/2022 | BRADY COMMUNICAT | 390.00 | | Regions | Utilities |
| 390.00 | 5/12/2022 | BRADY COMMUNICAT | 390.00 | | Regions | Utilities |
| 217.62 | 5/16/2022 | CITY OF BROWNWO  9399 | 217.62 | | Regions | Utilities |
| 101.31 | 5/31/2022 | CITY OF BROWNWO  9399 | 101.31 | | Regions | Utilities |
| 2,135.72 | 5/4/2022 | USR ElectricBill 0391D | 2,135.72 | | Regions | Utilities |
| 595.60 | 5/20/2022 | VBS*VONAGE BUSI  4814 | 595.60 | | Regions | Utilities |
| 9,033.67 | 5/25/2022 | Py:44628 CITY OF BRADY | 9,033.67 | | Regions | Utilities |

**Loadcraft Industries, Ltd.**
**Balance Sheet**
**May, 2022**

|  |  | May, 22 |
|---|---|---|
| **Assets** | | |
| Cash | | 37,209 |
| A/R Trade, Net of Allowance | | 18,826 |
| Other Receivables | | - |
| % of Completion Receivables | | - |
| Inventory: Parts | | 3,501,542 |
| Inventory: WIP (Adjusted for % complete) | | 390,777 |
| Inventory: Finished Goods (Adjusted for % Complete) | | 263,755 |
| Inventory Valuation Allowance | | (3,211,207) |
| Prepaids & Other Current Assets | | 123,661 |
| | *Total Current Assets* | *1,124,563* |
| | | |
| Property, Plant & Equip. - Cost | | - |
| Accum. Depreciation - PP&E | | - |
| | *Net PP&E* | **-** |
| | | |
| | **Total Assets** | **1,124,563** |
| **Liabilities** | | |
| AP - Trade | | 4,892,998 |
| Purchase Order Accruals | | - |
| Customer Deposits | | 1,375,109 |
| Other Current Liabilities | | 2,780,337 |
| | *Current Liabilities* | *9,048,444* |
| | | |
| Huntland Properties (Transaction Specific Note) | | 359,699 |
| Alphonso Energy (Floorplan Specific Note) | | 1,100,000 |
| Alphonso Energy (Post-Petition Borrowing) | | 75,000 |
| | *Long Term Liabilities* | *1,534,699* |
| | | |
| | **Total Liabilities** | **10,583,143** |
| | | |
| Equity | | (9,458,580) |
| | | |
| | **Total Liabilities and Equity** | **1,124,563** |
| | Check Digit | (0) |

**Equity Rollforward**

|  |  |
|---|---|
| Beginning Equity | (9,645,399) |
| Current year Net income | 121,819 |
| Partnership Capital | 65,000 |
| Ending Equity | (9,458,580) |
| CD | - |

**Loadcraft Industries, Ltd.**
**Income Statement**
**May, 2022**

|  | **May, 22** |
|---|---|
| Net Sales | 335,650 |
| | |
| **Cost of Sales** | |
| Direct Materials | 82,464 |
| Direct Labor | 25,648 |
| Subcontract / Outside Services | - |
| Subtotal Direct Costs | 108,111 |
| | |
| *Contribution to Overhead* | 227,539 |
| *Contribution Margin* | 67.79% |
| | |
| Absorbed Overhead Expense (Shipped Jobs) | 173,013 |
| | 51.55% |
| | |
| **Indirect Manufacturing Expenses** | |
| Direct Labor Expense Incurred (ADP) | 76,416 |
| Direct Labor Absorbed | (33,578) |
| Direct Labor_Accrued | 11,191 |
| Indirect Manuf Salaries | 32,307 |
| Indirect Payroll Taxes & Fringe | 12,028 |
| Indirect Manuf: Supplies not captured in jobs | 18,191 |
| Indirect Overhead: Rents & Leases | 12,500 |
| Indirect Overhead: Utilities | 13,996 |
| Indirect Overhead: Property Taxes | 4,000 |
| COGS Freight Expense | 11,556 |
| COGS Inventory Adjustments | (12,923) |
| *Subtotal Indirect Manufacturing Costs* | 145,684 |
| Indirect Manufacturing Costs Absorbed | (145,684) |
| **Indirect Manufacturing Costs (Over)/Under Absorbed** | (0) |
| Indirect AR % pf Revenue | 43.40% |
| Subtotal COS | 281,124 |
| | |
| Gross Profit | 54,526 |
| % Revenue | 16.24% |
| **Selling, General and Administrative Expenses** | |
| SG&A Salaries and Wages | 24,542 |
| Fringe Expenses: Employee Workers Comp | 2,920 |
| Payroll Taxes | 11,569 |
| Indirect Manufacturing PR Tax and Fringe | (12,028) |
| Travel Expenses | - |
| Outsourced Services | 8,085 |
| Other Operating Expenses | 788 |
| *Subtotal SG&A Expenses* | 38,634 |
| | 11.51% |
| | |
| *Operating Income (Loss)* | 15,892 |
| | |
| Interest Income | - |
| Interest Expense | 616 |
| Bad Debt Expense | - |
| Gain/Loss on Sale of Assets | - |
| Other (Income) / Loss | 616 |
| % Revenue | 0.18% |
| | |
| Franchise Taxes | - |
| | |
| Net Income | 15,276 |
| | 4.55% |
| | |
| **EBITDA** | 15,892 |

**Loadcraft Industries, Ltd.**
**Accounts Receivable Aging**
**May, 2022**

| | Total | CURRENT | >30 and <60 | >60 and <90 | >90 and <120 | >120 and <180 | >180 | AR Reserve | Net AR Total |
|---|---|---|---|---|---|---|---|---|---|
| **NET Accounts Receivable** | **18,826.10** | | | | | | | | |
| **NET Accounts Receivable over 90 Days** | **-** | 3.1% | 1.5% | 0.2% | -0.4% | 0.4% | 95.1% | | |
| **Totals** | 444,145 | 13,929 | 6,731 | 1,050 | (1,844) | 1,910 | 422,368 | 425,319 | 18,826 |
| *check digit* | - | | | | | | | - | |
| | | | | | | | | | |
| PIONEER ENERGY SERVICES | 225,007 | - | - | - | - | - | 225,007 | 225,007 | - |
| Key Energy Services | 62,058 | - | - | - | - | - | 62,058 | 62,058 | - |
| SPN WELL SERVICES, INC | 55,379 | - | - | - | - | - | 55,379 | 55,379 | - |
| BLACK HAWK ENERGY SERVIC | 29,134 | - | 4,925 | - | - | - | 24,209 | 24,209 | 4,925 |
| Axis Energy Services | 19,304 | 3,950 | - | - | - | - | 15,354 | 15,354 | 3,950 |
| Pioneer Natural Resource | 13,841 | - | - | - | - | - | 13,841 | 13,841 | - |
| LIGHTED WAY LOGISTICS LL | 8,562 | 7,362 | 1,200 | - | - | - | - | - | 8,562 |
| Glider Products LLC | 8,400 | 150 | - | - | - | - | 8,250 | 8,250 | 150 |
| WOODHOUSE INTERNATIONAL | 8,132 | - | - | - | - | - | 8,132 | 8,132 | - |
| ORTEQ ENERGY TECHNOLOGIE | 7,046 | - | - | - | - | - | 7,046 | 7,046 | - |
| WAR HORSE SERVICES, LLC | 6,193 | - | - | - | - | - | 6,193 | 6,193 | - |
| GRISHAM SERVICES, INC | 4,463 | - | - | - | - | - | 4,463 | 4,463 | - |
| AZTEC WELL SERVICE | 3,623 | - | - | - | - | - | 3,623 | 3,623 | - |
| CS&P TECHNOLOGIES, L.P. | 2,071 | - | - | - | - | - | 2,071 | 2,071 | - |
| L.L. & SONS INC. | 1,700 | 1,700 | - | - | - | - | - | - | 1,700 |
| RODNEY BEHRENS | 853 | - | - | - | - | - | 853 | 853 | - |
| L & R WELL SERVICE, INC | 550 | 550 | - | - | - | - | - | - | 550 |
| SUNDOWN OPERATING INC | 417 | 417 | - | - | - | - | - | - | 417 |
| MAVERICK WELL SERVICE | 217 | - | - | - | - | - | 217 | 217 | - |
| WPI WELLKIN | 200 | - | - | - | 200 | - | - | 200 | - |
| BRIGADE ENERGY SERVICES | 173 | - | - | - | - | - | 173 | 173 | - |
| WELL MAINTENANCE SERVICE | 150 | - | 100 | 50 | - | - | - | - | 150 |
| TRIUMPH INTERNATIONAL LL | 65 | - | 65 | - | - | - | - | - | 65 |
| ALMANSOORI WORKOVER SERV | 45 | - | 45 | - | - | - | - | - | 45 |
| GULF NATIONAL DRILLING C | 38 | - | (1,000) | 1,000 | 254 | 1,907 | (2,123) | 38 | - |
| AMERICAN WELL SERVICES | 27 | - | - | - | - | - | 27 | 27 | - |
| MARLIN DRILLING SERVICIO | 10 | - | - | - | - | - | 10 | 10 | - |
| S7INC | 6 | - | - | - | - | - | 6 | 6 | - |
| ISLAND PARTS SOURCE | 3 | - | - | - | - | 3 | - | 3 | - |
| TC DIE AND INSERT | 2 | - | - | - | - | - | 2 | 2 | - |
| TOTAH RENTAL AND EQUIPME | 1 | - | - | - | - | - | 1 | 1 | - |
| THORLAKSON CONSTRUCTION | 1 | - | - | - | - | - | 1 | 1 | - |
| WESTERN WELL PRODUCTION | 1 | - | - | - | - | - | 1 | 1 | - |
| CON-GLOBAL INDUSTRIES | 1 | - | - | - | - | - | 1 | 1 | - |
| Nathan Sorrells DBA Snyd | (149) | (200) | 1,396 | - | (2,298) | - | 952 | | (149) |
| CRITICAL EXTRACT LLC | (13,377) | - | - | - | - | - | (13,377) | (11,838) | (1,539) |

**Loadcraft Industries, Ltd.**
**Liability Aging**
**May, 2022**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | - | 32.9% | 7.3% | 7.5% | 13.8% | 34.9% | 3.5% |
| | | | **227,687** | **75,000** | **16,533** | **17,047** | **31,523** | **79,567** | **8,017** |
| | | | - | | | | | | |
| **Type** | **Name** | | **Total Due** | **Current** | **1-30** | **31-60** | **61-90** | **91-120** | **>120** | **Category** |
| General AP | ACCURACY INSPECTION | | 1,568 | - | 1,568 | - | - | - | - | Supplier Inspection |
| Debt | Alphonso Energy | | 75,000 | 75,000 | - | - | - | - | - | DIP Financing |
| General AP | AT&T MOBILITY | | 572 | - | - | - | - | 572 | - | Utilities |
| General AP | C ROSS ELLIS | | 266 | - | - | - | 266 | - | - | Consumables |
| General AP | DECOTY COFFEE, TEAS | | 309 | - | 90 | - | 162 | 57 | - | Office |
| General AP | GH TECHNICAL | | 1,200 | - | - | - | - | - | 1,200 | License Fees |
| General AP | GLIDER MANUFATURING, LLC | | 50,000 | - | 12,500 | 12,500 | 12,500 | 12,500 | - | Rent |
| General AP | HYDRADYNE FKA HYDRAULIC SALES | | 410 | - | - | - | 410 | - | - | Suppiler Parts |
| General AP | IMPERIAL SUPPLY | | 696 | - | - | - | - | - | 696 | Suppiler Parts |
| General AP | MARSHAL LAW OFFICE | | 2,625 | - | - | - | - | 1,050 | 1,575 | Legal Fees |
| General AP | McCULLOCH COUNTY APPRAISAL DI! | | 42,656 | - | - | - | - | 42,656 | - | Property Tax |
| General AP | ROTEC ENGINEERING | | 2,375 | - | 2,375 | - | - | - | - | Suppiler Parts |
| General AP | WINDOW OPERATING CO., LTD | | 50,012 | - | - | 4,547 | 18,186 | 22,733 | 4,547 | Rent |

**Loadcraft Industries, Ltd**
**Payments to Professionals**
**May, 2022**

Professtional / Role / Retention            Waller Lansden Dortch and Davis, LLP / Counsel to Debtor / 12/30/21

|  | Reporting Period | Cumulative |
|---|---|---|
| **Total Compensation Paid** | $ 186,236.00 | $ 261,236.00 |
| **Total Expenses Paid** | $ 5,586.64 | $ 5,586.64 |
| **Total Paid to Professional*** | $ 191,822.64 | $ 266,822.64 |

|  | Reporting Period | Cumulative |
|---|---|---|
| **Retainer Applied to Compensation** | 0.00 | 0.00 |
| **Retainer Applied to Expenses** | 0.00 | 0.00 |
| **Amount of Retainer Applied** | 0.00 | 0.00 |

| Professional | Date of Payment | Total Payment | Toal Compensation | Total Expenses | Retainer Amount |
|---|---|---|---|---|---|
| Waller Lansden Dortch and Davis (retainer) | 12/30/2021 | $ 75,000.00 |  |  | $ 75,000.00 |
| Waller Lansden Dortch and Davis | 5/18/2022 | $ 191,822.64 | $ 186,236.00 | $ 5,586.64 |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

*All amounts to date paid by non-Debtor third party.

**Loadcraft Industries, Ltd**
**Payments to Insiders**
**May, 2022**

2,773.30

| Check | Date | Check $ | Insider | Bank | Notes |
|---|---|---|---|---|---|
| ACH | 5/5/2022 | 664.93 | Charles E. Hinkle | Regions | Labor Hours 4/24-4/30/22 - Gross $768.00 |
| 44618 | 5/12/2022 | 547.13 | Charles E. Hinkle | Regions | Labor Hours 5/1-5/7/22 - Gross $624.00 |
| 44623 | 5/19/2022 | 819.19 | Charles E. Hinkle | Regions | Labor Hours 5/8-5/14/22 - Gross $960.00 |
| ACH | 5/26/2022 | 742.05 | Charles E. Hinkle | Regions | Labor Hours 5/15-5/21/22 - Gross $864.00 |

### Loadcraft Industries, Ltd
### Loans from Insiders
### May, 2022

75,000.00

| Date | Balance | Payable | Interest Rate | Note Amount | Interest Accrued | Payments |
|------|---------|---------|---------------|-------------|------------------|----------|
| 3/14/2022 | 75,000.00 | Alphonso Energy | 10% | 75,000.00 | 1,849.32 | - |

**Loadcraft Industries, Ltd.**
**Prepetition Payments**
**May, 2022**

| - | Total Disbursements | | | | | |
|---|---|---|---|---|---|---|
| **NET** | **Date** | **Description** | **Purchase** | **Return** | **Bank** | **Category** |
| - | | | | | | |
| - | | | | | | |
| - | | | | | | |
| - | | | | | | |
| - | | | | | | |
| - | | | | | | |
| - | | | | | | |
| - | | | | | | |
| - | | | | | | |

**REGIONS**

Mopac
6611 S Mopac Expwy Ste 100
Austin, TX 78748

LOADCRAFT INDUSTRIES LTD
DEBTOR IN POSSESSION
3811 N BRIDGE ST
BRADY TX 76825-7840

**REGIONS PRIORITY BANKING**

### ACCOUNT #  ▇▇▇▇ 4602

|  |  |
|---|---|
|  | 001 |
| Cycle | 26 |
| Enclosures | 32 |
| Page | 1 of 8 |

## ADVANTAGE BUSINESS CHECKING
April 30, 2022 through May 31, 2022

### SUMMARY

| | | | |
|---|---|---|---|
| **Beginning Balance** | **$31,769.08** | Minimum Daily Balance | $4,581 |
| Deposits & Credits | $253,448.36 + | Average Monthly Statement Balance | $35,576 |
| Withdrawals | $204,812.75 − | | |
| Fees | $381.00 − | | |
| Automatic Transfers | $0.00 + | | |
| Checks | $48,169.10 − | | |
| **Ending Balance** | **$31,854.59** | | |

### DEPOSITS & CREDITS

| Date | Description | Amount |
|---|---|---|
| 05/02 | Clearent LLC    Deposits Loadcraft Indu 588000001999598 | 5,335.05 |
| 05/03 | Quick Deposit - Thank You | 50,771.75 |
| 05/05 | Clearent LLC    Deposits Loadcraft Indu 588000001999598 | 95.00 |
| 05/05 | Quick Deposit - Thank You | 16,000.00 |
| 05/09 | Quick Deposit - Thank You | 4,941.16 |
| 05/10 | Wire Transfer Mason Internat | 1,108.00 |
| 05/10 | Quick Deposit - Thank You | 12,005.42 |
| 05/11 | Wire Transfer John Energy Li | 3,536.00 |
| 05/12 | Wire Transfer Brian Alphonso | 25,000.00 |
| 05/13 | Wire Transfer Elhashash Sher | 42,880.00 |
| 05/18 | Clearent LLC    Deposits Loadcraft Indu 588000001999598 | 176.00 |
| 05/23 | Wire Transfer Makameen Petro | 13,440.00 |
| 05/23 | Wire Transfer Makameen Petro | 13,682.25 |
| 05/23 | Quick Deposit - Thank You | 24,975.00 |
| 05/23 | Quick Deposit - Thank You | 1,196.50 |
| 05/24 | Wire Transfer L. L. & Sons, | 35,528.00 |
| 05/27 | Quickbooks    Verifybank Terry McIver | 0.56 |
| 05/31 | Quick Deposit - Thank You | 2,777.67 |
| | Total Deposits & Credits | $253,448.36 |

### WITHDRAWALS

| Date | Description | Amount |
|---|---|---|
| 05/02 | Card Purchase Ups*1za41a46132  4215 800-811-1648  GA 30328    7651 | 30.98 |
| 05/02 | Card Purchase Quill Corporati  5111 800-982-3400  SC 29203    7651 | 162.33 |
| 05/02 | Card Purchase Utex Industries  5969 979-725-8503  TX 78962    7651 | 329.72 |

**For all your banking needs, please call Regions Priority Banking Center at 1-800-761-2265
or visit us on the Internet at www.regions.com. (TTY/TDD 1-800-374-5791)**



**Thank You For Banking With Regions!**
2022 Regions Bank Member FDIC. All loans subject to credit approval.

**REGIONS**

Mopac
6611 S Mopac Expwy Ste 100
Austin, TX 78748

LOADCRAFT INDUSTRIES LTD
DEBTOR IN POSSESSION
3811 N BRIDGE ST
BRADY TX 76825-7840

**ACCOUNT #** ▇▇ **4602**

| | |
|---|---|
| | 001 |
| Cycle | 26 |
| Enclosures | 32 |
| Page | 2 of 8 |

## WITHDRAWALS (CONTINUED)

| Date | Description | Amount |
|---|---|---|
| 05/02 | Card Purchase Fastenal Compan  5085 Brownwood   TX 76801   7651 | 67.04 |
| 05/02 | PIN Purchase Allsups #10227  5542 Bangs       TX       7651 | 87.77 |
| 05/02 | PIN Purchase O Reilly Auto    5533 Brady      TX       7651 | 425.98 |
| 05/03 | Card Purchase Starr Sales     5085 Brownwood  TX 76801   7651 | 41.36 |
| 05/03 | PIN Purchase Moore S Auto 0  5533 Brady      TX       7651 | 7.99 |
| 05/03 | PIN Purchase Shell Service    5542 Brady      TX       7651 | 65.75 |
| 05/03 | PIN Purchase Elliott Electr   5251 Nacogdoches TX       7651 | 177.37 |
| 05/03 | PIN Purchase Brady Butane C   5983 Brady      TX       7651 | 1.94 |
| 05/04 | Regions Bank    Prefunddbt 201880566    Chinkle | 26,561.45 |
| 05/04 | Card Purchase Airgas USA, LLC  4900 866-935-3370  OK 74120   7651 | 75.18 |
| 05/04 | Card Purchase Rigpro Inc      5046 903-9833424  TX 75662   7651 | 1,477.03 |
| 05/04 | Card Purchase Wm Supercenter   5411 Brady      TX 76825   7651 | 18.12 |
| 05/04 | Card Purchase Apsco Supply     5074 325-6735001  TX 76801   7651 | 4.28 |
| 05/04 | Card Purchase Fleetpride469   5533 325-651-4777  TX 76904   7651 | 46.83 |
| 05/04 | Card Purchase Gov-Pay Fee - M  9399 San Antonio  TX 78217   7651 | 3.00 |
| 05/04 | Card Purchase Motor         9399 Brady      TX 76825   7651 | 29.75 |
| 05/04 | Select Premium   Payments Loadcraft Indu 8225195 | 1,882.39 |
| 05/04 | Usr Electricbill 0391d Loadcraft Inc  000011553230 | 2,135.72 |
| 05/04 | PIN Purchase Yesway 1055      5542 Brady      TX       7651 | 50.00 |
| 05/04 | PIN Purchase Yesway 1055      5542 Brady      TX       7651 | 16.79 |
| 05/04 | IRS         USATAXPYMT Loadcraft Indu 270252433957773 | 1,551.70 |
| 05/04 | IRS         USATAXPYMT Loadcraft Indu 270252435549859 | 8,044.20 |
| 05/04 | State Comptrlr   Texnet 70010/76731/Br 05976599/20504 | 19,805.49 |
| 05/05 | Card Purchase Scheerer Bearin  5072 215-4435252  PA 19090   7651 | 160.66 |
| 05/05 | Card Purchase Rigpro Inc      5046 903-9833424  TX 75662   7651 | 367.82 |
| 05/05 | Card Purchase Gov-Pay Fee - M  9399 San Antonio  TX 78217   7651 | 3.00 |
| 05/05 | Card Purchase Motor         9399 Brady      TX 76825   7651 | 9.75 |
| 05/05 | PIN Purchase Allsups #10208  5542 Brownwood   TX       7651 | 100.00 |
| 05/05 | PIN Purchase Gordon Exxon     5542 Mingus      TX       7651 | 125.00 |
| 05/06 | Card Purchase Motion Industri  5085 205-956-1122  TX 76801   7651 | 850.65 |
| 05/06 | Card Purchase Motion Industri  5085 205-956-1122  TX 76801   7651 | 200.46 |
| 05/06 | Card Purchase Msc           5085 800-645-7270  Ny 11747   7651 | 446.20 |
| 05/06 | Card Purchase Msc           5085 800-645-7270  Ny 11747   7651 | 999.30 |
| 05/06 | Card Purchase Motion Industri  5085 205-956-1122  TX 76801   7651 | 40.33 |
| 05/06 | Clearent LLC    Monthlyfee Loadcraft Indu 588000001999598 | 63.45 |
| 05/06 | PIN Purchase The Home Depot  5200 Brownwood   TX       7651 | 11.86 |
| 05/06 | PIN Purchase Yesway 1055      5542 Brady      TX       7651 | 12.00 |
| 05/09 | Card Purchase Ups*1za41a46032  4215 800-811-1648  GA 30328   7651 | 53.44 |
| 05/09 | Card Purchase Ups*1za41a46031  4215 800-811-1648  GA 30328   7651 | 10.67 |
| 05/09 | Card Purchase Ups*1za41a46031  4215 800-811-1648  GA 30328   7651 | 10.67 |
| 05/09 | Card Purchase Msc           5085 800-645-7270  Ny 11747   7651 | 232.23 |
| 05/09 | Card Purchase IN *Ratliff Ste  5039 432-8897513  TX 76801   7651 | 272.00 |
| 05/09 | Card Purchase Bob Moore Tire   7538 Brady      TX 76825   7651 | 458.53 |
| 05/09 | Card Purchase Starr Sales     5085 Brownwood  TX 76801   7651 | 129.25 |
| 05/09 | Card Purchase Ups*1za41a46012  4215 800-811-1648  GA 30328   7651 | 24.83 |
| 05/09 | PIN Purchase Yesway 1055      5541 Brady      TX       7651 | 401.28 |
| 05/09 | PIN Purchase Elliott Electr   5251 Nacogdoches TX       7651 | 102.00 |
| 05/09 | PIN Purchase Moore S Auto 0  5533 Brady      TX       7651 | 61.68 |
| 05/10 | Card Purchase Starr Sales     5085 Brownwood  TX 76801   7651 | 87.24 |
| 05/10 | Quarterly Fee   Payment Loadcraft Indu 0000 | 3,384.00 |
| 05/10 | PIN Purchase The Home Depot  5200 Brownwood   TX       7651 | 36.22 |
| 05/10 | PIN Purchase Weakley-Watson   5251 Brownwood   TX       7651 | 24.88 |
| 05/10 | PIN Purchase Brady Butane C   5983 Brady      TX       7651 | 8.65 |
| 05/10 | PIN Purchase Allsups #10210  5542 Early       TX       7651 | 100.00 |

![Regions logo]

**LOADCRAFT INDUSTRIES LTD**
**DEBTOR IN POSSESSION**
3811 N BRIDGE ST
BRADY TX 76825-7840

Mopac
6611 S Mopac Expwy Ste 100
Austin, TX 78748

**ACCOUNT #** ▮▮▮▮**4602**

|  | 001 |
|---|---|
| Cycle | 26 |
| Enclosures | 32 |
| Page | 3 of 8 |

## WITHDRAWALS (CONTINUED)

| Date | Description | Amount |
|---|---|---|
| 05/10 | PIN Purchase Yesway 1055    5542 Brady        TX        7651 | 19.78 |
| 05/11 | Card Purchase Wm Supercenter  5411 Brady       TX 76825    7651 | 77.32 |
| 05/11 | Card Purchase Starr Sales    5085 Brownwood    TX 76801    7651 | 169.01 |
| 05/11 | IRS         USATAXPYMT Loadcraft Indu 270253154725265 | 7,935.96 |
| 05/11 | PIN Purchase Weakley-Watson   5251 Brownwood   TX        7651 | 7.03 |
| 05/11 | PIN Purchase Yesway 1055    5542 Brady        TX        7651 | 50.00 |
| 05/12 | Regions Bank    Prefunddbt 201880566    Chinkle | 27,270.13 |
| 05/12 | Card Purchase Engineered Seal  5085 319-3934310   IA 52402    7651 | 71.78 |
| 05/12 | Card Purchase Airgas USA, LLC  4900 866-935-3370  OK 74120    7651 | 89.09 |
| 05/12 | Prog County Mut  Ins Prem Loadcraft Indu | 324.49 |
| 05/12 | Brady Communicat Sale Loadcraft Indu | 390.00 |
| 05/12 | Brady Communicat Sale Null Loadcraft | 390.00 |
| 05/12 | PIN Purchase Brady Butane C    5983 Brady        TX        7651 | 40.87 |
| 05/12 | PIN Purchase USPS PO 481010   9402 Brady        TX        7651 | 58.00 |
| 05/12 | PIN Purchase Moore S Auto 0    5533 Brady        TX        7651 | 51.98 |
| 05/12 | PIN Purchase O Reilly Auto    5533 Brady        TX        7651 | 61.78 |
| 05/12 | PIN Purchase Allsups #10210    5542 Early        TX        7651 | 82.25 |
| 05/12 | PIN Purchase Moore S Auto 0    5533 Brady        TX        7651 | 22.91 |
| 05/12 | PIN Purchase Yesway 1055    5541 Brady        TX        7651 | 146.41 |
| 05/16 | Card Purchase Ups*1za41a46033  4215 800-811-1648  GA 30328    7651 | 12.53 |
| 05/16 | Card Purchase Bob Moore Tire   7538 Brady        TX 76825   7651 | 251.50 |
| 05/16 | Card Purchase City of Brownwo  9399 Brownwood    TX 76801   7651 | 217.62 |
| 05/16 | PIN Purchase Tractor S 2309   5599 Brady        TX        7651 | 97.41 |
| 05/17 | Card Purchase Msc         5085 800-645-7270  Ny 11747    7651 | 372.22 |
| 05/17 | PIN Purchase Napa Auto 0026    5533 Brownwood   TX        7651 | 105.53 |
| 05/17 | PIN Purchase Moore S Auto 0    5533 Brady        TX        7651 | 188.71 |
| 05/17 | PIN Purchase Moore S Auto 0    5533 Brady        TX        7651 | 44.76 |
| 05/17 | PIN Purchase Yesway 1055    5542 Brady        TX        7651 | 50.00 |
| 05/17 | PIN Purchase Wal-Mart #0917    5411 Brady        TX        7651 | 120.86 |
| 05/17 | PIN Purchase Napa Auto 0026    5533 Brownwood   TX        7651 | 19.80 |
| 05/17 | PIN Purchase Allsups #10227    5542 Bangs        TX        7651 | 100.00 |
| 05/18 | Regions Bank    Prefunddbt 201880566    Chinkle | 25,792.28 |
| 05/18 | Card Purchase Abs        5085 187-790-9784  MN 56345    7651 | 178.20 |
| 05/18 | Texas Mutual     Payment Torrezsandra  Txmutl004005482 | 2,920.00 |
| 05/18 | IRS         USATAXPYMT Loadcraft Indu 270253864876886 | 8,657.05 |
| 05/18 | PIN Purchase Moore S Auto 0    5533 Brady        TX        7651 | 13.98 |
| 05/18 | PIN Purchase Moore S Auto 0    5533 Brady        TX        7651 | 65.49 |
| 05/18 | PIN Purchase Tractor S 2309   5599 Brady        TX        7651 | 70.35 |
| 05/18 | PIN Purchase Moore S Auto 0    5533 Brady        TX        7651 | 510.93 |
| 05/18 | PIN Purchase Moore S Auto 0    5533 Brady        TX        7651 | 67.48 |
| 05/19 | Card Purchase Rigpro Inc    5046 903-9833424  TX 75662   7651 | 105.97 |
| 05/19 | Card Purchase Fastenal Compan  5085 Brownwood    TX 76801   7651 | 16.83 |
| 05/19 | Card Purchase Decoty Coffee C  5499 San Angelo   TX 76903   7651 | 242.78 |
| 05/19 | Card Purchase Keith Ace Hardw  5251 Brady        TX 76825   7651 | 2.59 |
| 05/19 | State Comptrlr    Texnet 70010/76731/Br 06180887/20518 | 297.08 |
| 05/19 | PIN Purchase Elliott Electr    5251 Nacogdoches  TX        7651 | 338.48 |
| 05/19 | PIN Purchase The Home Depot    5200 Brownwood    TX        7651 | 72.34 |
| 05/19 | PIN Purchase Allsups #10208    5542 Brownwood    TX        7651 | 100.00 |
| 05/19 | PIN Purchase Yesway 1055    5542 Brady        TX        7651 | 46.81 |
| 05/19 | PIN Purchase Moore S Auto 0    5533 Brady        TX        7651 | 153.60 |
| 05/19 | PIN Purchase Keith Ace Hard    5251 Brady        TX        7651 | 39.15 |
| 05/20 | Recurring Card Transaction Vbs*vonage Busi  4814 866-901-0242  GA 30339    7651 | 595.60 |
| 05/20 | Quickbooks      Verifybank Terry McIver | 0.56 |
| 05/20 | PIN Purchase United Superma    5411 Brownwood    TX        7651 | 21.99 |

![Regions logo]

Mopac
6611 S Mopac Expwy Ste 100
Austin, TX 78748

LOADCRAFT INDUSTRIES LTD
DEBTOR IN POSSESSION
3811 N BRIDGE ST
BRADY TX 76825-7840

**ACCOUNT #** ████ **4602**

| | |
|---|---|
| | 001 |
| Cycle | 26 |
| Enclosures | 32 |
| Page | 4 of 8 |

## WITHDRAWALS (CONTINUED)

| | | |
|---|---|---:|
| 05/20 | Wire Transfer Luis Jauregui | 2,670.79 |
| 05/20 | Wire Transfer Jose Alejandro | 500.00 |
| 05/23 | Card Purchase Santa Anna Natl  6010 Santa Anna   TX 76878   7651 | 150.00 |
| 05/23 | Webfile Tax Pymt DD 33311/12345/ED 902/06230597 | 106.88 |
| 05/23 | PIN Purchase Moore S Auto 0   5533 Brady     TX     7651 | 66.89 |
| 05/23 | PIN Purchase Napa Auto 0026   5533 Brownwood   TX     7651 | 62.25 |
| 05/23 | PIN Purchase Napa Auto 0026   5533 Brownwood   TX     7651 | 13.83 |
| 05/24 | Regions Bank    Prefunddbt 201880566    Chinkle | 26,309.48 |
| 05/24 | PIN Purchase Allsups #10227   5542 Bangs     TX     7651 | 100.00 |
| 05/24 | PIN Purchase Yesway 1055     5542 Brady     TX     7651 | 19.42 |
| 05/25 | Card Purchase Starr Sales     5085 Brownwood   TX 76801  7651 | 583.19 |
| 05/25 | IRS          USATAXPYMT Loadcraft Indu 270254525682673 | 7,984.07 |
| 05/25 | PIN Purchase Allsups #10227   5542 Bangs     TX     7651 | 100.00 |
| 05/26 | Card Purchase Heart of Texas   7538 Brady     TX76825   7651 | 96.00 |
| 05/26 | Card Purchase Engineered Seal 5085 319-3934310   IA 52402   7651 | 538.35 |
| 05/26 | Card Purchase AT&T Payment   4814 800-331-0500 TX 75211   7651 | 582.50 |
| 05/26 | Card Purchase AT&T Payment   4814 800-331-0500 TX 75211   7651 | 549.30 |
| 05/26 | Card Purchase Abs          5085 187-790-9784 MN 56345   7651 | 137.18 |
| 05/26 | PIN Purchase Yesway 1055     5542 Brady     TX     7651 | 76.70 |
| 05/27 | Card Purchase Homedepot.Com   5200 800-430-3376 GA 30339   7651 | 318.43 |
| 05/27 | Recurring Card Transaction Intuit *Quickbo  5734 Cl.Intuit.Com CA 94043    7651 | 159.90 |
| 05/27 | Card Purchase Motion Industri 5085 205-956-1122 TX 76801   7651 | 177.66 |
| 05/27 | Card Purchase Cross Texas Sup  7692 San Angelo   TX 76903   7651 | 459.36 |
| 05/27 | Card Purchase KFC J625107     5814 Odessa     TX 79761  7651 | 15.78 |
| 05/27 | PIN Purchase Sunoco 0704902   5542 Sterling Citytx     7651 | 100.00 |
| 05/27 | PIN Purchase Allsups #10227   5542 Dallas     TX     7651 | 95.85 |
| 05/31 | Card Purchase Quill Corporati 5111 800-982-3400  SC 29203   7651 | 256.54 |
| 05/31 | Card Purchase Ups*1za41a46011  4215 800-811-1648 GA 30328   7651 | 73.10 |
| 05/31 | Card Purchase Wendy S #355    5814 Odessa     TX 79761   7651 | 22.91 |
| 05/31 | Card Purchase Rigpro Inc      5046 903-9833424   TX 75662  7651 | 10,656.00 |
| 05/31 | Card Purchase Days Inn & Suit 3510 Odessa     TX 79761   7651 | 80.49 |
| 05/31 | Card Purchase Days Inn & Suit 3510 Odessa     TX 79761   7651 | 80.49 |
| 05/31 | Card Purchase City of Brownwo  9399 Brownwood   TX 76801   7651 | 101.31 |
| 05/31 | Card Purchase Motion Industri 5085 205-956-1122 TX 76801   7651 | 93.19 |
| 05/31 | Card Purchase Motion Industri 5085 205-956-1122 TX 76801   7651 | 256.46 |
| 05/31 | PIN Purchase Allsups #10220   5542 Comanche   TX     7651 | 100.00 |
| 05/31 | PIN Purchase Wm Superc Wal-   5411 Brady     TX     7651 | 1.75 |
| 05/31 | PIN Purchase Allsups #10220   5542 Comanche   TX     7651 | 79.22 |
| | Total Withdrawals | $204,812.75 |

## FEES

| | | |
|---|---|---:|
| 05/09 | Analysis Charge     04-22 | 203.00 |
| 05/10 | Wire Transfer Wire Fee | 15.00 |
| 05/11 | Wire Transfer Wire Fee | 15.00 |
| 05/12 | Wire Transfer Wire Fee | 15.00 |
| 05/13 | Wire Transfer Wire Fee | 15.00 |
| 05/20 | Wire Transfer Wire Fee | 25.00 |
| 05/20 | Wire Transfer Intl Wire Fee | 45.00 |
| 05/23 | Card Cash Advance Fee | 3.00 |
| 05/23 | Wire Transfer Wire Fee | 15.00 |
| 05/23 | Wire Transfer Wire Fee | 15.00 |

**REGIONS**

Mopac
6611 S Mopac Expwy Ste 100
Austin, TX 78748

LOADCRAFT INDUSTRIES LTD
DEBTOR IN POSSESSION
3811 N BRIDGE ST
BRADY TX 76825-7840

**ACCOUNT #** ████ **4602**

| | |
|---|---|
| | 001 |
| Cycle | 26 |
| Enclosures | 32 |
| Page | 5 of 8 |

## FEES (CONTINUED)

| | | |
|---|---|---|
| 05/24 | Wire Transfer Wire Fee | 15.00 |
| | Total Fees | $381.00 |

## CHECKS

| Date | Check No. | Amount | Date | Check No. | Amount |
|---|---|---|---|---|---|
| 05/09 | 44563 | 1,125.28 | 05/13 | 44611 | 2,000.00 |
| 05/09 | 44577 * | 1,761.03 | 05/12 | 44612 | 58.00 |
| 05/03 | 44587 * | 1,266.86 | 05/17 | 44613 | 2,422.05 |
| 05/09 | 44598 * | 1,949.64 | 05/13 | 44614 | 40.60 |
| 05/03 | 44599 | 3,023.80 | 05/12 | 44615 | 112.67 |
| 05/02 | 44600 | 1,035.00 | 05/16 | 44617 * | 1,080.00 |
| 05/02 | 44601 | 322.59 | 05/17 | 44619 * | 538.20 |
| 05/03 | 44602 | 615.16 | 05/18 | 44620 | 1,524.96 |
| 05/03 | 44603 | 1,358.57 | 05/25 | 44622 * | 1,198.42 |
| 05/04 | 44604 | 300.00 | 05/23 | 44624 * | 317.55 |
| 05/06 | 44605 | 400.00 | 05/25 | 44626 * | 459.90 |
| 05/13 | 44606 | 2,000.00 | 05/26 | 44627 | 200.00 |
| 05/11 | 44607 | 10,365.00 | 05/27 | 44628 | 9,033.67 |
| 05/11 | 44608 | 733.65 | 05/26 | 44629 | 751.58 |
| 05/11 | 44609 | 461.30 | 05/26 | 44630 | 513.62 |
| 05/23 | 44610 | 1,000.00 | 05/31 | 44633 * | 200.00 |
| | | | | Total Checks | $48,169.10 |

* Break In Check Number Sequence.

## DAILY BALANCE SUMMARY

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 05/02 | 34,642.72 | 05/11 | 20,463.27 | 05/20 | 4,581.83 |
| 05/03 | 78,855.67 | 05/12 | 16,277.91 | 05/23 | 56,125.18 |
| 05/04 | 16,853.74 | 05/13 | 55,102.31 | 05/24 | 65,209.28 |
| 05/05 | 32,182.51 | 05/16 | 53,443.25 | 05/25 | 54,883.70 |
| 05/06 | 29,158.26 | 05/17 | 49,481.12 | 05/26 | 51,438.47 |
| 05/09 | 27,303.89 | 05/18 | 9,856.40 | 05/27 | 41,078.38 |
| 05/10 | 36,741.54 | 05/19 | 8,440.77 | 05/31 | 31,854.59 |

**TAKE ACTION TO HELP AVOID POSTAL DELAYS
WITH YOUR ACCOUNT STATEMENTS AND BILL
PAYMENTS! TAKE ADVANTAGE OF ONLINE
STATEMENTS AND ELECTRONIC BILL PAYMENT
AND TRANSFERS THROUGH REGIONS ONLINE
BANKING AND OUR MOBILE APP. FOR DETAILS,
VISIT REGIONS.COM/DIGITAL-BANKING.**

Mopac
6611 S Mopac Expwy Ste 100
Austin, TX 78748

LOADCRAFT INDUSTRIES LTD
DEBTOR IN POSSESSION
3811 N BRIDGE ST
BRADY TX 76825-7840

**ACCOUNT #** ███████ **4602**

|  |  |
|---|---|
| | 001 |
| Cycle | 26 |
| Enclosures | 32 |
| Page | 6 of 8 |



| Check# 44563 | 05/09/2022 | $1125.28 |
|---|---|---|
| Check# 44577 | 05/09/2022 | $1761.03 |
| Check# 44587 | 05/03/2022 | $1266.86 |
| Check# 44598 | 05/09/2022 | $1949.64 |
| Check# 44599 | 05/03/2022 | $3023.80 |
| Check# 44600 | 05/02/2022 | $1035.00 |
| Check# 44601 | 05/02/2022 | $322.59 |
| Check# 44602 | 05/03/2022 | $615.16 |
| Check# 44603 | 05/03/2022 | $1358.57 |
| Check# 44604 | 05/04/2022 | $300.00 |
| Check# 44605 | 05/06/2022 | $400.00 |
| Check# 44606 | 05/13/2022 | $2000.00 |
| Check# 44607 | 05/11/2022 | $10365.00 |
| Check# 44608 | 05/11/2022 | $733.65 |
| Check# 44609 | 05/11/2022 | $461.30 |
| Check# 44610 | 05/23/2022 | $1000.00 |
| Check# 44611 | 05/13/2022 | $2000.00 |
| Check# 44612 | 05/12/2022 | $58.00 |



REGIONS

Mopac
6611 S Mopac Expwy Ste 100
Austin, TX 78749

LOADCRAFT INDUSTRIES LTD
DEBTOR IN POSSESSION
3811 N BRIDGE ST
BRADY TX 76825-7840

**ACCOUNT #** ████ **4602**

|  |  |
|---|---|
|  | 001 |
| Cycle | 26 |
| Enclosures | 32 |
| Page | 7 of 8 |

| Check# 44613 | 05/17/2022 | $2422.05 | Check# 44614 | 05/13/2022 | $40.60 | Check# 44615 | 05/12/2022 | $112.67 |
|---|---|---|---|---|---|---|---|---|
| Check# 44617 | 05/16/2022 | $1080.00 | Check# 44619 | 05/17/2022 | $538.20 | Check# 44620 | 05/18/2022 | $1524.96 |
| Check# 44622 | 05/25/2022 | $1198.42 | Check# 44624 | 05/23/2022 | $317.55 | Check# 44626 | 05/25/2022 | $459.90 |
| Check# 44627 | 05/26/2022 | $200.00 | Check# 44628 | 05/27/2022 | $9033.67 | Check# 44629 | 05/26/2022 | $751.58 |
| Check# 44630 | 05/26/2022 | $513.62 | Check# 44633 | 05/31/2022 | $200.00 |  |  |  |

## Easy Steps to Balance Your Account

| | | Checking Account |
|---|---|---|
| 1. | Write here the amount shown on statement for **ENDING BALANCE** | $ |
| 2. | Enter any deposits which have not been credited on this statement. | $ + |
| 3. | Total lines 1 & 2 | $ = |
| 4. | Enter total from 4a (column on right side of page) | $ - |
| 5. | Subtract line 4 from line 3. This should be your checkbook balance. | $ = |

4a List any checks, payments, transfers or other withdrawals from your account that are not on this statement.

| Check No. | Amount | |
|---|---|---|
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| Total Enter in Line 4 at Left | | |

The law requires you to use "reasonable care and promptness" in examining your bank statement and any checks sent with it and to report to the Bank an unauthorized signature (i.e., a forgery), any alteration of a check, or any unauthorized endorsement. You must report any forged signatures, alterations or forged endorsements to the Bank within the time periods specified under the Deposit Agreement. If you do not do this, the Bank will not be liable to you for the losses or claims arising from the forged signatures, forged endorsements or alterations. Please see the Deposit Agreement for further explanation of your responsibilities with regard to your statement and checks. A copy of our current Deposit Agreement may be requested at any of our branch locations.

Summary of Our Error Resolution Procedures
In Case of Errors or Questions About Your Electronic Transfers
Telephone us toll-free at 1-800-734-4667
or write us at
Regions Electronic Funds Transfer Services
Post Office Box 413
Birmingham, Alabama 35201

Please contact Regions as soon as you can, if you think your statement is wrong or if you need more information about a transfer listed on your statement. We must hear from you no later than sixty (60) days after we sent the FIRST statement on which the problem or error appeared.
(1) Tell us your name and account number.
(2) Describe the error or the transfer you are unsure about and explain as clearly as you can why you believe it is an error or why you need more information.
(3) Tell us the dollar amount of the suspected error.
If you tell us verbally, we may require that you send us your complaint or question in writing within ten (10) business days.

We will determine whether an error occurred within ten (10) business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to forty-five (45) days to investigate your complaint or question (ninety (90) days for POS transactions or for transfers initiated outside of the United States). If we decide to do this, we will credit your account within ten (10) business days for the amount you think is in error. If, after the investigation, we determine that no bank error occurred, we will debit your account to the extent previously credited. If we ask you to put your complaint in writing and we do not receive it within ten (10) business days, we may not credit your account.

New Accounts- If an alleged error occurred within thirty (30) days after your first deposit to your account was made, we may have up to ninety (90) days to investigate your complaint, provided we credit your account within twenty (20) business days for the amount you think is in error.

If we decide there was no error, we will send you a written explanation within three (3) business days after we finish our investigation. You may ask for copies of the documents that we used in our investigation.

FOR QUESTIONS CONCERNING THIS STATEMENT OR FOR VERIFICATION OF A PREAUTHORIZED DEPOSIT, PLEASE CALL 1-800-REGIONS (734-4667) OR VISIT YOUR NEAREST REGIONS LOCATION.

| | | | | |
|---|---|---|---|---|
| ADJ - Adjustment | RI - Return Item | CR - Credit | SC - Service Charge | OD - Overdrawn |
| EB - Electronic Banking | NSF - Nonsufficient Funds | APY - Annual Percentage Yield | FWT - Federal Withholding Tax | *Break in Number Sequence |

**Loadcraft Indutries, Ltd**
**Bank Reconciliation Form**
**Regions Bank**

**5/31/2022**

| | Beg. Balance | DR | CR | End Balance |
|---|---|---|---|---|
| Bank | 31,769.08 | 253,448.36 | 253,362.85 | 31,854.59 |
| Book | 20,539.65 | 253,448.36 | 245,745.83 | 28,242.18 |
| Variance | 11,229.43 | - | 7,617.02 | 3,612.41 |

**Reconciling Items / Outstanding Checks**

| Date | Description | Beg. Balance | DR | CR | End Balance |
|---|---|---|---|---|---|
| 1/31/2022 | Outstanding Checks (Tab: Regions OS Check) | (0.05) | | | (0.05) |
| 2/28/2022 | Outstanding Checks (Tab: Regions OS Check) | - | | | - |
| 3/31/2022 | Outstanding Checks (Tab: Regions OS Check) | (1,125.30) | | (1,125.28) | (0.02) |
| 4/30/2022 | Outstanding Checks (Tab: Regions OS Check) | (10,104.08) | | (9,974.08) | (130.00) |
| 5/31/2022 | Outstanding Checks (Tab: Regions OS Check) | - | | 3,482.34 | (3,482.34) |
| | | - | | | - |
| | | - | | | - |
| | | - | | | - |
| | | - | | | - |
| | | - | | | - |
| | **Bank In/Out** | - | | | - |
| | **GL In/Out** | - | | | - |
| | **Cleared Transactions** | - | | | - |
| | Total Reconciling Items | (11,229.43) | - | (7,617.02) | (3,612.41) |
| | Check Digit | (0.00) | - | (0.00) | (0.00) |

| | | 253,362.85 | 253,448.36 | | | | 253,448.36 | 245,745.83 |
|---|---|---|---|---|---|---|---|---|

**Bank**

| Date | Description | Withdrawals | Deposits | | Date | Description | Deposits | Withdrawls |
|---|---|---|---|---|---|---|---|---|
| 5/2/2022 | PREAUTHORIZED ACH CREDIT | | 5,335.05 | (0.05) | 5/31/2022 | Py:Wire - CC MARK MULLIN COMPA | 5,335.00 | - |
| | | | | 0.05 | 5/31/2022 | Py:Wire - CC ClearantFee | 0.05 | - |
| 5/5/2022 | PREAUTHORIZED ACH CREDIT | | 95.00 | - | 5/31/2022 | Py:Wire - CC MOORE TRUCK AND E | 95.00 | - |
| 5/18/2022 | PREAUTHORIZED ACH CREDIT | | 176.00 | - | 5/31/2022 | Py:Wire - CC DAMIAN OIL, INC. | 176.00 | - |
| 5/10/2022 | INCOMING MONEY TRANSFER | | 1,108.00 | - | 5/31/2022 | Py:Wire MASON INTERNATIONAL OI | 1,108.00 | - |
| 5/11/2022 | INCOMING MONEY TRANSFER | | 3,536.00 | - | 5/31/2022 | Py:Wire John Energy, Ltd. | 3,536.00 | - |
| 5/13/2022 | INCOMING MONEY TRANSFER | | 42,880.00 | - | 5/31/2022 | Py:Wire SDF Oilwell Technology | 42,880.00 | - |
| 5/23/2022 | INCOMING MONEY TRANSFER | | 13,440.00 | - | 5/31/2022 | Py:Wire WELL MAINTENANCE SERVI | 13,440.00 | - |
| 5/23/2022 | INCOMING MONEY TRANSFER | | 13,682.25 | - | 5/31/2022 | Py:Wire WELL MAINTENANCE SERVI | 13,682.25 | - |
| 5/24/2022 | INCOMING MONEY TRANSFER | | 35,528.00 | - | 5/31/2022 | Py:Wire L.L. & SONS INC. | 35,528.00 | - |
| 5/3/2022 | CHECK DEPOSIT PACKAGE | | 50,771.75 | (40,991.00) | 5/31/2022 | Py:34049 ScrapSale_TxAlloy | 9,780.75 | - |
| | | | | 19,500.00 | 5/31/2022 | Py:56573 JELEC USA, INC | 19,500.00 | - |
| | | | | 21,491.00 | 5/31/2022 | Py:681906562 INNODRY LLC | 21,491.00 | - |
| 5/5/2022 | CHECK DEPOSIT PACKAGE | | 16,000.00 | - | 5/31/2022 | Py:58769 CONCHO SERVICES, LLC | 16,000.00 | - |
| 5/9/2022 | CHECK DEPOSIT PACKAGE | | 4,941.16 | - | 5/31/2022 | Py:34100 ScrapSale_TxAlloy | 4,941.16 | - |
| 5/10/2022 | CHECK DEPOSIT PACKAGE | | 12,005.42 | - | 5/31/2022 | Py:1132 LIGHTED WAY LOGISTICS | 12,005.42 | - |
| 5/23/2022 | CHECK DEPOSIT PACKAGE | | 24,975.00 | - | 5/31/2022 | Py:56598 JELEC USA, INC | 24,975.00 | - |
| 5/23/2022 | CHECK DEPOSIT PACKAGE | | 1,196.50 | - | 5/31/2022 | Py:4762 Nathan Sorrells DBA Sn | 1,196.50 | - |

| Date | Description | Withdrawals | Deposits | | Date | Description | Deposits | Withdrawls |
|------|-------------|-------------|----------|---|------|-------------|----------|------------|
| 5/31/2022 | CHECK DEPOSIT PACKAGE | | 2,777.67 | (656.67) | 5/31/2022 | Py:34152 ScrapSale_TxAlloy | 2,121.00 | - |
| | | | | 384.95 | 5/31/2022 | Py:4165 SUN WELL SERVICE | 384.95 | - |
| | | | | 271.72 | 5/31/2022 | Py:6392 BLACK HAWK ENERGY SERV | 271.72 | - |
| | | | | - | | | | |
| | | | | - | | | | |
| 5/2/2022 | UTEX INDUSTRIES  5969          / | 329.72 | | - | 5/2/2022 | UTEX INDUSTRIES  5969 | - | 329.72 |
| 5/26/2022 | ENGINEERED SEAL  5085          / | 538.35 | | - | 5/26/2022 | ENGINEERED SEAL  5085 | - | 538.35 |
| 5/12/2022 | ENGINEERED SEAL  5085          / | 71.78 | | - | 5/12/2022 | ENGINEERED SEAL  5085 | - | 71.78 |
| 5/4/2022 | RIGPRO INC     5046          / | 1,477.03 | | - | 5/4/2022 | RIGPRO INC     5046 | - | 1,477.03 |
| 5/5/2022 | SCHEERER BEARIN  5072          / | 160.66 | | - | 5/5/2022 | SCHEERER BEARIN  5072 | - | 160.66 |
| 5/6/2022 | MOTION INDUSTRI  5085          / | 40.33 | | - | 5/6/2022 | MOTION INDUSTRI  5085 | - | 40.33 |
| 5/6/2022 | MOTION INDUSTRI  5085          / | 200.46 | | - | 5/6/2022 | MOTION INDUSTRI  5085 | - | 200.46 |
| 5/6/2022 | MOTION INDUSTRI  5085          / | 850.65 | | - | 5/6/2022 | MOTION INDUSTRI  5085 | - | 850.65 |
| 5/5/2022 | RIGPRO INC     5046          / | 367.82 | | - | 5/5/2022 | RIGPRO INC     5046 | - | 367.82 |
| 5/6/2022 | MSC       5085          / | 999.30 | | - | 5/6/2022 | MSC       5085 | - | 999.30 |
| 5/9/2022 | MSC       5085          / | 232.23 | | - | 5/9/2022 | MSC       5085 | - | 232.23 |
| 5/6/2022 | MSC       5085          / | 446.20 | | - | 5/6/2022 | MSC       5085 | - | 446.20 |
| 5/9/2022 | IN *RATLIFF STE  5039          / | 272.00 | | - | 5/9/2022 | IN *RATLIFF STE  5039 | - | 272.00 |
| 5/19/2022 | RIGPRO INC     5046          / | 105.97 | | - | 5/19/2022 | RIGPRO INC     5046 | - | 105.97 |
| 5/31/2022 | RIGPRO INC     5046          / | 10,656.00 | | - | 5/31/2022 | RIGPRO INC     5046 | - | 10,656.00 |
| | | - | | - | | | | |
| 5/18/2022 | ABS       5085          / | 178.20 | | - | 5/18/2022 | ABS       5085 | - | 178.20 |
| 5/26/2022 | ABS       5085          / | 137.18 | | - | 5/26/2022 | ABS       5085 | - | 137.18 |
| 5/4/2022 | AIRGAS USA LLC  4900          / | 75.18 | | - | 5/4/2022 | AIRGAS USA LLC  4900 | - | 75.18 |
| 5/12/2022 | AIRGAS USA LLC  4900          / | 89.09 | | - | 5/12/2022 | AIRGAS USA LLC  4900 | - | 89.09 |
| 5/5/2022 | ALLSUPS #10208  5542          / | 100.00 | | - | 5/5/2022 | ALLSUPS #10208  5542 | - | 100.00 |
| 5/19/2022 | ALLSUPS #10208  5542          / | 100.00 | | - | 5/19/2022 | ALLSUPS #10208  5542 | - | 100.00 |
| 5/10/2022 | ALLSUPS #10210  5542          / | 100.00 | | - | 5/10/2022 | ALLSUPS #10210  5542 | - | 100.00 |
| 5/12/2022 | ALLSUPS #10210  5542          / | 82.25 | | - | 5/12/2022 | ALLSUPS #10210  5542 | - | 82.25 |
| 5/31/2022 | ALLSUPS #10220  5542          / | 79.22 | | - | 5/31/2022 | ALLSUPS #10220  5542 | - | 79.22 |
| 5/31/2022 | ALLSUPS #10220  5542          / | 100.00 | | - | 5/31/2022 | ALLSUPS #10220  5542 | - | 100.00 |
| 5/2/2022 | ALLSUPS #10227  5542          / | 87.77 | | - | 5/2/2022 | ALLSUPS #10227  5542 | - | 87.77 |
| 5/17/2022 | ALLSUPS #10227  5542          / | 100.00 | | - | 5/17/2022 | ALLSUPS #10227  5542 | - | 100.00 |
| 5/24/2022 | ALLSUPS #10227  5542          / | 100.00 | | - | 5/24/2022 | ALLSUPS #10227  5542 | - | 100.00 |
| 5/25/2022 | ALLSUPS #10227  5542          / | 100.00 | | - | 5/25/2022 | ALLSUPS #10227  5542 | - | 100.00 |
| 5/27/2022 | ALLSUPS #10227  5542          / | 95.85 | | - | 5/27/2022 | ALLSUPS #10227  5542 | - | 95.85 |
| 5/9/2022 | ANALYSIS CHARGE     04-22      / | 203.00 | | - | 5/9/2022 | ANALYSIS CHARGE     04 | - | 203.00 |
| 5/4/2022 | APSCO SUPPLY    5074          / | 4.28 | | - | 5/4/2022 | APSCO SUPPLY    5074 | - | 4.28 |
| 5/26/2022 | AT&T PAYMENT    4814          / | 549.30 | | - | 5/26/2022 | AT&T PAYMENT    4814 | - | 549.30 |
| 5/26/2022 | AT&T PAYMENT    4814          / | 582.50 | | - | 5/26/2022 | AT&T PAYMENT    4814 | - | 582.50 |
| 5/9/2022 | BOB MOORE TIRE  7538          / | 458.53 | | - | 5/9/2022 | BOB MOORE TIRE  7538 | - | 458.53 |
| 5/16/2022 | BOB MOORE TIRE  7538          / | 251.50 | | - | 5/16/2022 | BOB MOORE TIRE  7538 | - | 251.50 |
| 5/3/2022 | BRADY BUTANE C  5983          / | 1.94 | | - | 5/3/2022 | BRADY BUTANE C  5983 | - | 1.94 |
| 5/10/2022 | BRADY BUTANE C  5983          / | 8.65 | | - | 5/10/2022 | BRADY BUTANE C  5983 | - | 8.65 |
| 5/12/2022 | BRADY BUTANE C  5983          / | 40.87 | | - | 5/12/2022 | BRADY BUTANE C  5983 | - | 40.87 |
| 5/12/2022 | BRADY COMMUNICAT          / | 390.00 | | - | 5/12/2022 | BRADY COMMUNICAT | - | 390.00 |
| 5/12/2022 | BRADY COMMUNICAT          / | 390.00 | | - | 5/12/2022 | BRADY COMMUNICAT | - | 390.00 |
| 5/16/2022 | CITY OF BROWNWO  9399          / | 217.62 | | - | 5/16/2022 | CITY OF BROWNWO  9399 | - | 217.62 |

| Date | Description | Withdrawals | Deposits | | Date | Description | Deposits | Withdrawls |
|------|-------------|-------------|----------|---|------|-------------|----------|------------|
| 5/31/2022 | CITY OF BROWNWO  9399          / | 101.31 | | - | 5/31/2022 | CITY OF BROWNWO  9399 | - | 101.31 |
| 5/6/2022 | CLEARENT LLC              / | 63.45 | | - | 5/6/2022 | CLEARENT LLC | - | 63.45 |
| 5/27/2022 | CROSS TEXAS SUP  7692          / | 459.36 | | - | 5/27/2022 | CROSS TEXAS SUP  7692 | - | 459.36 |
| 5/31/2022 | DAYS INN & SUIT  3510          / | 80.49 | | - | 5/31/2022 | DAYS INN & SUIT  3510 | - | 80.49 |
| 5/31/2022 | DAYS INN & SUIT  3510          / | 80.49 | | - | 5/31/2022 | DAYS INN & SUIT  3510 | - | 80.49 |
| 5/19/2022 | DeCoty Coffee C  5499          / | 242.78 | | - | 5/19/2022 | DeCoty Coffee C  5499 | - | 242.78 |
| 5/3/2022 | ELLIOTT ELECTR  5251          / | 177.37 | | - | 5/3/2022 | ELLIOTT ELECTR  5251 | - | 177.37 |
| 5/9/2022 | ELLIOTT ELECTR  5251          / | 102.00 | | - | 5/9/2022 | ELLIOTT ELECTR  5251 | - | 102.00 |
| 5/19/2022 | ELLIOTT ELECTR  5251          / | 338.48 | | - | 5/19/2022 | ELLIOTT ELECTR  5251 | - | 338.48 |
| 5/2/2022 | FASTENAL COMPAN  5085          / | 67.04 | | - | 5/2/2022 | FASTENAL COMPAN  5085 | - | 67.04 |
| 5/19/2022 | FASTENAL COMPAN  5085          / | 16.83 | | - | 5/19/2022 | FASTENAL COMPAN  5085 | - | 16.83 |
| 5/4/2022 | FLEETPRIDE469  5533          / | 46.83 | | - | 5/4/2022 | FLEETPRIDE469  5533 | - | 46.83 |
| 5/5/2022 | GORDON EXXON    5542          / | 125.00 | | - | 5/5/2022 | GORDON EXXON    5542 | - | 125.00 |
| 5/4/2022 | GOV-PAY FEE - M  9399          / | 3.00 | | - | 5/4/2022 | GOV-PAY FEE - M  9399 | - | 3.00 |
| 5/5/2022 | GOV-PAY FEE - M  9399          / | 3.00 | | - | 5/5/2022 | GOV-PAY FEE - M  9399 | - | 3.00 |
| 5/26/2022 | HEART OF TEXAS  7538          / | 96.00 | | - | 5/26/2022 | HEART OF TEXAS  7538 | - | 96.00 |
| 5/27/2022 | HOMEDEPOT.COM   5200          / | 318.43 | | - | 5/27/2022 | HOMEDEPOT.COM   5200 | - | 318.43 |
| 5/12/2022 | Incoming FED Wire TRN       :20220512- | | 25,000.00 | - | 5/12/2022 | Alphonso Energy Capital | 25,000.00 | - |
| 5/27/2022 | INTUIT *QuickBo  5734          / | 159.90 | | - | 5/27/2022 | INTUIT *QuickBo  5734 | - | 159.90 |
| 5/4/2022 | IRS                    / | 1,551.70 | | - | 5/4/2022 | IRS | - | 1,551.70 |
| 5/4/2022 | IRS                    / | 8,044.20 | | - | 5/4/2022 | IRS | - | 8,044.20 |
| 5/11/2022 | IRS                    / | 7,935.96 | | - | 5/11/2022 | IRS | - | 7,935.96 |
| 5/18/2022 | IRS                    / | 8,657.05 | | - | 5/18/2022 | IRS | - | 8,657.05 |
| 5/25/2022 | IRS                    / | 7,984.07 | | - | 5/25/2022 | IRS | - | 7,984.07 |
| 5/19/2022 | KEITH ACE HARD  5251          / | 39.15 | | - | 5/19/2022 | KEITH ACE HARD  5251 | - | 39.15 |
| 5/19/2022 | KEITH ACE HARDW  5251          / | 2.59 | | - | 5/19/2022 | KEITH ACE HARDW  5251 | - | 2.59 |
| 5/27/2022 | KFC J625107    5814          / | 15.78 | | - | 5/27/2022 | KFC J625107    5814 | - | 15.78 |
| 5/3/2022 | MOORE S AUTO 0  5533          / | 7.99 | | - | 5/3/2022 | MOORE S AUTO 0  5533 | - | 7.99 |
| 5/9/2022 | MOORE S AUTO 0  5533          / | 61.68 | | - | 5/9/2022 | MOORE S AUTO 0  5533 | - | 61.68 |
| 5/12/2022 | MOORE S AUTO 0  5533          / | 22.91 | | - | 5/12/2022 | MOORE S AUTO 0  5533 | - | 22.91 |
| 5/12/2022 | MOORE S AUTO 0  5533          / | 51.98 | | - | 5/12/2022 | MOORE S AUTO 0  5533 | - | 51.98 |
| 5/17/2022 | MOORE S AUTO 0  5533          / | 44.76 | | - | 5/17/2022 | MOORE S AUTO 0  5533 | - | 44.76 |
| 5/17/2022 | MOORE S AUTO 0  5533          / | 188.71 | | - | 5/17/2022 | MOORE S AUTO 0  5533 | - | 188.71 |
| 5/18/2022 | MOORE S AUTO 0  5533          / | 13.98 | | - | 5/18/2022 | MOORE S AUTO 0  5533 | - | 13.98 |
| 5/18/2022 | MOORE S AUTO 0  5533          / | 65.49 | | - | 5/18/2022 | MOORE S AUTO 0  5533 | - | 65.49 |
| 5/18/2022 | MOORE S AUTO 0  5533          / | 67.48 | | - | 5/18/2022 | MOORE S AUTO 0  5533 | - | 67.48 |
| 5/18/2022 | MOORE S AUTO 0  5533          / | 510.93 | | - | 5/18/2022 | MOORE S AUTO 0  5533 | - | 510.93 |
| 5/19/2022 | MOORE S AUTO 0  5533          / | 153.60 | | - | 5/19/2022 | MOORE S AUTO 0  5533 | - | 153.60 |
| 5/23/2022 | MOORE S AUTO 0  5533          / | 66.89 | | - | 5/23/2022 | MOORE S AUTO 0  5533 | - | 66.89 |
| 5/27/2022 | MOTION INDUSTRI  5085          / | 177.66 | | - | 5/27/2022 | MOTION INDUSTRI  5085 | - | 177.66 |
| 5/31/2022 | MOTION INDUSTRI  5085          / | 93.19 | | - | 5/31/2022 | MOTION INDUSTRI  5085 | - | 93.19 |
| 5/31/2022 | MOTION INDUSTRI  5085          / | 256.46 | | - | 5/31/2022 | MOTION INDUSTRI  5085 | - | 256.46 |
| 5/4/2022 | MOTOR        9399          / | 29.75 | | - | 5/4/2022 | MOTOR        9399 | - | 29.75 |
| 5/5/2022 | MOTOR        9399          / | 9.75 | | - | 5/5/2022 | MOTOR        9399 | - | 9.75 |
| 5/17/2022 | MSC          5085 | 372.22 | | - | 5/17/2022 | MSC          5085 | - | 372.22 |
| 5/17/2022 | NAPA AUTO 0026  5533          / | 19.80 | | - | 5/17/2022 | NAPA AUTO 0026  5533 | - | 19.80 |
| 5/17/2022 | NAPA AUTO 0026  5533          / | 105.53 | | - | 5/17/2022 | NAPA AUTO 0026  5533 | - | 105.53 |
| 5/23/2022 | NAPA AUTO 0026  5533          / | 13.83 | | - | 5/23/2022 | NAPA AUTO 0026  5533 | - | 13.83 |
| 5/23/2022 | NAPA AUTO 0026  5533          / | 62.25 | | - | 5/23/2022 | NAPA AUTO 0026  5533 | - | 62.25 |

| Date | Description | Withdrawals | Deposits | | Date | Description | Deposits | Withdrawls |
|------|-------------|-------------|----------|---|------|-------------|----------|------------|
| 5/2/2022 | O REILLY AUTO   5533          / | 425.98 | | - | 5/2/2022 | O REILLY AUTO   5533 | - | 425.98 |
| 5/12/2022 | O REILLY AUTO   5533 | 61.78 | | - | 5/12/2022 | O REILLY AUTO   5533 | - | 61.78 |
| 5/20/2022 | Outgoing FED Wire TRN        :20220520-0 | 2,670.79 | | - | 5/20/2022 | Luis Jauregui_Wages | - | 2,670.79 |
| 5/20/2022 | Outgoing FED Wire TRN        :20220520-0 | 500.00 | | - | 5/20/2022 | Orient Oil | - | 500.00 |
| 5/12/2022 | PROG COUNTY MUT | 324.49 | | - | 5/12/2022 | PROG COUNTY MUT | - | 324.49 |
| 5/10/2022 | QUARTERLY FEE                / | 3,384.00 | | - | 5/10/2022 | QUARTERLY FEE | - | 3,384.00 |
| 5/20/2022 | QUICKBOOKS | 0.56 | | - | 5/20/2022 | QUICKBOOKS | - | 0.56 |
| 5/27/2022 | QUICKBOOKS                   / | | 0.56 | - | 5/27/2022 | QUICKBOOKS | 0.56 | - |
| 5/2/2022 | QUILL CORPORATI 5111         / | 162.33 | | - | 5/2/2022 | QUILL CORPORATI 5111 | - | 162.33 |
| 5/31/2022 | QUILL CORPORATI 5111         / | 256.54 | | - | 5/31/2022 | QUILL CORPORATI 5111 | - | 256.54 |
| 5/4/2022 | REGIONS BANK     PREFUNDDDBT | 26,561.45 | | - | 5/4/2022 | REGIONS BANK     PREFUNDDDBT | - | 26,561.45 |
| 5/12/2022 | REGIONS BANK     PREFUNDDDBT | 27,270.13 | | - | 5/12/2022 | REGIONS BANK     PREFUNDDDBT | - | 27,270.13 |
| 5/18/2022 | REGIONS BANK     PREFUNDDDBT | 25,792.28 | | - | 5/18/2022 | REGIONS BANK     PREFUNDDDBT | - | 25,792.28 |
| 5/24/2022 | REGIONS BANK     PREFUNDDDBT | 26,309.48 | | - | 5/24/2022 | REGIONS BANK     PREFUNDDDBT | - | 26,309.48 |
| 5/10/2022 | REGIONS BANK FEE | 15.00 | | - | 5/10/2022 | REGIONS BANK FEE | - | 15.00 |
| 5/11/2022 | REGIONS BANK FEE | 15.00 | | - | 5/11/2022 | REGIONS BANK FEE | - | 15.00 |
| 5/12/2022 | REGIONS BANK FEE | 15.00 | | - | 5/12/2022 | REGIONS BANK FEE | - | 15.00 |
| 5/13/2022 | REGIONS BANK FEE | 15.00 | | - | 5/13/2022 | REGIONS BANK FEE | - | 15.00 |
| 5/20/2022 | REGIONS BANK FEE | 25.00 | | - | 5/20/2022 | REGIONS BANK FEE | - | 25.00 |
| 5/20/2022 | REGIONS BANK FEE | 45.00 | | - | 5/20/2022 | REGIONS BANK FEE | - | 45.00 |
| 5/23/2022 | REGIONS BANK FEE | 3.00 | | - | 5/23/2022 | REGIONS BANK FEE | - | 3.00 |
| 5/23/2022 | REGIONS BANK FEE | 15.00 | | - | 5/23/2022 | REGIONS BANK FEE | - | 15.00 |
| 5/23/2022 | REGIONS BANK FEE | 15.00 | | - | 5/23/2022 | REGIONS BANK FEE | - | 15.00 |
| 5/24/2022 | REGIONS BANK FEE | 15.00 | | - | 5/24/2022 | REGIONS BANK FEE | - | 15.00 |
| 5/23/2022 | SANTA ANNA NATL  6010        / | 150.00 | | - | 5/23/2022 | SANTA ANNA NATL  6010 | - | 150.00 |
| 5/4/2022 | SELECT PREMIUM               / | 1,882.39 | | - | 5/4/2022 | SELECT PREMIUM | - | 1,882.39 |
| 5/3/2022 | SHELL SERVICE   5542         / | 65.75 | | - | 5/3/2022 | SHELL SERVICE   5542 | - | 65.75 |
| 5/3/2022 | STARR SALES     5085         / | 41.36 | | - | 5/3/2022 | STARR SALES     5085 | - | 41.36 |
| 5/9/2022 | STARR SALES     5085         / | 129.25 | | - | 5/9/2022 | STARR SALES     5085 | - | 129.25 |
| 5/10/2022 | STARR SALES     5085         / | 87.24 | | - | 5/10/2022 | STARR SALES     5085 | - | 87.24 |
| 5/11/2022 | STARR SALES     5085         / | 169.01 | | - | 5/11/2022 | STARR SALES     5085 | - | 169.01 |
| 5/25/2022 | STARR SALES     5085         / | 583.19 | | - | 5/25/2022 | STARR SALES     5085 | - | 583.19 |
| 5/4/2022 | STATE COMPTRLR               / | 19,805.49 | | - | 5/4/2022 | STATE COMPTRLR | - | 19,805.49 |
| 5/19/2022 | STATE COMPTRLR               / | 297.08 | | - | 5/19/2022 | STATE COMPTRLR | - | 297.08 |
| 5/27/2022 | SUNOCO 0704902  5542         / | 100.00 | | - | 5/27/2022 | SUNOCO 0704902  5542 | - | 100.00 |
| 5/18/2022 | Texas Mutual    Payment      / | 2,920.00 | | - | 5/18/2022 | Texas Mutual    Payment | - | 2,920.00 |
| 5/6/2022 | THE HOME DEPOT  5200         / | 11.86 | | - | 5/6/2022 | THE HOME DEPOT  5200 | - | 11.86 |
| 5/10/2022 | THE HOME DEPOT  5200         / | 36.22 | | - | 5/10/2022 | THE HOME DEPOT  5200 | - | 36.22 |
| 5/19/2022 | THE HOME DEPOT  5200         / | 72.34 | | - | 5/19/2022 | THE HOME DEPOT  5200 | - | 72.34 |
| 5/16/2022 | TRACTOR S 2309  5599         / | 97.41 | | - | 5/16/2022 | TRACTOR S 2309  5599 | - | 97.41 |
| 5/18/2022 | TRACTOR S 2309  5599         / | 70.35 | | - | 5/18/2022 | TRACTOR S 2309  5599 | - | 70.35 |
| 5/20/2022 | UNITED SUPERMA  5411         / | 21.99 | | - | 5/20/2022 | UNITED SUPERMA  5411 | - | 21.99 |
| 5/31/2022 | UPS*1ZA41A46011 4215         / | 73.10 | | - | 5/31/2022 | UPS*1ZA41A46011 4215 | - | 73.10 |
| 5/9/2022 | UPS*1ZA41A46012 4215         / | 24.83 | | - | 5/9/2022 | UPS*1ZA41A46012 4215 | - | 24.83 |
| 5/9/2022 | UPS*1ZA41A46031 4215         / | 10.67 | | - | 5/9/2022 | UPS*1ZA41A46031 4215 | - | 10.67 |
| 5/9/2022 | UPS*1ZA41A46031 4215         / | 10.67 | | - | 5/9/2022 | UPS*1ZA41A46031 4215 | - | 10.67 |
| 5/9/2022 | UPS*1ZA41A46032 4215         / | 53.44 | | - | 5/9/2022 | UPS*1ZA41A46032 4215 | - | 53.44 |
| 5/16/2022 | UPS*1ZA41A46033 4215         / | 12.53 | | - | 5/16/2022 | UPS*1ZA41A46033 4215 | - | 12.53 |
| 5/2/2022 | UPS*1ZA41A46132 4215         / | 30.98 | | - | 5/2/2022 | UPS*1ZA41A46132 4215 | - | 30.98 |

| Date | Description | Withdrawals | Deposits | | Date | Description | Deposits | Withdrawls |
|------|-------------|-------------|----------|---|------|-------------|----------|------------|
| 5/12/2022 | USPS PO 481010  9402          / | 58.00 | | - | 5/12/2022 | USPS PO 481010  9402 | - | 58.00 |
| 5/4/2022 | USR ElectricBill 0391D          / | 2,135.72 | | - | 5/4/2022 | USR ElectricBill 0391D | - | 2,135.72 |
| 5/20/2022 | VBS*VONAGE BUSI  4814          / | 595.60 | | - | 5/20/2022 | VBS*VONAGE BUSI  4814 | - | 595.60 |
| 5/17/2022 | WAL-MART #0917  5411          / | 120.86 | | - | 5/17/2022 | WAL-MART #0917  5411 | - | 120.86 |
| 5/10/2022 | WEAKLEY-WATSON  5251          / | 24.88 | | - | 5/10/2022 | WEAKLEY-WATSON  5251 | - | 24.88 |
| 5/11/2022 | WEAKLEY-WATSON  5251          / | 7.03 | | - | 5/11/2022 | WEAKLEY-WATSON  5251 | - | 7.03 |
| 5/23/2022 | WEBFILE TAX PYMT          / | 106.88 | | - | 5/23/2022 | WEBFILE TAX PYMT | - | 106.88 |
| 5/31/2022 | WENDY S #355    5814          / | 22.91 | | - | 5/31/2022 | WENDY S #355    5814 | - | 22.91 |
| 5/31/2022 | WM SUPERC Wal-  5411          / | 1.75 | | - | 5/31/2022 | WM SUPERC Wal-  5411 | - | 1.75 |
| 5/4/2022 | WM SUPERCENTER  5411          / | 18.12 | | - | 5/4/2022 | WM SUPERCENTER  5411 | - | 18.12 |
| 5/11/2022 | WM SUPERCENTER  5411          / | 77.32 | | - | 5/11/2022 | WM SUPERCENTER  5411 | - | 77.32 |
| 5/9/2022 | YESWAY 1055    5541          / | 401.28 | | - | 5/9/2022 | YESWAY 1055    5541 | - | 401.28 |
| 5/12/2022 | YESWAY 1055    5541          / | 146.41 | | - | 5/12/2022 | YESWAY 1055    5541 | - | 146.41 |
| 5/4/2022 | YESWAY 1055    5542          / | 16.79 | | - | 5/4/2022 | YESWAY 1055    5542 | - | 16.79 |
| 5/4/2022 | YESWAY 1055    5542          / | 50.00 | | - | 5/4/2022 | YESWAY 1055    5542 | - | 50.00 |
| 5/6/2022 | YESWAY 1055    5542          / | 12.00 | | - | 5/6/2022 | YESWAY 1055    5542 | - | 12.00 |
| 5/10/2022 | YESWAY 1055    5542          / | 19.78 | | - | 5/10/2022 | YESWAY 1055    5542 | - | 19.78 |
| 5/11/2022 | YESWAY 1055    5542          / | 50.00 | | - | 5/11/2022 | YESWAY 1055    5542 | - | 50.00 |
| 5/17/2022 | YESWAY 1055    5542          / | 50.00 | | - | 5/17/2022 | YESWAY 1055    5542 | - | 50.00 |
| 5/19/2022 | YESWAY 1055    5542          / | 46.81 | | - | 5/19/2022 | YESWAY 1055    5542 | - | 46.81 |
| 5/24/2022 | YESWAY 1055    5542          / | 19.42 | | - | 5/24/2022 | YESWAY 1055    5542 | - | 19.42 |
| 5/26/2022 | YESWAY 1055    5542          / | 76.70 | | - | 5/26/2022 | YESWAY 1055    5542 | - | 76.70 |
| | | - | | - | | | | |
| 5/9/2022 | 44563 | 1,125.28 | | 1,125.28 | | | | |
| 5/9/2022 | 44577 | 1,761.03 | | 1,761.03 | | | | |
| 5/3/2022 | 44587 | 1,266.86 | | 1,266.86 | | | | |
| 5/9/2022 | 44598 | 1,949.64 | | 1,949.64 | | | | |
| 5/3/2022 | 44599 | 3,023.80 | | 3,023.80 | | | | |
| 5/2/2022 | 44600 | 1,035.00 | | 1,035.00 | | | | |
| 5/2/2022 | 44601 | 322.59 | | 322.59 | | | | |
| 5/3/2022 | 44602 | 615.16 | | 615.16 | | | | |
| 5/3/2022 | 44603 | 1,358.57 | | - | 5/5/2022 | Py:44603 FEDEX FREIGHT EAST | - | 1,358.57 |
| 5/4/2022 | 44604 | 300.00 | | - | 5/5/2022 | Py:44604 RODNEY MCFARLAND | - | 300.00 |
| 5/6/2022 | 44605 | 400.00 | | - | 5/5/2022 | Py:44605 RODNEY MCFARLAND | - | 400.00 |
| 5/13/2022 | 44606 | 2,000.00 | | - | 5/5/2022 | Py:44606 HOME MOTORS, INC. | - | 2,000.00 |
| 5/11/2022 | 44607 | 10,365.00 | | - | 5/6/2022 | Py:44607 H.C. HOWELL CO | - | 10,365.00 |
| 5/11/2022 | 44608 | 733.65 | | - | 5/5/2022 | Py:44608 TX CHILD SUPPORT SDU | - | 733.65 |
| 5/11/2022 | 44609 | 461.30 | | - | 5/5/2022 | Py:44609 TX CHILD SUPPORT SDU | - | 461.30 |
| 5/23/2022 | 44610 | 1,000.00 | | - | 5/9/2022 | Py:44610 ROTEC ENGINEERING | - | 1,000.00 |
| 5/13/2022 | 44611 | 2,000.00 | | - | 5/9/2022 | Py:44611 HUNTLAND TRUCKING | - | 2,000.00 |
| 5/12/2022 | 44612 | 58.00 | | - | 5/11/2022 | Py:44612 RANDALL COVEY | - | 58.00 |
| 5/17/2022 | 44613 | 2,422.05 | | - | 5/11/2022 | Py:44613 RATLIFF STEEL COMPANY | - | 2,422.05 |
| 5/13/2022 | 44614 | 40.60 | | - | 5/11/2022 | Py:44614 RAYMOND OLIVAREZ | - | 40.60 |
| 5/12/2022 | 44615 | 112.67 | | - | 5/11/2022 | Py:44615 RODNEY MCFARLAND | - | 112.67 |
| 5/16/2022 | 44617 | 1,080.00 | | - | 5/12/2022 | Py:44617 COLT WILKINSON | - | 1,080.00 |
| 5/17/2022 | 44619 | 538.20 | | - | 5/15/2022 | Py:44619 FEDEX FREIGHT EAST | - | 538.20 |
| 5/18/2022 | 44620 | 1,524.96 | | - | 5/19/2022 | Py:44620 FLEETPRIDE HVY DUTY E | - | 1,524.96 |
| 5/25/2022 | 44622 | 1,198.42 | | - | 5/19/2022 | Py:44622 TX CHILD SUPPORT SDU | - | 1,198.42 |
| 5/23/2022 | 44624 | 317.55 | | - | 5/20/2022 | Py:44624 FEDEX FREIGHT EAST | - | 317.55 |

| Date | Description | Withdrawals | Deposits |
|------|-------------|-------------|----------|
| 5/25/2022 | 44626 | 459.90 | |
| 5/26/2022 | 44627 | 200.00 | |
| 5/27/2022 | 44628 | 9,033.67 | |
| 5/26/2022 | 44629 | 751.58 | |
| 5/26/2022 | 44630 | 513.62 | |
| 5/31/2022 | 44633 | 200.00 | |
| | | | |
| | | | |
| | | | |
| | | | |

| | Date | Description | Deposits | Withdrawls |
|------|------|-------------|----------|------------|
| - | 5/23/2022 | Py:44626 REEDER DISTRIBUTORS | - | 459.90 |
| - | 5/25/2022 | Py:44627 FORREST VAUGHN | - | 200.00 |
| - | 5/25/2022 | Py:44628 CITY OF BRADY | - | 9,033.67 |
| - | 5/25/2022 | Py:44629 FEDEX FREIGHT EAST | - | 751.58 |
| - | 5/25/2022 | Py:44630 FEDEX FREIGHT EAST | - | 513.62 |
| - | 5/26/2022 | Py:44633 EDDIE JONES | - | 200.00 |
| - | | | | |
| - | | | | |
| (547.13) | 5/12/2022 | Py:44618 PETTY CASH | - | 547.13 |
| (1,099.22) | 5/19/2022 | Py:44621 AIRGAS USA, LLC | - | 1,099.22 |
| (819.19) | 5/19/2022 | Py:44623 PETTY CASH | - | 819.19 |
| (100.00) | 5/23/2022 | Py:44625 DENNIS COOK | - | 100.00 |
| (450.00) | 5/26/2022 | Py:44632 COLT WILKINSON | - | 450.00 |
| (466.80) | 5/26/2022 | Py:44634 TX CHILD SUPPORT SDU | - | 466.80 |

**Loadcraft Indutries, Ltd**
**Oustanding Checks**
**Regions Bank**

| | | | | | |
|---|---|---|---|---|---|
| **Jan 2021** | 0.05 | **Cleared** | **Voided** | **Date** | **Bank** |
| 1/31/2022 Py:44144 FEDEX FREIGHT EAST | 182.38 | (182.33) | | 2/1/2022 | Regions Bank |
| **Feb 2022** | - | **Cleared** | **Voided** | **Date** | **Bank** |
| **Mar 2022** | 0.02 | **Cleared** | **Voided** | **Date** | **Bank** |
| 3/1/2022 Py:44530 HERITAGE FUNERAL HOME | 70.36 | (70.34) | | 3/11/2022 | Regions Bank |
| 3/28/2022 Py:44563 CHARLES E. HINKLE | 1,125.28 | (1,125.28) | | 5/9/2022 | Regions Bank |
| **Apr 2022** | 130.00 | **Cleared** | **Voided** | **Date** | **Bank** |
| 4/7/2022 Py:44574 COLT WILKINSON | 895.00 | (765.00) | | 4/30/2022 | Regions Bank |
| 4/12/2022 Py:44577 CHARLES E. HINKLE | 1,761.03 | (1,761.03) | | 5/9/2022 | Regions Bank |
| 4/19/2022 Py:44587 AIRGAS USA, LLC | 1,266.86 | (1,266.86) | | 5/3/2022 | Regions Bank |
| 4/25/2022 Py:44598 CHARLES E. HINKLE | 1,949.64 | (1,949.64) | | 5/9/2022 | Regions Bank |
| 4/27/2022 Py:44599 CLEVELAND CITY FORGE | 3,023.80 | (3,023.80) | | 5/3/2022 | Regions Bank |
| 4/27/2022 Py:44600 COLT WILKINSON | 1,035.00 | (1,035.00) | | 5/2/2022 | Regions Bank |
| 4/28/2022 Py:44601 MARK MULLIN COMPANY L | 322.59 | (322.59) | | 5/2/2022 | Regions Bank |
| 4/28/2022 Py:44602 RATLIFF STEEL COMPANY | 615.16 | (615.16) | | 5/3/2022 | Regions Bank |
| **May 2022** | 3,482.34 | **Cleared** | **Voided** | **Date** | **Bank** |
| 5/12/2022 Py:44618 PETTY CASH | 547.13 | | | | |
| 5/19/2022 Py:44621 AIRGAS USA, LLC | 1,099.22 | | | | |
| 5/19/2022 Py:44623 PETTY CASH | 819.19 | | | | |
| 5/23/2022 Py:44625 DENNIS COOK | 100.00 | | | | |
| 5/26/2022 Py:44632 COLT WILKINSON | 450.00 | | | | |
| 5/26/2022 Py:44634 TX CHILD SUPPORT SDU | 466.80 | | | | |

| | | | | |
|---|---|---|---|---|
| **Loadcraft Indutries, Ltd** | | | | |
| **Bank Reconciliation Form** | | | | |
| **Regions Bank - Utilities** | | | | |

**5/31/2022**

| | Beg. Balance | DR | CR | Ending Balance |
|---|---|---|---|---|
| **Bank** | 9,000.00 | - | - | 9,000.00 |
| **Book** | 9,000.00 | - | - | 9,000.00 |
| Variance | - | - | - | - |

| Reconciling Items / Outstanding Checks | | | | |
|---|---|---|---|---|
| Date | Description | Beg. Balance | DR | CR | Ending Balance |
| | | - | | - | - |
| | | | | | - |
| | | | | | - |
| | | | | | - |
| | | | | | - |
| | | | | | - |
| | | | | | - |
| | | | | | - |
| | | | | | - |
| | **Bank In/Out** | | | | - |
| | **GL In/Out** | | | | - |
| | **Cleared Transactions** | | | | - |
| | Total Reconciling Items | - | - | - | - |
| | Check Digit | - | - | - | - |

| | - | - | | | - | - |
|---|---|---|---|---|---|---|
| **Bank** | | | **Book** | | | |
| Date | Description | Withdrawals | Deposits | Date | Description | Deposits | Withdrawls |

| | | | | |
|---|---|---|---|---|
| **Loadcraft Indutries, Ltd** | | | | |
| **Bank Reconciliation Form** | | | | |
| **First Bank & Trust** | | | | |

**5/31/2022**

| | Beg. Balance | DR | CR | Ending Balance |
|---|---|---|---|---|
| **Bank** | 63.78 | - | - | 63.78 |
| **Book** | 63.78 | - | - | 63.78 |
| Variance | - | - | - | - |

| Reconciling Items / Outstanding Checks | | | | |
|---|---|---|---|---|
| **Date** | **Description** | **Beg. Balance** | **DR** | **CR** | **Ending Balance** |
| 12/31/2021 | OS Cks Dec 2021 | - | - | - | - |
| | | - | | | - |
| | | | | | - |
| | | | | | - |
| | | | | | - |
| | | | | | |
| | | | | | |
| | | | | | - |
| | | | | | - |
| | | | | | - |
| | **Bank In/Out** | | | | - |
| | **GL In/Out** | | | | - |
| | **Cleared Transactions** | | | | - |
| | Total Reconciling Items | - | - | - | - |
| | Check Digit | - | - | - | - |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | - | - | | | | - | - |

| Bank | | | | | Book | | | |
|---|---|---|---|---|---|---|---|---|
| **Date** | **Description** | **Withdrawals** | **Deposits** | | **Date** | **Description** | **Deposits** | **Withdrawls** |

| Loadcraft Indutries, Ltd |
|---|
| Petty Cash Account |

**NOTE: Loadcraft's payroll is tracked through our ERP operating system and uploaded
into Quickbooks by HR to be processed. We have to manually enter the check values
into our ERP system to account for the checks clearing our bank. A month end GL
entry is then made to capture the full payroll information. Payroll is normally paid by ACH
but sometimes a check is nessecary. Below are checks issued for the employees payroll
for hours worked. We do not keep petty cash on hand.**

|  | *4/30/2022* |  |  | *5/31/2022* |
|---|---|---|---|---|
|  | Checks Outstanding | Checks Issued | Checks Cleared | Checks Outstanding |
| **Petty Cash** | - | 1,366.32 |  | 1,366.32 |

Details:

**April 2022 Issued Checks:**

| NET | Date | Description | Check # | Purchase | Return | Bank | Category | Cleared Bank | Employee Name | PayPeriod | Hours Worked | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 547.13 | 5/12/2022 | PETTY CASH | 44618 | 547.13 |  | Regions | Payroll | No | Hinkle, Charles | 05/01-05/07 | 13.00 | Gross Wage - $624 |
| 819.19 | 5/19/2022 | PETTY CASH | 44623 | 819.19 |  | Regions | Payroll | No | Hinkle, Charles | 05/08-05/14 | 20.00 | Gross Wage - $960 |

## **EXHIBIT B**

**Financial Projections**

**(to be supplemented)**

**<u>EXHIBIT C</u>**

**Plan of Reorganization**

040872-18219/4886-1687-7096.2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| LOADCRAFT INDUSTRIES, LTD. | § | Case No. 21-11018-tmd |
| | § | |
| | § | |

## <u>DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION</u>

Eric J. Taube
Texas Bar No. 19679350
Mark C. Taylor
Texas Bar No. 19713225
WALLER LANSDEN DORTCH & DAVIS, LLP
100 Congress Avenue, Suite 1800
Austin, Texas 78701
Telephone: (512) 685-0000
Facsimile: (512) 685-6417

ATTORNEYS FOR DEBTOR

# TABLE OF CONTENTS

**ARTICLE I. INTRODUCTION**.................................................................................................1

**ARTICLE II. DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION OF TERMS**.................................................................................................1

**ARTICLE III. DESIGNATION OF CLAIMS AND INTERESTS** .......................................7

    3.1    Summary. ...................................................................................................7
    3.2    Identification of Classes.............................................................................7
    3.3    Identification of Impaired and Unimpaired Classes. ..................................8
    3.4    Impaired Classes Entitled to Vote.............................................................8
    3.5    Impaired Classes Not Entitled to Vote......................................................8
    3.6    Controversy Concerning Classification, Impairment or Voting Rights.................8

**ARTICLE IV. PROVISIONS RELATED TO CERTAIN ADMINISTRATIVE CLAIMS** ..8

    4.1    Administrative Claims. ..............................................................................8

**ARTICLE V. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS** ...............................................................................................................9

    5.1    Classified Claims. .....................................................................................9

**ARTICLE VI Treatment of Executory Contracts and Unexpired Leases** ...........................11

    6.1    Assumption or Rejection of Executory Contracts and Unexpired Leases.............11
    6.2    Objections to Assumption and Assignments of Executory Contracts and Unexpired Leases.........................................................................................11
    6.3    Payments Related to Assumption of Executory Contracts and Unexpired Leases.....................................................................................................12
    6.4    Bar Date for Rejection Damages. .............................................................12
    6.5    No Admission. ...........................................................................................12
    6.6    Rejection of Executory Contracts. ...........................................................12

**ARTICLE VII. CONDITIONS PRECEDENT** ................................................................13

    7.1    Conditions Precedent to Confirmation......................................................13
    7.2    Conditions Precedent to Effective Date.....................................................13

**ARTICLE VIII. PROVISIONS GOVERNING DISTRIBUTIONS** ......................................13

    8.1    Distributions Generally.............................................................................13
    8.2    Distributions on Disputed Claims.............................................................13
    8.3    Delivery of Distributions. .........................................................................13
    8.4    Uncashed Checks. .....................................................................................14
    8.5    Compliance with Tax Requirements.........................................................14

**ARTICLE IX. PROVISIONS FOR THE RESOLUTION OF OBJECTIONS TO CLAIMS AND EQUITY INTERESTS**.................................................................................14

    9.1    Objections to Claims or Equity Interests. .................................................14

    9.2       Amendments to Claims; Claims filed After the Confirmation Date......................14

**ARTICLE X. MEANS FOR IMPLEMENTING PLAN** ..............................................**15**

    10.1      Sources of Payments. ...............................................................................15

**ARTICLE XI. EFFECT OF REJECTION BY ONE OR MORE CLASSES**......................**15**

    11.1      Impaired Classes to Vote. .........................................................................15
    11.2      Acceptance by Class. ................................................................................15
    11.3      Reservation of Cramdown Rights. ............................................................16

**ARTICLE XII. EFFECT OF CONFIRMATION** ......................................................**16**

    12.1      Generally...................................................................................................16
    12.2      Property....................................................................................................16

**ARTICLE XIII. RETENTION OF JURISDICTION** .................................................**16**

    13.1      Exclusive Bankruptcy Court Jurisdiction. ...............................................16
    13.2      Limitation on Jurisdiction. .......................................................................17

**ARTICLE XIV. MISCELLANEOUS PROVISIONS** .................................................**17**

    14.1      Effectuating Documents and Further Transactions....................................17
    14.2      Severability. .............................................................................................17
    14.3      Final Allowance. ......................................................................................18
    14.4      Consummation. ........................................................................................18
    14.5      Distribution Agent. ...................................................................................18
    14.6      Exemption from Certain Transfer Taxes and Recording Fees...................18
    14.7      Further Authorization................................................................................18
    14.8      Means of Cash Payment............................................................................18
    14.9      Setoffs. .....................................................................................................19
    14.10    Exculpation; Limitation of Liability; and Releases ..................................19
    14.11    Default......................................................................................................19
    14.12    Amendment or Modification of This Plan. ...............................................19
    14.13    Severability of Plan Provisions.................................................................20
    14.14    Revocation, Withdrawal, or Non-Consummation. ...................................20
    14.15    Due Authorization by Claimants. .............................................................20
    14.16    Filing of Additional Documentation.........................................................20
    14.17    Governing Law. ........................................................................................20
    14.18    Successors and Assigns.............................................................................21
    14.19    Notices. ....................................................................................................21
    14.20    U.S. Trustee Fees. ....................................................................................21
    14.21    Implementation. .......................................................................................22
    14.22    No admission. ...........................................................................................22
    14.23    Conflicts...................................................................................................22

Loadcraft Industries, Ltd. ("**Debtor**" or "**Loadcraft**") submits this proposed Plan of Reorganization (the "**Plan**"). A discussion of the Debtor's history, business, properties and results of operations, and a summary of this Plan and certain related matters, can be found in the Disclosure Statement (the "**Disclosure Statement**") filed by the Debtor in support of this Plan.

## ARTICLE I.
## INTRODUCTION

The Debtor proposes the following Plan pursuant to the provisions of Chapter 11 of the U.S. Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Capitalized terms used in this Plan and not otherwise defined shall have the meanings ascribed to them in Article II of this Plan or, if not defined therein, in Section 101 of the Code.

Reference is hereby made to the Disclosure Statement, which discusses the history of the Debtor and their business, management, assets and liabilities. The Disclosure Statement also provides a summary of this Plan. ***You are urged to read the Disclosure statement with care in evaluating how this Plan will affect your Claim(s).***

## ARTICLE II.
## DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION OF TERMS

For purposes of this Plan, any reference in this Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, supplemented, or otherwise modified.

The words "**herein,**" "**hereof**" and "**hereunder**" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan, unless the context requires otherwise. The word "**including**" as used in this Plan means "**including, without limitation.**" The word "**or**" when used in this Plan means "**and/or**" unless the context clearly indicates otherwise. Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural, and pronouns

stated in the masculine, feminine or neuter gender include the masculine, feminine and the neuter.

The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of this Plan.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(a)     "**Administrative Claim**" means a Claim for costs and expenses of administration of the Bankruptcy Cases allowed under sections 503, 507(a)(2) or 507(b) of the Bankruptcy Code and approved by Final Order of the Bankruptcy Court, and all fees and costs assessed against the Estates pursuant to 28 U.S.C. § 1930. The term includes Professional Claims, Post- Petition Tax Claims, and Post-Confirmation Administrative Claims.

(b)     "**Allowed**" means with reference to a Claim or any portion thereof (a) a Claim against a Debtor, proof of which, if required, was filed on or before the Bar Date, which is not a Disputed Claim; (b) an unknown Claim allowed hereunder or by a Final Order or (c) a Claim which has been scheduled by a Debtor and is not listed as "**disputed**", "**contingent**" or "**unliquidated**". An Allowed Claim does not include any Claim, or portion thereof, which is a Disallowed Claim or which has been subsequently withdrawn, disallowed, released or waived by the holder thereof or pursuant to a Final Order. Unless otherwise specifically provided in this Plan, or by a Final Order of the Court, an Allowed Claim shall not include any amount for punitive or exemplary damages, penalties, fines or post-petition interest.

(c)     "**Allowance Date**" means the date on which a claim becomes an Allowed Claim, unless such Claim is "**Allowed**" solely under clause (b) of the definition of such term, in which case, the Allowance Date shall be no earlier than the day after the last day for filing objections to proofs of Claim under this Plan.

(d)     "**Ballot**" means the form(s) distributed to holders of impaired Claims on which is to be indicated the acceptance or rejection of the Plan and whether the holder or such Claim agrees to the releases of third parties provided in the Plan.

(e)     "**Bankruptcy Case**" means the bankruptcy cases of the Debtor, pending as Case No. 21-11018-tmd  in the United States Bankruptcy Court for the Western District of Texas, Austin Division.

(f)     "**Bankruptcy Code**" means title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

(g)     "**Bankruptcy Court**" means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

(h)　　**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under section 2075 of title 28 of the United States Code, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

(i)　　**"Bar Date"** means the date set by the Bankruptcy Court as the last day for filing of proofs of Claim in the Bankruptcy Cases, which is May 2, 2022 for non-governmental entities, and 180 days from the Petition Date for governmental entities.

(j)　　**"Books and Records"** means the books and records of the Debtor which are kept by or on behalf of the Debtor in the ordinary course of business, including, without limitation, all engineering reports, architectural plans, site plans and any drafts of the foregoing that relate to the Debtor including its property (whether currently or formerly owned), along with any permits, correspondence, bank accounts, tax records, corporate records, accounting records, software, computers, franchise tax matters and any other records of the Debtor whether in the possession of the Debtor, its manager, officers, directors, shareholders or any accountants, lawyers, brokers or any other Person.

(k)　　**"Brownwood Facility"** shall mean the real property, improvements and persona property owned by the Debtor, located at 1001 Gifford Street, Brownwood, Texas.

(l)　　**"Business Day"** means any day which is not a Saturday, a Sunday, or a legal holiday within the meaning of Bankruptcy Rule 9006(a).

(m)　　**"Claim"** has the meaning set forth in Section 101(5) of the Bankruptcy Code.

(n)　　**"Claimant"** means the holder of a Claim.

(o)　　**"Confirmation Date"** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

(p)　　**"Confirmation Hearing"** means the hearing or hearings which will be held before the Bankruptcy Court under Bankruptcy Code § 1128 at which the Confirmation of this Plan will be requested.

(q)　　**"Confirmation Order"** means an order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

(r)　　**"Convenience Claim"** means any General Unsecured Claim that is Allowed in an amount of five hundred dollars ($500) or less; provided, however that (1) any Claim that was Allowed in excess of five hundred dollars ($500) may not be subdivided into multiple Claims of five hundred dollars ($500) or less for purposes of receiving treatment as a Convenience Claim, and (2) Claims in the same Class held by a Claimant shall be aggregated for purposes of determining whether such Claims are eligible to be Convenience Claims.

(s)　　**"Debtor"** has the meaning set forth in the preamble to this Plan.

(t)　　"**Deficiency Claim**" means any portion of a Claim (i) to the extent the value of the holder's interest in the property securing such Claim is less than the amount of such Claim or (ii) to the extent the amount of a Claim is subject to setoff is less than the amount of the Claim, each as determined by Section 506(b) of the Bankruptcy Code.

(u)　　"**Disallowed Claim**" means a Claim or portion thereof that (i) has been disallowed by a Final Order; or (ii) was not filed by the Bar Date.

(v)　　"**Disclosure Statement**" means the Disclosure Statement with respect to this Plan, as approved by the Bankruptcy Court as containing adequate information for the purpose of dissemination and solicitation of votes on and confirmation of this Plan, as such Disclosure Schedule may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

(w)　　"**Disposition**", "**Disposed of**" and other forms of the word "**Dispose**", when capitalized herein, refer to the sale, transfer, or other hypothecation of an asset to a person other than the Debtor.

(x)　　"**Disputed Claim**" means a Claim, or any portion thereof, that is set forth in a filed Proof of Claim (a)that differs in nature, amount or priority from the Bankruptcy Schedules, or (b) that is the subject of an objection filed by the Debtor or any other party-in-interest and which objection has not been withdrawn or overruled by a Final Order of the Bankruptcy Court; provided, however, that with respect to an Administrative Claim, "**Disputed Claim**" means an Administrative Claim that is not an Allowed Claim or a Disallowed Claim.

(y)　　"**Disputed Claims Reserves**" means the reserve account established pursuant to this Plan.

(z)　　"**Distribution**" means a distribution of money or property pursuant to the provisions of this Plan.

(aa)　　"**Distribution Agent**" shall be the person designated by the Debtor to make distributions under the Plan. With respect to all Classes, the Reorganized Debtor shall act as the Distribution Agent.

(bb)　　"**Distribution Date**" means any date on or after the Effective Date on which distributions of Available Cash should be made pursuant to this Plan.

(cc)　　"**Effective Date**" means the first Business Day following fourteen days from confirmation of the Plan and on which no stay of the Confirmation Order is in effect and all conditions to the effectiveness of the Plan have been satisfied or waived.

(dd)　　"**Equity Interest**" means any ownership interest or share in the Debtor (including, without limitation, all options, warrants or other rights to obtain such an interest or share in the Debtor) whether or not transferable, preferred, common, voting, or denominated "**stock**" or a similar security.

(ee)     "**Estate**" means, as to each Debtor, the estate created for such Debtor pursuant to section 541 of the Bankruptcy Code.

(ff)     "**Estate Causes of Action**" means any and all rights, claims and causes of actions which a Debtor or other appropriate party in interest would be able to assert on behalf of an Estate under applicable state or federal common law, any state or federal statute or the avoidance statutes of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542-551 and 553.

(gg)     "**Exculpated Party**" or "**Exculpated Parties**" means the Debtor and their agents, officers, directors, managers, employees, representatives, attorneys, advisors affiliates, shareholders, or members, or any of their successors or assigns

(hh)     "**Executory Contract**" means, collectively, "**executory contracts**" and "**unexpired leases**" of the Debtor as of the Petition Date, as such terms are used in section 365 of the Bankruptcy Code.

(ii)     "**Final Decree**" means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

(jj)     "**Final Order**" means an order or judgment (a) as to which time to appeal, petition for certiorari or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for re-argument or rehearing shall then be pending; or (b) in the event an appeal, writ of certiorari, or motion for re-argument or rehearing has been filed or sought, such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which a motion for re-argument or rehearing was sought, and the time to take any further appeal, petition for certiorari, or move for re-argument or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a Final Order solely because of the filing or pendency of a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure unless such motion shall have been filed within ten (10) days of the entry of the order or judgment at issue.

(kk)     "**General Unsecured Claim**" means any Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim, or a Convenience Class Claim and shall include any Claim arising from the rejection of an Executory Contract pursuant to 11 U.S.C. § 365.

(ll)     "**Governmental Unit**" means a governmental unit as such term is defined in section 101(27) of the Bankruptcy Code.

(mm)     "**Lien**" means a valid and enforceable lien, mortgage, security interest, pledge, charge, encumbrance, or other legally cognizable security device of any kind.

(nn)     "**Notice Parties**" means the Debtor, the Debtor' counsel, and all persons requesting notice in the Bankruptcy Case.

(oo)     "**Ordinary Course of Business**" shall have the meaning provided under 11 U.S.C. § 363 and judicial interpretations thereof.

(pp)    "**Person**" means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies or political subdivisions thereof.

(qq)    "**Petition Date**" means December 30, 2021.

(rr)    "**Plan**" means this Chapter 11 Plan, either in its present form or as it may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

(ss)    "**Plan Supplement**" means all documents, forms, lists, and agreements contemplated under the Plan to effectuate the terms and conditions hereof.

(tt)    "**Post-Petition Tax Claims**" has the meaning set forth in Section 4.1(c)(iii).

(uu)    "**Priority Claim**" means a Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Claim or a Priority Tax Claim.

(vv)    "**Priority Tax Claim**" means a Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

(ww)    "**Pro Rata Share**" means, with respect to any distribution to a Class under this Plan, as of any particular Distribution Date, proportionate sharing pursuant to which (a) the ratio that the cumulative amount of all funds distributed or reserved on account of each Claim in such Class bears to the amount of such Claim is equal to (b) the ratio that the cumulative amount distributed or reserved on account of all Claims in such Class bears to the total amount of all Claims in such Class that are entitled to receive a distribution or against which a reserve is required to be made.

(xx)    "**Professional**" means any Person employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

(yy)    "**Professional Claim**" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Bankruptcy Cases.

(zz)    "**Reserved Causes of Action**" means those claims and causes of action specified in the Disclosure Statement as constituting Reserved Causes of action.

(aaa)    "**Schedules**" means the Schedules and Statement of Financial Affairs filed by the respective Debtor with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

(bbb)   "**Secured Claim**" means any Claim or portion thereof against the Debtor that is reflected in a proof of Claim or otherwise asserted as secured by a perfected Security Interest in, or Lien on, any property of one or both of the Debtor, or the net proceeds from the sale of such property, in which a Debtor has an interest, to the extent of the value, as of the Petition Date (or such other date as is established by the Bankruptcy Court) of such security interest or Lien as determined by a non-appealable Final Order pursuant to section 506 of the Bankruptcy Code or as otherwise agreed in writing by the holder of such Claim and (i) a Debtor (if such agreement is effectuated prior to the Effective Date), or (ii) a Setoff Claim.

(ccc)   "**Security Interest**" has the meaning ascribed to such term in section 101(51) of the Bankruptcy Code.

(ddd)   "**Senior in Priority**" means, as to any of the following Classes or categories of unsecured Claims, classes or categories that have a higher priority, in the following descending order: (a) first, Administrative Claims; (b) Third, Priority Tax Claims; and (c) third, General Unsecured Claims.

(eee)   "**Substantial Consummation**" means the accomplishment of the transactions required under Article VII of this Plan, in accordance with Bankruptcy Code § 1101(2).

(fff)   "**Trust Fund Taxes**" means the amount of taxes that the Debtor is required to remit to a governmental authority for which the non-payment would create personal liability for an individual.

## ARTICLE III.
## DESIGNATION OF CLAIMS AND INTERESTS

3.1   **Summary.**

(a)   Pursuant to Bankruptcy Code section 1122, a Claim or Equity Interest is placed in a particular Class for purposes of voting on this Plan and receiving Distributions under this Plan only to the extent (i) the Claim or Equity Interest qualifies within the description of that Class; and (ii) the Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class.

(b)   A Claim or Equity Interest which is not an Allowed Claim or Allowed Equity Interest is not in any Class, and notwithstanding anything to the contrary contained in this Plan, no Distribution shall be made on account of any Claim or Equity Interest which is not an Allowed Claim or Allowed Equity Interest.

3.2   **Identification of Classes.**

1)   Class I: Administrative
2)   Class II: Priority Tax/Secured Claims
3)   Class III: Priority Non-Tax Claims
4)   Class IV: Allowed General Unsecured Claims
5)   Class V: Allowed Convenience Class Claims.
6)   Class VI: Equity Interests

3.3     **Identification of Impaired and Unimpaired Classes.**

All classes of claims are impaired except Class I and II.

3.4     **Impaired Classes Entitled to Vote.**

All classes of claims are entitled to vote except Classes I and II.

3.5     **Impaired Classes Not Entitled to Vote.**

Class VI.

3.6     **Controversy Concerning Classification, Impairment or Voting Rights.**

In the event a controversy or dispute should arise involving issues related to the classification, impairment or voting rights of any Creditor or Claimant under this Plan, whether before or after the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy. Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes (i) the amount of any contingent or unliquidated Claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of these Bankruptcy Cases; and (ii) any right to payment arising from an equitable remedy for breach of performance. In addition, the Bankruptcy Court may, in accordance with section 506(b) of the Bankruptcy Code, conduct valuation hearings to determine the Allowed amount of any Secured Claim. Any class not occupied at the time of the Confirmation hearing shall be deemed eliminated.

## ARTICLE IV.
## PROVISIONS RELATED TO CERTAIN ADMINISTRATIVE CLAIMS

4.1     **Administrative Claims.**

(a)     **General:** Subject to the subsection 4.1(c), unless otherwise agreed to by such holder, on each Distribution Date, each holder of an Allowed Administrative Claim shall receive from the Distribution Agent an amount equal to the (1) Allowed Administrative Claim or (2) such amount as may be agreed to between the holder of such claim and the Debtor.

(b)     **Payment of Statutory Fees:** All fees payable pursuant to 28 U.S.C. §1930 shall be paid in cash, when due.

(c)     **Bar Date for Administrative Claims:**

(i)     **General Provisions:** Except as otherwise provided in this Article IV, requests for payment of Administrative Claims must be included within a motion or application and filed no later than thirty  (30) days after the Effective Date or by such earlier deadline governing a particular Administrative Claim contained in an order of the Bankruptcy Court entered before the Effective Date. Holders of Administrative Claims who do not file such requests by the applicable bar date specified in this subsection shall be forever barred from asserting such Claims against the Debtor or any of their respective property. Requests for payment

of Administrative Claims included within a proof of claim are of no force and effect, and are disallowed in their entirety as of the Confirmation Date unless such Administrative Claim is subsequently filed in a timely fashion as provided herein.

(ii)    **Professionals:** All professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation requested by any professional or any other entity for making a substantial contribution in the Debtor' Bankruptcy Cases) shall file and serve on the Notice Parties an application for final allowance of compensation and reimbursement of expenses no later than forty-five (45) days after the Effective Date. Objections to applications of professionals for compensation or reimbursement of expenses must be filed and served on the Notice Parties and the professionals to whose application the objections are addressed no later than twenty-one (21) days after the date on which the application for allowance is served.

(iii)    **Post-Petition Tax Claims:** All requests for payment of Administrative Claims and other Claims by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, which accrued or were assessed within the period from and including the Petition Date through and including the Effective Date ("**Post-Petition Tax Claims**") and for which no bar date has otherwise been previously established, must be filed on or before the later of (i) forty-five (45) days following the Effective Date; and (ii) ninety (90) days following the filing with the applicable Governmental Unit of the tax return for such taxes for such tax year or period. Any holder of any Post-Petition Tax Claim that is required to file a request for payment of such taxes and does not file such a Claim by the applicable bar date shall be forever barred from asserting any such Post-Petition Tax Claim against the Debtor or their property, whether any such Post- Petition Tax Claim is deemed to arise prior to, on, or after the Effective Date.

## ARTICLE V.
## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

5.1    **Classified Claims.**

5.1.1    Class I – Administrative Claims. Each holder of an Allowed Administrative Claim shall receive from the Debtor with respect to such Allowed Claim, either (i) the amount of such Allowed Claim from the Debtor, in one (1) cash payment on the later of (a) the Effective Date, (b) the date that is sixty (60) days after a request for payment of the Claim is filed, (c) the date that is twenty (20) days after the Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed upon in writing by such holder; provided, however, that an Allowed Administrative Claim representing a liability incurred in the ordinary course of business shall be paid by the Debtor upon presentment or otherwise in accordance with the terms of the particular transaction and any agreements relating thereto. This Class is unimpaired.

5.1.2    Class II – Priority Tax/Secured Claims. Each holder of a Class II Secured Tax Claim, if any exist, shall receive payment of its Allowed Claim, in full, within sixty (60) months from the Petition Date, with statutory interest accruing from the Petition Date, in equal monthly payments beginning sixty (60) days from the Effective Date. If the Reorganized Debtor sells the

Brownwood Facility, the remaining amounts of all Priority Tax/Secured Claims shall be paid from the proceeds, with any deficiency paid over the remaining months of the 60-month term.

*Lien for Trust Fund Taxes*.  Any state or federal tax authority that holds an Allowed Claim for Trust Fund Taxes shall hold, as of the Effective Date, a lien against the Brownwood Facility for unpaid Trust Fund Taxes until such time as the Allowed Claim for such Trust Fund Taxes is paid.  Any beneficiary of such a lien shall not be entitled to enforce, or foreclose such lien unless the Debtor defaults under this Plan, and the default remains uncured, pursuant to the provisions of this Plan.  The Reorganized Debtor shall have the right to sell the Brownwood Facility free and clear of such lien so long as all proceeds from the sale, net of usual and typical closing costs, are paid to satisfy the unpaid Trust Fund Taxes, even if such Allowed Claim for Trust Fund Taxes are not fully satisfied.

5.1.3  Class III - Allowed Priority Non-Tax Claims.  Allowed Priority Non-Tax Claims will be paid in full over sixty (60) months in equal monthly amounts.

5.1.4  Class IV - Allowed General Unsecured Claims.  Holders of Allowed General Unsecured Claims will receive pro-rata distributions representing ten percent (10%) of their Allowed Claim, paid in equal quarterly installments over a forty-eight (48) month period beginning September 30, 2022. In addition, Holders of Allowed General Unsecured Claims will receive pro-rata distributions of 10% of proceeds received from the prosecution, sale or settlement of the Reserved Claims, net of attorneys' fees and costs paid by the Reorganized Debtor or related parties in connection with the prosecution of such claims. The Reorganized Debtor shall have the right to dispose of, sell, abandon or compromise the Reserved Claims in the exercise of its business judgment.  This Class is impaired.

5.1.5  Class V – Allowed Convenience Class Claims.  Holders of Allowed General Unsecured Claims  whose claims are at or below $500.00, or any other Allowed General Unsecured Claim which elects to be treated as an Allowed Convenience Class Claim, will receive 100% of their Allowed Claim in two (2) equal monthly payments on the 60th and 90th day following the Effective Date. This Class is impaired.

5.1.6  Class VI - Equity Interests. Existing Equity Interests shall be canceled, and new equity interests (i.e. limited partnership interests)shall be issued to Brian Alphonso [67%] and Charles Hinkle [32%], or entities designated by them prior to the Confirmation Hearing, in return for cancellation of all indebtedness owed to each of them, Alphonso Energy, LLC and/or Nestor Outcomes, LLC (other than the Post-Petition amounts provided by Alphonso Energy LLC and Glorious Splendor, LLC, entities owned by Brian Alphonso). The general partner shall hold a 1% limited partnership interest in the Reorganized Debtor.

5.1.7  Payments to U.S. Trustee. Debtor shall make the payments and file all reports required by 28 U.S.C. § 1930(a)(6) until the Bankruptcy Case is closed, converted or dismissed.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1    **Assumption or Rejection of Executory Contracts and Unexpired Leases**.

On the Effective Date, except as otherwise provided in the Plan and/or designated in a List of Contracts to be Assumed ( the "**Assumption List**") filed twenty-one (21) days prior to the date of the Confirmation Hearing, any unexpired lease or executory contract that has not been previously assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court (including any distribution agreement) shall be deemed rejected by the Debtor under Sections 365(a) and 1123 of the Bankruptcy Code, other than those executory contracts and unexpired leases that are (a) identified in the Plan or the Assumption List or (b) subject to a motion to assume that is pending on the Effective Date. Entry of the Confirmation Order shall constitute approval of such assumptions, and the rejection of the executory contracts or unexpired leases. Any motions to assume executory contracts and unexpired leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

6.2    **Objections to Assumption and Assignments of Executory Contracts and Unexpired Leases**.

To the extent that any party to an executory contract or unexpired lease identified for assumption, or any other party in interest, (a) asserts arrearages or damages pursuant to § 365(b)(1) of the Bankruptcy Code in an amount different from the amount, if any, set forth in Exhibit C, (b) has any objection to the proposed adequate assurance of future performance, if required, or (c) has any other objection to the proposed assumption, cure, or assignment of a particular executory contract or unexpired lease on the terms and conditions provided for herein, all such asserted arrearages and any other objections shall be filed and served within the same deadline and in the same manner established for filing objections to Confirmation.

Failure to assert any arrearages different from the amount set forth in the Assumption List, or to file an objection within the time period set forth above, shall constitute consent to the assumption, cure, and assignment on the terms provided for herein, including acknowledgment that (a) the Debtor (or its assignee) has provided adequate assurance of future performance, if required, (b) the amount identified for "**cure,**" if any, is the amount necessary to compensate for any and all outstanding defaults or actual pecuniary loss under the executory contract or unexpired lease to be assumed, and (c) no other defaults exist under such executory contract or unexpired lease.

If an objection to assumption and assignment is filed based upon lack of adequate assurance of future performance or otherwise, and the Court determines that the Debtor cannot assume the executory contract or unexpired lease either as proposed or as may be proposed pursuant to a modified proposal submitted by the Debtor, then the unexpired lease or executory contract shall automatically thereupon be deemed to have been rejected.

6.3    **Payments Related to Assumption of Executory Contracts and Unexpired Leases.**

Any monetary defaults, including claims for actual pecuniary loss, under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount, if any, as otherwise agreed by the parties, or as ordered by the Bankruptcy Court in Cash within 90 days following the Effective Date, or on such other terms as may be agreed to by the parties to such executory contract or unexpired lease. In the event of a dispute regarding (a) the amount of any cure or pecuniary loss payment, (b) the ability of Reorganized Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, if required, or (c) any other matter pertaining to assumption, the cure or pecuniary loss payments required by § 365(b)(1) of the Bankruptcy Code shall be made within a reasonable time following entry of a Final Order resolving the dispute and approving assumption.

6.4    **Bar Date for Rejection Damages.**

If the rejection of an executory contract or unexpired lease pursuant to Article VI of the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim, to the extent that it is timely filed and is a Allowed Claim, shall be classified in Class VII; provided, however, that the Unsecured Claim arising from rejection shall be forever barred and shall not be enforceable against a Debtor, Reorganized Debtor, its successor or properties, unless a proof of Claim is filed and served on the Reorganized Debtor within 30 days after the date of the notice of the entry of an order of the Bankruptcy Court authorizing rejection of the executory contract or unexpired lease, which order may be the Confirmation Order.

6.5    **No Admission.**

The listing by the Debtor of any contract or lease as an "**executory contract**" cannot be construed as an admission that such contract or lease is actually an executory contract under 11 U.S.C. §365 and shall not be a binding admission against the Debtor or Reorganized Debtor.

6.6    **Rejection of Executory Contracts.**

Any and all Executory Contracts of the Debtor which, as of the Effective Date, have not been assumed or rejected, shall be deemed rejected.  Any Claim arising out of the rejection of an Executory Contract shall be filed and served on counsel for the Debtor within thirty (30) days from the Effective Date. Any such Claims not filed by such date shall be discharged and forever barred. All creditors and parties in interest shall be authorized to file an objection to any proof of Claim based on the rejection of an Executory Contract pursuant to this Plan. The objection to any such proof of Claim shall be filed not later than one hundred and twenty days (120) after the Effective Date. Each Allowed Claim arising from the rejection of an Executory Contract shall be treated as an Allowed Class III General Unsecured Claim.

## ARTICLE VII.
## CONDITIONS PRECEDENT

7.1     **Conditions Precedent to Confirmation**.

This Plan shall not be confirmed unless and until the Bankruptcy Court has entered the Confirmation Order in a form and substance satisfactory to the Debtor in their sole discretion.

7.2     **Conditions Precedent to Effective Date.**

This Plan shall not become effective and operative unless and until the Effective Date occurs. The Effective Date shall occur after the following conditions have been satisfied; provided, however, that the Debtor in their sole discretion may waive any or all of the following conditions, whereupon the Effective Date shall occur without further action by any Person:

(a)     the Confirmation Order shall have been entered by the Bankruptcy Court and shall not be subject to a stay; and

(b)     the Bankruptcy Court shall have determined that the Debtor are duly authorized to take actions contemplated in the Plan; and

(c)     all other agreements contemplated by, or entered into pursuant to the Plan, shall have been duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived.

## ARTICLE VIII.
## PROVISIONS GOVERNING DISTRIBUTIONS

8.1     **Distributions Generally**.

Distributions contemplated by the Plan shall be made by the Reorganized Debtor to all Allowed Secured Claims, all holders of executory contracts and unexpired leases assumed under Article VI and all Allowed Administrative Claims.

8.2     **Distributions on Disputed Claims.**

In the event of a Distribution to holders of Claims in a class or category in which there exist any Disputed Claims, the Reorganized Debtor shall not be required to make a Distribution until the disputed Claim becomes an Allowed Claim.

8.3     **Delivery of Distributions.**

Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims will be made by mail (1) at the address of each such holder as set forth on the proofs of claim filed by such holders, or (2) at the address reflected in the Schedules filed by the Debtor if no proof of claim is filed. If any Distribution is returned as undeliverable, the Reorganized Debtor shall use reasonable efforts to determine such Claimant's then current address. After reasonable efforts, if the Reorganized Debtor still cannot determine such Claimant's then-current address, no further

Distributions shall be made to such Claimant unless and until they are notified of such Claimant's then-current address. If the current address of a Claimant entitled to a Distribution has not been determined within six (6) months of the date on which the Distribution was first attempted to be made, then such Claimant: (i) shall no longer be a Claimant; and (ii) shall be deemed to have released such Claim.

### 8.4 Uncashed Checks.

Checks issued in respect of Allowed Claims will be null and void if not negotiated within ninety (90) days after the date of issuance thereof, and such Claimant will forfeit its right to such Distribution. In no event shall any funds escheat to the State of Texas.

### 8.5 Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Distribution Agent shall comply with all withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.

## ARTICLE IX.
## PROVISIONS FOR THE RESOLUTION OF OBJECTIONS
## TO CLAIMS AND EQUITY INTERESTS

### 9.1 Objections to Claims or Equity Interests.

Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed before the Effective Date including any order of the Bankruptcy Court pursuant to §506 of the Bankruptcy Code, only the Reorganized Debtor may object to the Allowance of any Claim against the Debtor or seek estimation of any Claim on any grounds permitted by the Bankruptcy Code. All objections to Claims must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is 60 days after the Effective Date, but the Bankruptcy Court may approve a later date on the Reorganized Debtor's motion filed (but not necessarily heard) before the first Business Day that is 60 days after the Effective Date. Debtor may contest the amount of attorney's fees and interest sought by any creditor. ***Debtor reserves the right to object to or seek estimation of any claims. A VOTE FOR THE PLAN WILL NOT EXCULPATE OR EXCLUDE ANY CLAIMANT FROM HAVING ITS CLAIM OBJECTED TO OR BE DEEMED AN ALLOWANCE OF SUCH CLAIM.***

Prior to the expiration of thirty (30) days from the date of service of the objection, the Claimant whose Claim or Equity Interest was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the party who filed such objection, and the Debtor. Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to grant the relief requested in the objection.

### 9.2 Amendments to Claims; Claims filed After the Confirmation Date.

Except as otherwise provided in this Plan, a Claim may not be filed with the Bankruptcy Court or amended after the Confirmation Date without the prior authorization of the Bankruptcy Court. Except as otherwise provided in this Plan, any new or amended Claim filed without the

prior approval of the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without any action by any person.

## ARTICLE X.
## MEANS FOR IMPLEMENTING PLAN

On the Effective Date, all of the Debtor's property will re-vest in the Reorganized Debtor. All Cash necessary for the Reorganized Debtor to make payments pursuant to the Plan shall be obtained from operations of the Debtor and, potentially, a sale of the Brownwood Facility. Reorganized Debtor may issue additional equity and/or limited partnership interests as deemed reasonable and necessary in the exercise of its business judgment. Reorganized Debtor shall have full and complete authority to prosecute, settle, compromise, sell or abandon the Reserved Claims and other causes of action as it deems appropriate in its business judgment.

10.1    **Sources of Payments.**

Payments under this Plan will be made from a combination of money generated from the pre and post-confirmation operations of the Reorganized Debtor, the sale of the Brownwood Facility (if sold), the proceeds of Reserved Causes of Action and, in the discretion of the Reorganized Debtor, additional equity and/or limited partnership interests as deemed reasonable and necessary in the exercise of its business judgment.

10.2    **Effect on Mutual Release and Settlement Agreement**.

Nothing contained herein shall amend or alter the terms of that "Mutual Release and Settlement Agreement" approved by the Bankruptcy Court by Order dated April 27, 2022 [Dkt. 120].

## ARTICLE XI.
## EFFECT OF REJECTION BY ONE OR MORE CLASSES

11.1    **Impaired Classes to Vote.**

Each impaired class shall be entitled to vote separately to accept or reject this Plan. A holder of a Disputed Claim which has not been temporarily allowed for purposes of voting on this Plan may vote only in an amount equal to the portion, if any, of such Claim shown as fixed, liquidated, and undisputed in the applicable Debtor's Schedules. The Debtor reserve the right to request that the Bankruptcy Court estimate the amount of any Claim for purposes of voting on the Plan.

11.2    **Acceptance by Class.**

A class of Claims shall have accepted this Plan if this Plan is accepted by at least two thirds (2/3) in amount and more than one half (1/2) in number of the Allowed Claims of such class that have voted to accept or reject this Plan.

11.3    **Reservation of Cramdown Rights.**

In the event that any impaired class shall fail to accept this Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtor reserve the right to request that the Bankruptcy Court confirm this Plan in accordance with the provisions of the section 1129(b) of the Bankruptcy Code.

## ARTICLE XII.
## EFFECT OF CONFIRMATION

12.1    **Generally.**

As of the Confirmation Date, this Plan shall be binding upon the Debtor, all Claimants, and all other Persons who are affected in any manner by this Plan, subject to the occurrence of the Effective Date and the satisfaction or waiver of the conditions set forth in Article VII.

12.2    **Property.**

All property of the Estate will vest in the Reorganized Debtor on the Effective Date.

## ARTICLE XIII.
## RETENTION OF JURISDICTION

13.1    **Exclusive Bankruptcy Court Jurisdiction.**

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have such jurisdiction over the Bankruptcy Case as is legally permissible, including, without limitation, for the following purposes:

(a)    To allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of, or to estimate, any Claim or Equity Interest, including, without limitation, resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of claims or interests;

(b)    To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of this Plan, including, without limitation, any motions for the rejection, assumption or assumption and assignment of any Executory Contract;

(c)    To ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(d)    Except as otherwise provided in this Plan, to enter orders approving any requests for compensation for professional services rendered and costs incurred in connection with these bankruptcy proceedings or in connection with this Plan and incident to these bankruptcy proceedings;

(e)    To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of this Plan or any person's obligations in connection with this Plan;

(f)     To consider and act upon the compromise and settlement of any claim or cause of action by or against the Debtor;

(g)     To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving a Debtor that may be pending on the Effective Date or that may be brought by the Debtor after the Effective Date, including claims arising under Chapter 5 of the Bankruptcy Code;

(h)     To issue orders in aid of execution and implementation of this Plan to the extent authorized by 11 U. S.C. § 1142 or provided by the terms of this Plan;

(i)     To decide issues concerning the federal or state tax liability of the Debtor which may arise in connection with the confirmation or consummation of this Plan; and

(j)     To enter an order closing the Bankruptcy Case.

## 13.2    Limitation on Jurisdiction.

In no event shall the provisions of this Plan be deemed to confer the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

### 14.1    Effectuating Documents and Further Transactions.

The Debtor and, after the Effective Date, Reorganized Debtor is authorized, required and directed to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be reasonably necessary or appropriate to effectuate, implement and consummate the Plan without any further evidence of the terms and conditions of the Plan, the Reorganized Debtor will be heretofore and without any further need of court orders deemed to be authorized to execute any of the aforesaid documents or agreements or to take any of the aforementioned steps to confirm, implement and consummate the Plan. The Plan will be binding upon the Debtor, the holders of Claims, and the holders of Equity Interests; and the Court may issue such orders in aid of consummation of the Plan under sections 105 and 1142 of the Bankruptcy Code.

### 14.2    Severability.

In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

14.3 **Final Allowance.**

Notwithstanding anything contained above, all distributions to Classes under this Plan will only be made after the creditors in said Classes have their Claims fully fixed and allowed by the Court. However, objections on claims in one Class will not preclude distribution to creditors in other Classes where no disputes exist regarding Claims in the other Classes.

14.4 **Consummation.**

Upon the execution of the agreements and documents contemplated by this Plan and the commencement of payments, the Plan shall be deemed consummated, and this case shall be closed. Until substantial consummation occurs, the Debtor may move for and be granted modifications of this Plan.

14.5 **Distribution Agent.**

The Reorganized Debtor shall act as disbursing agent under the Plan as provided herein. The rights and duties of the Debtor shall be transferred to the Reorganized Debtor after Confirmation, so that the Debtor will receive all rights for the Debtor and be imbued and granted all the rights of a trustee in bankruptcy to pursue causes of action after Confirmation.

14.6 **Exemption from Certain Transfer Taxes and Recording Fees.**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from the Debtor, or any agreement regarding the transfer of title to or ownership of any of the Debtor's real or personal property, will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the forgoing instruments or other documents without the payment of any such tax or governmental assessment.

14.7 **Further Authorization.**

The Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

14.8 **Means of Cash Payment.**

Payments of Cash made pursuant to this Plan shall be made, at the option and sole discretion of the Debtor, by checks drawn on, or wire transfer from, a domestic bank selected by the Debtor.

14.9   **Setoffs.**

The Debtor may, pursuant to applicable law, but shall not be required to, set off against any Claim the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or the Debtor may have against the holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor or the Debtor may have against such holder.

14.10   **Exculpation; Limitation of Liability; and Releases**

None of the Debtor, Reorganized Debtor, its counsel, or any other party in interest, or any of their respective members or former partners, general partners, members, agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, shall be liable to any party who was served with a copy of the confirmation order prior to its entry by the Bankruptcy Court for any act or omission in connection with, relating to or arising out of the Chapter 11 Case, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan (the "**Chapter 11 Activities**"), except for their acts or omissions constituting willful misconduct or gross negligence, as finally determined by a court of competent jurisdiction, and in all respects are entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities in connection with the Chapter 11 Activities. No holder of a Claim, or any other party in interest, including their respective agents, employees, representatives, financial advisors, attorneys or affiliates, have any right of action against the Debtor, the Reorganized Debtor, their counsel, for any act or omission in connection with the Chapter 11 Activities, except for their acts or omissions constituting willful misconduct or gross negligence as finally determined by a court of competent jurisdiction. Nothing herein shall be construed to release any person or entity **except as may be specifically provided in this Plan,** from liability to third parties for prepetition conduct or claims, and such claims are fully retained for the purpose of this Plan.

14.11   **Default.**

Any person or entity asserting the existence of a default by the Reorganized Debtor of any provision of this Plan, including but not limited to payment default shall provide written notice of such asserted default to the Reorganized Debtor and its counsel by certified mail and e-mail, and the Reorganized Debtor shall have twenty (20) days to cure the alleged default or file a motion seeking relief from this Court.

14.12   **Amendment or Modification of This Plan.**

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Debtor reserve the right to alter, amend, or modify this Plan at any time prior to or after the Confirmation Date, including, without limitation the right to withdraw the Plan. A holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

14.13   **Severability of Plan Provisions.**

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, upon the request of the Debtor to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.14   **Revocation, Withdrawal, or Non-Consummation.**

The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization. If the Debtor revokes or withdraws this Plan, or if Confirmation or consummation of this Plan does not occur, then (i) this Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Class of Claims or any release contemplated hereby), assumption of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan, and no acts taken in preparation for consummation of this Plan, shall (A) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other person, (B) prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor, or (C) constitute an admission of any sort by the Debtor or any other person.

14.15   **Due Authorization by Claimants.**

Each and every Claimant who elects to participate in the Distributions provided for herein warrants that such Claimant is authorized to accept, in consideration of its Claim against the Debtor, the Distributions provided for in this Plan, and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by the Claimant under this Plan.

14.16   **Filing of Additional Documentation.**

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  Debtor shall file and serve a notice of the Effective Date within five business days from the Effective Date.

14.17   **Governing Law.**

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in

accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof.

### 14.18 **Successors and Assigns.**

The rights, benefits and obligations of any person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such person.

### 14.19 **Notices.**

Any notice required to be given under this Plan shall be in writing. Any notice that is allowed or required hereunder except for notice of change of address shall be considered complete on the earlier of (a) three (3) days following the date the notice is sent by United States mail, postage prepaid, or by overnight courier service, or in the case of mailing to a non-United States address air mail, postage prepaid, or personally delivered; (b) the date the notice is actually received by facsimile or computer transmission; or (c) three (3) days following the date the notice is sent.

(a)     If to the Debtor, at:

Loadcraft Industries Ltd.
206A Blackburn Street
PO Box 1429
Brady, TX 76825

and to:

Waller, Lansden Dortch & Davis, LLP
Attn: Eric J. Taube, Mark C. Taylor
100 Congress Avenue, 18th Floor
Austin, Texas 78701
E-mail: eric.taube@wallerlaw.com, mark.taylor@wallerlaw.com

(b)     If to the U.S. Trustee, at:

United States Trustee
Western District of Texas, Austin Office
903 San Jacinto, Room 230
Austin, Texas 78701

### 14.20 **U.S. Trustee Fees.**

All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date. The Reorganized Debtor shall timely file all

post-confirmation reports as required by the U.S. Trustee until this case is closed, converted or dismissed.

### 14.21   Implementation.

The Debtor and, after the Effective Date, Reorganized Debtor shall take all steps and execute all documents necessary to implement this Plan including but not limited to appropriate releases, purchase and sale agreements, brokerage contracts, deeds and bills of sale necessary to effectuate the provisions contained in this Plan.

### 14.22   No admission.

Neither the filing of this Plan, nor any statement or provision contained herein, nor the taking by the Debtor of any action to enforce and implement this Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or Equity Interest or the propriety of the classification of any Claim or Equity Interest.

### 14.23   Conflicts.

In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

[SIGNATURE PAGE FOLLOWS]

Dated: July 11, 2022

Respectfully submitted,

LOADCRAFT INDUSTRIES, LTD.


By: *Charles E. Hinkle*
Its: *CEO*



Respectfully submitted,

WALLER, LANSDEN, DORTCH & DAVIS, LLP

/s/ *Mark C. Taylor*
Eric J. Taube (Bar No. 19679350)
Mark C. Taylor (Bar No. 19713225)
William R. "Trip" Nix, III (Bar No. 24092902)
100 Congress Avenue, Suite 1800
Austin, Texas 78701
(512) 685-6400
(512) 685-6417 (FAX)
Email: Eric.Taube@wallerlaw.com
        Mark.Taylor@wallerlaw.com
        Trip.Nix@wallerlaw.com

*Attorneys for the Debtor and*
*Debtor in Possession*

# EXHIBIT D

## Preferential Transfers

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor name</td><td><strong>Loadcraft Industries, Ltd.</strong></td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>WESTERN DISTRICT OF TEXAS</td></tr>
<tr><td>Case number (if known)</td><td><strong>21-11018</strong></td></tr>
</table>

■ Check if this is an amended filing

## Official Form 207
## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

04/19

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

### Part 1: Income

1. **Gross revenue from business**

   ☐ None.

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|
| **From the beginning of the fiscal year to filing date:**<br>From **1/01/2021** to **Filing Date** | ■ Operating a business<br>☐ Other _____ | **$3,279,701.00** |
| **For prior year:**<br>From **1/01/2020** to **12/31/2020** | ■ Operating a business<br>☐ Other _____ | **$4,339,504.00** |

2. **Non-business revenue**
   Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

   ■ None.

| | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|

### Part 2: List Certain Transfers Made Before Filing for Bankruptcy

3. **Certain payments or transfers to creditors within 90 days before filing this case**
   List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

   ☐ None.

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|
| 3.1. **Hydradyne, LLC**<br>**2909 Speight Ave**<br>**Waco, TX 76711** | **Various between 10/6/21 and 12/2/21** | **$58,620.40** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

| Debtor | **Loadcraft Industries, Ltd.** | | Case number _(if known)_ **21-11018** |
| --- | --- | --- | --- |

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>_Check all that apply_ |
| --- | --- | --- | --- |
| 3.2. **Rig Pro Inc.**<br>**2200 North Hwy 135**<br>**Kilgore, TX 75662** | **Various between 10/22/21 and 12/21/21** | **$51,363.18** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.3. **City of Brady**<br>**P.O. Box 351**<br>**201 E. Main St.**<br>**Brady, TX 76825** | **10/22/21, 11/29/21 and 12/28/21** | **$35,279.56** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>■ Other_**Utilities**_ |
| 3.4. **Ratliff Steel Company, LLC**<br>**2910 Stephen F. Austin Dr**<br>**Brownwood, TX 76801** | **Various between 10/7/21 and 12/10/21** | **$29,611.91** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.5. **American Block Mfg Co Inc**<br>**P.O. Box 301442**<br>**Dallas, TX 75303** | **10/14/21, 10/20/21, 12/8/21** | **$27,875.63** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.6. **Southern Tire Mart, LLC**<br>**P.O. Box. 1000 Dept. 143**<br>**Memphis, TN 38148-0143** | **10/6/21, 10/20/21, 11/2/21 and 12/16/21** | **$23,234.96** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.7. **Ledsome Machine & Welding**<br>**2508 Stephen F. Austin Dr**<br>**Brownwood, TX 76801** | **Various between 10/15/21 and 12/28/21** | **$22,595.00** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.8. **Meritor Specialty Products fka**<br>**R.Cushman**<br>**Dept Ch 16885**<br>**Palatine, IL 60055-6885** | **11/30/21 and 12/2/21** | **$20,736.91** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.9. **Airgas USA, LLC**<br>**P.O. Box 676015**<br>**Dallas, TX 75267** | **Various between 10/7/21 and 12/27/21** | **$18,668.67** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

| Debtor | **Loadcraft Industries, Ltd.** | | | Case number *(if known)* **21-11018** |
|---|---|---|---|---|

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|---|
| 3.10. | **WPT Power Trans Corp**<br>P.O. Box 8148<br>Wichita Falls, TX 76307 | **10/21/21, 10/28/21, 11/30/21 and 12/9/21** | **$18,500.78** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.11. | **Polyglass Coating**<br>1616 N. Main Street<br>Pearland, TX 77581 | **10/6/21, 10/14/21, 11/9/21, 12/10/21** | **$16,036.17** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.12. | **Motion Industries Inc**<br>P.O. Box 504606<br>St Louis, MO 63150-4606 | **Various between 10/20/21 and 12/21/21** | **$15,060.85** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.13. | **Fleetpride Heavy Duty Experts**<br>P.O. Box 847118<br>Dallas, TX 75284-7118 | **Various between 10/20/21 and 12/15/21** | **$13,164.47** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.14. | **Bendix CVS**<br>P.O. Box 92096<br>Chicago, IL 60675 | **12/9/21** | **$12,705.72** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.15. | LocateBallBearings.com<br>75090 St. Charles Place, Suite B<br>Palm Desert, CA 92211 | **11/18/21, 11/19/21 and 12/9/21** | **$11,223.83** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.16. | **Hacker International**<br>P.O. Box 1208<br>Henderson, TX 75652 | **12/20/21** | **$10,302.50** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |
| 3.17. | **Mark Mullin Company, Ltd.**<br>201 Wellston Park Rd<br>Sand Springs, OK 74063 | **11/12/21 and 12/14/21** | **$8,851.13** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

| Debtor | Loadcraft Industries, Ltd. | | Case number *(if known)* 21-11018 |
|---|---|---|---|

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.18. | **Fedex Freight East<br>Dept CH<br>P.O. Box 10306<br>Palatine, IL 60055-0306** | **Various<br>between<br>10/6/21 and<br>12/27/21** | **$7,969.20** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other___ |
| 3.19. | **Glider Products, LLC<br>613 Wallis Ave<br>Santa Anna, TX 76878** | **11/22/21 and<br>12/21/21** | **$7,825.50** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>■ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None.

| Insider's name and address<br>Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1. | **Passerina Ciris, LLC<br>646 CR 218<br>Santa Anna, TX 76878<br>Member Ruth Ann McIver is wife of<br>Terry McIver, manager of former<br>general partner and control person** | **7/8/21** | **$691,849.73** | **Payment on note** |
| 4.2. | **Glider Products, LLC<br>613 Wallis Ave<br>Santa Anna, TX 76878<br>Owner is Terry McIver, Terry McIver,<br>manager of former general partner and<br>control person** | **11/22/21,<br>12/21/21** | **$7,825.50** | **Reimbursement of wages for<br>Rick Langston** |
| 4.3. | **Hay Creek Enterprises, LLC<br>400 Bruce Street<br>Santa Anna, TX 76878<br>Owner is son of Terry McIver, manager<br>of former general partner and control<br>person** | **11/4/21** | **$6,000.00** | **Purchased parts from auction** |
| 4.4. | **Huntland Trucking<br>P.O. Box 86<br>Santa Anna, TX 76878<br>Owner is son of Terry McIver, manager<br>of former general partner and control<br>person** | **11/4/21** | **$2,500.00** | **Freight to haul parts** |
| 4.5. | **Terry McIver<br>P.O. Box 519<br>Santa Anna, TX 76874<br>Manager of former general partner and<br>control person** | **6/16/21** | **$2,074.84** | **6 months of expenses** |

5. **Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at

| Debtor | Loadcraft Industries, Ltd. | | Case number *(if known)* | 21-11018 |
|---|---|---|---|---|

| | Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|---|
| 27.1. | Dennis Cook | | |
| | Name and address of the person who has possession of inventory records | | |
| | Dennis Cook<br>913 Calcutta<br>Brady, TX 76825 | | |

28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Brady Plant Operators, LLC | | General partner | .8075 |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Glorious Splendor Too, LLC | | General partner | 50 |

29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?

■ No
☐ Yes. Identify below.

30. **Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
■ Yes. Identify below.

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.1. | See question 4 | | | |
| | Relationship to debtor | | | |
| 30.2. | Terry McIver<br>P.O. Box 519<br>Santa Anna, TX 76874 | 23,230.04 | | Salary and expense reimbursements |
| | Relationship to debtor<br>Manager of former general partner and control person | | | |

Software Copyright (c) 1996-2022 Best Case, LLC - www.bestcase.com

| Debtor | Loadcraft Industries, Ltd. | | Case number (if known) | 21-11018 |
|---|---|---|---|---|

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.3. | **Grady McIver**<br>**P.O. Box 519**<br>**Santa Anna, TX 76874** | **6,538.88** | | **Salary** |
| | **Relationship to debtor**<br>**Employee; son of Terry McIver, Manager of former general partner and control person** | | | |

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

■ No
☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

■ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the parent corporation |
|---|---|

**Part 14:** Signature and Declaration

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **February 17, 2022**

**/s/ Charles Hinkle**
Signature of individual signing on behalf of the debtor

**Charles Hinkle**
Printed name

Position or relationship to debtor    **Authorized Representative of General Partner**

Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?
☐ No
■ Yes